# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**HOWARD ARNOLD, for himself
and all others similarly situated,
JIMMY JARAMILLO, for himself
and all others similarly situated,
GARY WISE, for himself and
all others similarly situated,**

      **Plaintiffs,**

**v.**                                            **NO. 09-CV-0330 JB/WDS**

**FARMERS INSURANCE COMPANY
OF ARIZONA, an Arizona corporation;
FARMERS GROUP, INC., a Nevada
corporation,**

      **Defendants.**

### PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND RESPONSE IN OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

      COME NOW, Plaintiffs Howard Arnold, Jimmy Jaramillo, and Gary Wise, and hereby provide their Reply to Defendants' Response to Plaintiffs' Motion for Summary Judgment and Response in Opposition to Defendants' Cross-Motion for Summary Judgment. Plaintiffs state as follows:

## I.      INTRODUCTION

      As explained in Plaintiffs' Motion for Summary Judgment [Doc. No. 57], Plaintiffs are seeking uninsured motorist property damage ("UM-PD") benefits for loss of property caused by an uninsured motorist, using an uninsured motor vehicle. The claims presented by Plaintiffs seek to apply uninsured motorist property damage insurance benefits in a limited scenario—the total

loss of property, by theft, committed by an uninsured motorist using a motor vehicle. Because New Mexico law regarding UM-PD coverage is so well-established, and given the operative facts in this matter are straight-forward, Plaintiffs filed a motion for summary judgment. *See* generally, Plaintiffs' Motion for Summary Judgment [Doc. No. 57].

In response to Plaintiffs' motion, Defendants seek to abrogate a venerable legal principle of New Mexico law that uninsured/underinsured motorist coverage is to be "liberally interpret[ed] . . . in order to implement its remedial purpose." *Romero v. Dairyland Ins. Co.*, 111 N.M. 154, 156, 803 P.2d 243, 245 (1990). Indeed, Defendants ask this Court to abandon the well-established standards for interpretation of the Uninsured Motorist Act, NMSA 1978, Sections 66-5-301 to -303 (1978, as amended through 2003), and to read restrictions and exclusions into the Uninsured Motorist Act, NMSA 1978, Section 66-5-301 (1983), not specifically enumerated by the Legislature. Such a request flies in the face of well-established New Mexico precedent. And Defendants offer no compelling argument why this Court should reverse decades of New Mexico appellate jurisprudence regarding interpretation of the Uninsured Motorist Act, the legislative intent, and the public policy protected by the same. Accordingly, Plaintiffs' Motion for Summary Judgment should be granted, and Defendants' Cross-Motion for Summary Judgment denied.

## II. RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

### A. Plaintiff Gary Wise's Claim.

1. Plaintiffs admit the purported Undisputed Facts identified by Defendants in their Response, Cross-Motion, identified at Paragraphs 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 12 and 13.

2. With respect to Defendants' purported Undisputed Fact No. 11, Mr. Wise disputes the same, and has testified that he witnessed tracks of his ATV leading into the street, left in dust

on the street, ending at a separate set of tire tracks which appear to be a trailer. *See* Exs. A5-A7 to Plaintiffs' Motion for Summary Judgment. The only reasonable inference drawn by the evidence witnessed by Mr. Wise is that his ATV was loaded onto the back of a truck or trailer in commission of the theft, resulting in the complete loss of the property to Mr. Wise.

**B.      Plaintiff Howard Arnold's Claims.**

3.      With respect to Defendants' purported Undisputed Facts related to Mr. Arnold's claims, Plaintiff agree that the following facts are undisputed; those facts set forth in Paragraphs 14, 15, 16, 17, 18, 19 and 20.

**C.      Plaintiff Jimmy Jaramillo's Claim.**

4.      Plaintiffs admit that the following facts set forth in Defendants' purported Undisputed Facts pertinent to the circumstances of Jimmy Jaramillo's claim are undisputed; those facts set forth in Defendants' undisputed facts Paragraph 21, 22, 23, 25, 28, 30, 31, 32, 35, 36 and 39.

5.      With respect to the purported Undisputed Facts contained in Paragraph 24 of Defendants Response/Cross-Motion, Plaintiffs state Jimmy Jaramillo contributed monies to Sonny's Landscaping business, held legal ownership of the Bobcat, retained potential liabilities, and was considered by his father as a partial partner in the business. *See* Exs. C-1 through C-4 to Plaintiffs' Motion for Summary Judgment.

6.      With respect to Defendants' purported Undisputed Facts contained in Paragraph 26 of their Response/Cross-Motion, Plaintiffs affirmatively state the Bobcat was purchased by, and in the name of, Jimmy Jaramillo. *See* Ex. C-4 to Plaintiffs' Motion for Summary Judgment.

7.      With respect to Defendants' purported Undisputed Facts contained in Paragraph 27 of their Response/Cross-Motion, Plaintiffs admit that Jimmy Jaramillo utilized his credit to

purchase and finance the Bobcat for use by his father. Plaintiffs further state Jimmy Jaramillo considered himself liable for the debt, made some payments on the Bobcat, and acknowledged liability in the event of damage caused by the Bobcat. *See* Ex. C-4 to Plaintiffs' Motion for Summary Judgment.

8.     With respect to Defendants' purported Undisputed Facts contained in Paragraph 29 of their Response/Cross-Motion, Plaintiffs state Jimmy Jaramillo considered himself liable for the debt, made some payments on the Bobcat, and acknowledged liability in the event of damage caused by the Bobcat. *See* Ex. C-4 to Plaintiffs' Motion for Summary Judgment.

9.     With respect to Defendants' purported Undisputed Facts contained in Paragraph 33 of their Response/Cross-Motion, Plaintiff admits the Bobcat and trailer were stolen, but deny the trailer was attached to Sonny Jaramillo's truck at the time of the theft.

10.     With respect to Defendants' purported Undisputed Facts contained in Paragraph 37 of their Response/Cross-Motion, Plaintiffs admit that the physical damage to the Bobcat was not caused by a motor vehicle, but dispute that none of the physical damage to the trailer was caused by a motor vehicle. This distinction is irrelevant, however, as Jimmy Jaramillo has withdrawn his claim related to the trailer.

11.     With respect to Defendants' purported Undisputed Facts contained in Paragraph 38 of their Response/Cross-Motion, Plaintiffs admit that Jimmy Jaramillo utilized his credit to purchase and finance the Bobcat for use by his father. Plaintiffs further state Jimmy Jaramillo considered himself liable for the debt, made some payments on the Bobcat, and acknowledged liability in the event of damage caused by the Bobcat. *See* Ex. C-4 to Plaintiffs' Motion for Summary Judgment.

12.     With respect to Defendants' purported Undisputed Facts contained in Paragraph 40 of the Response/Cross-Motion, Plaintiffs affirmatively state that Defendants offered to arbitrate whether or not the physical damage to the Jaramillo property was caused by use of a vehicle or misuse. Plaintiffs deny that they failed to respond to this invitation, and affirmatively state they responded by filing suit. *See* Plaintiffs' Complaint.

**D.      Other Purported Undisputed Facts.**

13.     With respect to the allegations contained Paragraph 41 of Defendants "Other Undisputed Facts," of their Response/Cross-Motion, Plaintiffs deny the allegations contained therein and state the policies speak for themselves.

14.     With respect to the allegations contained in Paragraph 42 of Defendants "Other Undisputed Facts," of their Response/Cross-Motion, Plaintiffs admits the allegations contained therein.

15.     With respect to the allegations contained in Paragraph 43 of Defendants "Other Undisputed Facts," of their Response/Cross-Motion, Plaintiffs deny the allegations contained therein.

16.     With respect to the allegations contained in Paragraph 44 of Defendants "Other Undisputed Facts," of their Response/Cross-Motion, Plaintiffs deny the allegations contained therein.

**E.      Defendants' Objections to Plaintiffs' Statement of Undisputed Facts.**

Plaintiffs respond as follows to Defendants' Objections to Plaintiffs' Statement of Undisputed Facts.

1.    Defendants take exception to Plaintiffs identifying Shirley Wise as a Plaintiff along with her husband, Gary Wise.  Plaintiffs acknowledge that Shirley Wise is not a named Plaintiff in this matter.

2.    Plaintiffs note that Defendants' objections to Plaintiffs' Statement of Undisputed Facts No. 6 and 7 pertain to the inference drawn by the undisputed facts.  Defendants do not dispute that tire tracks of the ATV led up to, but did not continue past, the tire tracks of a small trailer or other vehicle.

3.    With respect to Defendants' objections to Plaintiffs' Statement of Undisputed Facts 11-15 and 17-18, Defendants inaccurately allege that Plaintiffs state that Mr. Jaramillo owned the Bobcat and trailer.  Plaintiffs' Statement of Undisputed Facts Nos. 11 and 15 specify Mr. Jaramillo was the owner of the Bobcat.  As indicated above, the claim for the trailer has been withdrawn, and is not asserted in Plaintiffs' Motion for Summary Judgment.

4.    With respect to Defendants' objections to Plaintiffs' Statement of Undisputed Fact 26, Plaintiffs state the intentional misconduct by the Defendants was one basis for denial of coverage by Farmers in this matter, demonstrating both Farmers' and Plaintiffs' understanding that the thefts were caused intentionally by the unknown motorists.

**III.    The Insurance Code, the Uninsured Motorist Act, and New Mexico Appellate Decisions Interpreting the Same, Mandate that Uninsured Motorists Property Damage Coverage is Available to Plaintiffs for Loss of Use, and Complete Loss of Property Sustained by an Uninsured or Unknown Motorist.**

In their Response/Cross–Motion for Summary Judgment Defendants ask this Court to read into the Uninsured Motorist Act, Section 66-5-301, exclusions not contained therein.  The Defendants' request ignore scores of New Mexico Supreme Court precedent interpreting the Uninsured Motorist Act, the public policy underlying the same, and the manner in which the Uninsured Motorist Act should be construed.  Further, the Defendants disregard the well-

established standard for statutory interpretation related specifically to the Uninsured Motorist Act, and to violate the public policy underlying the same by creating a gap in available uninsured motorist property damage coverage. For these reasons, the Plaintiffs' motion for summary judgment should be granted.

**A.** **The Uninsured Motorist Act must be liberally interpreted to implement its remedial purpose, to place insured persons in the same position as if the uninsured motorist had insurance, and any provision allowing for an exception to uninsured motorist coverage is strictly construed to protect the insured.**

**1.** **Defendants ignore the standard in New Mexico for interpreting the Uninsured Motorist Act.**

In seeking to interpret the Uninsured Motorist Act narrowly, and in an effort to avoid coverage, Defendants ignore the rule for construction and interpretation specific to the Uninsured Motorist Act established by a long history of New Mexico appellate decisions. Indeed, the New Mexico Supreme Court set forth the proper means for interpreting the Uninsured Motorist Act more than 35 years ago in *Chavez v. State Farm Mut. Auto. Ins. Co.*, 87 N.M. 327, 533 P.2d 100 (1975).

> The Uninsured Motorist Statute must be liberally construed to implement this purpose of compensating those injured through no fault of their own. . . . so construed, the only limitations on protection are those specifically set out in the statute itself, i.e., that the insured be legally entitled to recover damages and that the negligent driver be uninsured. . . . the remedial purpose of the statute weighted against State Farm's arguments leads us to conclude the legislature did not intend to allow the creation of a gap in coverage which is contrary to the purpose of the statute.

*Id.* at 102-03, 533 P.2d at 329 (internal citations omitted).

The New Mexico Supreme Court affirmed and expanded on its holding in *Chavez* in the case of *Romero v. Dairyland Ins. Co.*, 111 N.M. 154, 156, 803 P.2d 243, 245 (1990), which stated that:

The Uninsured Motorist Statute, Sec. 66-5-301, embodies a public policy of New Mexico to make uninsured motorist coverage a part of every automobile liability insurance policy issued in this state, with certain limited exceptions. The statute was intended to expand insurance coverage and to protect individual members of the public against the hazard of culpable uninsured motorists. Because we liberally interpret the statute in order to implement its remedial purpose, language in the statute that provides for an exception to uninsured coverage should be construed strictly to protect the insured.

*Id.* (internal citation omitted).

The holdings in *Chavez* and *Romero* form a bedrock principle of New Mexico insurance law. Together, they provide specific guidelines for interpreting the Uninsured Motorist Statute. *See Romero*, 2010-NMCA-024, ¶ 15. Indeed, New Mexico appellate courts have repeatedly followed *Chavez* and *Romero* in holding that the Uninsured Motorist Act is to be interpreted so as to give effect to the legislative intent of expanding uninsured motorist coverage. *See, e.g.*, *Romero v. Progressive Northwestern Ins. Co.*, 2010-NMCA-024, ¶ 15, __ N.M.__, __ P.3d __ (filed 2009) (holding that "the [uninsured motorist] statute must be liberally interpreted and language in the statute that provides for an exception to uninsured coverage should be construed strictly to protect the insured").

It is telling that **none** of the cases cited by Defendants setting forth the standard for statutory interpretation are cases related to interpretation of New Mexico's Uninsured Motorist Act. Defendants cite only one New Mexico insurance case, *State Farm Auto Ins. Co. v. Ovits*, 117 N.M. 547, 873 P.2d 979 (1994); however, that case stands for nothing more than the unremarkable proposition that an insured may collect uninsured motorist benefits if he or she would be able to recover from the uninsured tortfeasor. *Id.* at 549, 873 P.2d at 981. The Defendants cite one additional insurance case, an out of jurisdiction case, <u>Gloe v. Iowa Mutual Insurance Company</u>, 694 N.W.2d 238 (S.D. 2005), to argue that insurance benefits should not be afforded to Plaintiffs. However, **the New Mexico Court of Appeals has**

**expressly rejected the analysis and holding in *Gloe***.  *State Farm Insurance v. Luebbers*, 2005,
138 N.M. 289, 296-297, 119 P.3d 169, 176-177 cert granted 138 N.M. 330, 119 P.3d 1267
(rejecting the holding in *Gloe* because the public policy considerations underlying the New
Mexico Uninsured Motorist Statute are significantly broader than those given by the South
Dakota court in *Gloe*).[1]   The Defendants' reliance on *Gloe* and other out-of-state case law is
simply not applicable to the unique policy considerations giving rise to New Mexico's Uninsured
Motorist Act.

Because the Defendants can point to no legal authority that would allow this Court to
abandon the specific guidelines of the New Mexico Supreme Court regarding interpretation of
the Uninsured Motorist Act, Section 66-5-301, they ask this Court to disregard New Mexico
public policy and to crate a gap in uninsured motorist coverage.  This unfounded request
contravenes the public policy and legislative intent behind the Uninsured Motorist Act.  Indeed,
the New Mexico Supreme Court has cautioned on several occasions against reading the
Uninsured Motorist Act to create unintended gaps in coverage.  *See Bordiansky v. State Farm
Mut. Auto. Ins. Co.*, 2007-NMSC-015, ¶ 9, 141 N.M. 387, 156 P.3d 25 ("[T]his Court has
cautioned on several occasions against reading the Uninsured Motorist Act to create unintended
gaps in coverage").  The main focus behind the Uninsured Motorist Act is to allow for coverage
to be provided for innocent motorists injured through the fault of uninsured or underinsured
motorist in New Mexico.  *See id*. ("The main focus behind the Uninsured Motorist Act was to
allow for coverage to be provided for innocent motorists injured through the fault of uninsured or
underinsured motorists in New Mexico.").

---

[1] Undersigned counsel are the attorneys of record in the *Luebbers* matter.

## 2. An exclusion of "loss of use" or "theft" damages caused by an uninsured motorist is not contained in, and is therefore not permitted by, the Uninsured Motorist Act.

Defendants assert that because the words "loss of use" or "theft" are not contained in the Uninsured Motorist Act, that this demonstrates the Legislature intended to exclude coverage for these losses under uninsured motorist coverage, as set forth by the Uninsured Motorist Act. Defendants' argument is flawed, however, because the remedial purpose and legislative intent of the Uninsured Motorist Act requires that the Act be liberally interpreted and strictly construed in favor of expanding coverage for losses caused by uninsured motorists.[2]  To that end, the **only** limitations on protection of uninsured motorist coverage are those **specifically** set out in the Uninsured Motorist Act itself.  Namely, (1) that the insured be legally entitled to recover damages, and (2) that the negligent driver be uninsured.  *Schmick v. State Farm Mut. Auto. Ins. Co.*, 103 N.M. 216, 219, 704 P.2d 1092, 1098 (1985).  Only where the exclusions can be construed to be within the Legislature's intent, as in the territorial exclusion in *Dominguez v. Dairyland Ins. Co.*, 1997-NMCA-065, ¶¶ 7, 8, 123 N.M. 448, 942 P.2d 191, or where a claim is not completely precluded and the limit simply implicates policy limits, as in *Gonzales v. Allstate Ins. Co.*, 122 N.M. 137, 143, 139, 921 P.2d 944, 950 (1996), "will an exclusion on uninsured motorist coverage be considered valid." *Luebbers*, 2005-NMCA-112, ¶ 23; *see also Bordiansky*, 2007-NMSC-015, ¶ 9 ("[T]his Court has cautioned on several occasions against reading the Uninsured Motorist Act to create unintended gaps in coverage"); *State Farm Mut. Auto. Ins. Co.*

---

[2] Notably, even Defendants' coverage counsel conceded that "when property is damaged or destroyed by an uninsured motorist, the measure of damages, if applicable, generally will include a loss of use for the reasonable period to repair or replace the property."  *See* Ltr. from Daniel J. O'Brien to Geoffrey R. Romero, Jan. 25, 2006, attached to Defendants' Response to Plaintiffs' Motion for Summary Judgment and Response in Opposition to Defendants' Cross-Motion for Summary Judgment as Exhibit 14.

*v. Ballard*, 2002-NMSC-030, ¶ 11, 132 N.M. 696, 54 P.3d 537 (providing that exclusion of coverage in mandatory automobile liability policies for insureds and family members violates the requirements of both statutory and case law and such exclusions are therefore contrary to New Mexico public policy); *Phoenix Idem. Ins. Co. v. Pulis*, 2000-NMSC-023, ¶ 20, 129 N.M. 395, 9 P.3d 639 ("We have consistently invalidated rejections of UM coverage provisions that are inconsistent with the requirements imposed by statute and the Superintendent."); *Foundation Reserve Ins. Co. v. Marin*, 109 N.M. 533, 535,787 P.2d 452, 454 (1990) ("The only legitimate limitations on recovery are those specifically set out in Section 66-5-301: (1) that the insured legally be entitled to recover damages, and (2) that the negligent driver be uninsured."); *Demir v. Farmers Texas County Mut. Ins. Co.*, 2006-NMCA-091, ¶ 5, 140 N.M. 162, 140 P.3d 1111 (citing *Chavez* for the proposition that "the only limitations on [uninsured motorist] protection are those specifically set out in the statute itself, i.e., that the insured be legally entitled to recover damages and that the negligent driver be uninsured").

Defendants request that this Court read limitations, exceptions and exclusions into the Uninsured Motorist Act where language providing specific coverage is not provided. But the Defendants' novel take on New Mexico's Uninsured Motorist Act violates public policy and the guidelines set forth by the New Mexico Supreme Court regarding construction of the Uninsured Motorist Act, by reading an exclusion into the Act that was not set forth by the Legislature. Defendants' proposed interpretation further violates public policy and the legislative intent of the Uninsured Motorist Act by creating an impermissible gap in coverage. *See Bordiansky*, 2007-NMSC-015, ¶ 9; *Pulis*, 2000-NMSC-023, ¶¶ 1, 8. Defendants' misguided attempt to read exclusions into the Uninsured Motorist Act that are not contained therein should be rejected as

against public policy, contrary to the legislative intent in enacting the Uninsured Motorist Act, and in contravention of well-established New Mexico appellate opinions interpreting the same.

**B.      Defendants' proposed requirement that "loss of use" damages be payable only when accompanied by physical damage is a restriction to uninsured motorist coverage not found in the Uninsured Motorist Act.**

Defendants acknowledge that it is inappropriate for this Court to read into the Uninsured Motorist Act a "loss of use" exception, when such exception is not contained within the Act itself.  § 66-5-301.  As a fallback position, Defendants concede that "loss of use" damages may be contemplated by the Uninsured Motorist Act, but that this Court should read into the Act a restriction that such damages are payable only when accompanied by physical damage. Defendants fail to acknowledge, however, that adding the requirement that "loss of use" damages be payable only when accompanied by physical damage is a restriction of uninsured motorist coverage, not specifically set forth in the Uninsured Motorist Act, creating an impermissible gap in coverage. *See Bordiansky*, 2007-NMSC-015, ¶ 9; *Chavez*, 87 N.M. at 329, 533 P.2d at 102; *Pulis*, 2000-NMSC-023, ¶¶ 1, 8.

As noted in Plaintiffs' Motion for Summary Judgment, following the guidelines set forth by the New Mexico Supreme Court for interpretation of the Uninsured Motorist Act, consistent with its purpose, and avoiding gaps in coverage, mandates finding that "loss of use" damages are covered under the UM-PD coverage, and that Defendants requested restriction to such coverage is impermissible.

The purpose of our Uninsured Motorist statute is to place insured persons in the same position as if the uninsured motorist had insurance. *Schmick*, 103 N.M. at 219, 704 P.2d at 1095. Uninsured motorist coverage is intended to act in place of the tortfeasor's liability policy, placing victims in the same position they would have been in if the tortfeasor had coverage.  *Luebbers*,

2005-NMCA-112, ¶ 24.   The Uninsured Motorist statute is designed to protect individuals against the hazard of culpable, but uninsured, motorists and to place the insured in the same position as he or she would have been had the tortfeasor had liability insurance.  *McMillan v. Allstate Indem. Co.*, 2004-NMSC-002, ¶ 17, 135 N.M. 17, 84 P.3d 65.   Finally, the Uninsured Motorist Statute is interpreted liberally to implement its remedial purpose, and any provision allowing for an exception to uninsured motorist coverage is strictly construed to protect the insured.  *Pulis*, 2000-NMSC-023, ¶ 7.

Contrary to the stated purpose of the Uninsured Motorist Act, and in contravention of the New Mexico Supreme Court's guidelines regarding interpretation of the same, Defendants ask this Court to construe the Uninsured Motorist Act in a narrow, more restricted fashion than other insurance provisions and the Mandatory Financial Responsibility Act ("MFRA"), NMSA 1978, Sections 66-5-201 to -239 (1978, as amended through 2001).

The MFRA provides the minimum required liability limits required to respond in damages arising out of the use of a motor vehicle and to assure that a judgment can be satisfied. NMSA 1978, § 66-5-215 (1983).   In defining a judgment, the New Mexico Legislature expressly included loss of use as a type of damage to be covered by automobile insurance:

> "Judgment," as used in the Mandatory Financial Responsibility Act, means any judgment which becomes final by expiration without appeal of the time within which an appeal might have been perfected or by final affirmation on appeal rendered by a court of competent jurisdiction of any state or of the United States, upon a cause of action arising out of the ownership, maintenance or use of any motor vehicle of a type subject to registration under the laws of New Mexico, for damages, including damages for care and loss of services, because of bodily injury to or death of any person or **for damages because of injury to or destruction of property, including the loss of use thereof**, or upon a cause of action on an agreement of settlement for such damages.

NMSA 1978, § 66-5-209 (1983) (emphasis added).

The MFRA further evidences intent of a tortfeasor to provide financial responsibility for loss of use damages in setting forth the requirements for the application of the permitted cash deposit as an alternative to an insurance policy.

> The cash deposit provided for in Section 66-5-226 NMSA 1978 shall be held by the state treasurer to satisfy, in accordance with the provisions of the Mandatory Financial Responsibility Act, any execution on a judgment issued against the person making the deposit, for damages, including damages for care and loss of services because of bodily injury to or death of any person or **for damages because of injury to or destruction of property, including the loss of use thereof**, resulting from the ownership, maintenance, use or operation of a motor vehicle of a type subject to registration under the laws of New Mexico after the deposit was made. . . .

NMSA 1978, § 66-5-227 (1983) (emphasis added). It is logically inconsistent to suggest that the New Mexico Legislature intended to require those persons who are opting to self-insure their vehicles to pay for loss of use damages while excluding insurance companies.

In addition, "loss of use" damages are mandated by the New Mexico Insurance Code. The New Mexico Insurance Code defines "property" insurance as follows:

> A.   "property" insurance is insurance of real or personal property of every kind and **of every interest therein** against **loss** or damage from any and all hazards or causes, and against **loss consequential** upon such **loss** or damage.
>
> B.   "property" insurance includes also insurance against the liability of the insured for **loss** or damage to the property or **property interest** of another from any cause for which the insured's property involved in such loss or damage is insured by the same insurer.
>
> C.   "property" insurance does not include title insurance, as defined in Section 115 of this article.

NMSA 1978, § 59A-7-4 (1984) (emphasis added).

The New Mexico Insurance Code also provides guidance regarding vehicle insurance.

> "vehicle" insurance is insurance covering; A. Physical Damage. Insurance against **loss of** or damage to any land vehicle or aircraft or any draft or riding animal resulting from or incident to ownership, maintenance or use of any such vehicle, aircraft or animal.

NMSA 1978, § 59A-7-7 (1984) (emphasis added).

Defendant Farmers inherently recognizes that the New Mexico MFRA mandates that loss of use be covered under property damage losses, including such coverage specifically in its definition of property damage as pertains to its liability coverage. Under the definitions provision, pertinent to liability coverage, the Farmers' policies at issue in this matter define property damage as follows:

> **Property damage** means physical injury to or destruction of tangible property, including the loss of its use.

Defendants cite *Cress v. Scott*, 117. N.M. 3, 868 P.2d 648 (1994), in support of the argument that "loss of use" damages are not payable absent actual physical damage to property. The New Mexico Supreme Court's Opinion in *Cress*, however, does not support Defendants' position. In *Cress*, the plaintiff sued a repair shop for breach of contract and negligent workmanship. *Id.* at 650, 868 P.2d at 5. The plaintiff had experienced substantial mechanical issues involving a used automobile he had purchased for use in his insurance sales business. *Id.* He took his vehicle to Scott's Repair Shop for repair. *Id.* After retrieving the vehicle from Scott's Repair Shop, Cress determined that Scott had failed to perform necessary repairs to the vehicle. The plaintiff was without the use of his vehicle while a second automobile mechanic fixed the mechanical issues with his car. *Id.* The plaintiff brought suit in which he sought damages including, inter alia, loss of use.

In determining the proper bases for loss of use damages, the New Mexico Supreme Court held that the actual rental of a replacement or substitute vehicle was not necessary to prove loss of use damages, and that the UJI indicating the same was limited in its application only to "proper circumstances." *Id.* at 650, 868 P.2d at 5. The court in *Cress* affirmed that loss of use

damages may be measured by the reasonable rental value of a substitute vehicle, even in the absence of actual rental. *Id.* at 651, 868 P.2d at 6. The court further indicated that the reasonable rental value of substitute property is a better measure of inconvenience than mere conjecture. *Id.* The *Cress* court limited damages, in the case, to the reasonable period of time needed to make repairs, extending the period only if defendant causes or adds to any delay. *Id.*

But the *Cress* court in no way held that damage was a necessary showing to obtain loss of use damages. To the contrary, the New Mexico Supreme Court's ruling in *Cress* recognizes that "loss of use" damages may be payable in situations that do not involve physical damage to property. As noted, Cress' suit was based on breach of contract and failure to make proper repair. The defendant in *Cress* did not cause the mechanical defects for which Cress sought repair. Additionally, the New Mexico Supreme Court provides instruction to trial courts that they must craft jury instructions in a manner which are proper given the particular circumstances of each case. *Id.* at 650, 868 P.2d at 5.

In this matter, the proper measure of loss of use damages, given the circumstances, is reasonable rental value until return of the property but not to exceed the value of the property lost. *Id.* at 651, 868 P.2d at 6. This instruction would best fit the circumstances presented to this Court wherein two of the claimants had property taken by uninsured motorists, which was never returned, and where one of the claimants had property taken by an uninsured motorist, but recovered the property. At a minimum, the *Cress* opinion demonstrates that loss of use damages may be awardable absent physical damage to property in cases of breach of contract or negligent failure to repair, and that the court can fashion an appropriate jury instruction to set forth a proper measure of these damages.

Defendants' citations to *Sadler v. Pacific Indemnity Co.*, CIV-08-670/RLP/LFG, *Ehlers v. Johnson*, 476 N.W.2d 291 (Wis. Ct. App. 1991), and *Coulter v. Cigna Property & Cas. Cos.*, 934 F.Supp. 1101 (N.D. Iowa 1996), are misdirected and do not apply to the circumstances of the instant case. Each of the cases cited by Defendants are cases that construe limitations of property damage coverage under homeowners or business liability insurance policies. In *Sadler*, the court found proper restrictions to the insurance policy precluded coverage. Those restrictions included the failure of an insured to demonstrate an "occurrence" as defined by the policy, and failure to demonstrate "loss of use" as triggered by the contractual language setting forth limitations to coverage under contract. *See Sadler*, CIV-08-670/RLP/LFG; *Ehlers*, 476 N.W.2d at 293-94; *Coulter*, 934 F.Supp. at 1118, 1122. None of the cases relied upon by Defendants involve interpretation of uninsured motorist coverage under the New Mexico Uninsured Motorist Act, Section 66-5-301. In none of the cases cited by Defendants were the courts required to consider whether or not limitations to the coverages at issue were prohibited by statute, by legislative intent, and by appellate opinions interpreting the same.

The instant case is brought under the Uninsured Motorist Act of New Mexico. The Uninsured Motorist Act, Section 66-5-301, must be liberally interpreted consistent with its purpose, to place insured persons in the same position as if the uninsured motorist had insurance. *Schmick*, 103 N.M. at 219, 704 P.2d at 1095. Any provision allowing for an exception to uninsured motorist coverage is strictly construed to protect the insured. *Pulis*, 2000-NMSC-023, ¶ 6. The Legislature did not intend to allow the creation of a gap in coverage because it is contrary to the purpose of the statute. *Bordiansky*, 2007-NMSC-015, ¶ 7 (citing *Chavez*, 87 N.M. at 330, 533 P.2d at 103). The only limitations on protection are those specifically set out in the statute itself—that the insured be legally entitled to recover damages and that the negligent

driver be uninsured. *Luebbers*, 2005-NMCA-112, ¶ 14 (citing *Schmick*, 103 N.M. at 219, 704 P.2d at 1095).

Defendants do not, and cannot, demonstrate that restrictions or exclusions to coverage that are valid in commercial liability or homeowner liability insurance policies would be permitted restrictions or exclusions to uninsured motorist coverage procured under the New Mexico Uninsured Motorist Act.

Defendants concede that Farmers of Arizona pays for "loss of use" damages under the uninsured motorist property damage coverages in "certain circumstances." *See* Defendants' Brief at 15-16. Defendants contend Plaintiffs recitation of Defendants' prior testimony regarding such payment is somehow misleading. What remains clear, however, is that the Defendants pay "loss of use" damages from the UM-PD coverage benefits in certain circumstances despite the fact that the Farmers' policy, on its face, precludes such damages, and despite the fact that Defendants now argue such damages are excluded under the Uninsured Motorist Act because they are not specifically described therein. *See* Defendants' Statement of Undisputed Fact No. 41; *see also* Defendants' Brief at 10-13. Defendants do not pay "loss of use" damages as a gift or courtesy to their insureds. That Defendants pay "loss of use" damages under the UM-PD provisions of their policies is a tacit acknowledgment of the requirements of the Uninsured Motorist Act.

The property losses presented herein are the complete loss of property to the insureds. For Arnold and Wise the loss is permanent. Their property has never been recovered. For Jaramillo, the complete loss of his Bobcat was temporary. The Bobcat was recovered. The loss of use, however, is a measure of damages which is easily measured. *See Cress*, 117 N.M. at 6-7, 868 P.2d at 651-62.

**C.     The cases identified by Defendants to support the concept that theft does not constitute property damage, are not instructive and not applicable to the circumstances of this case.**

Defendants have cited several cases from other jurisdictions in support of their argument that theft cannot constitute property damage under the UM-PD provisions of the Farmers' policies issued in New Mexico. While Defendants contend that the cases cited are somehow instructive in the instant case, Defendants' contention is simply inaccurate.

None of the cases cited by Defendants address the uninsured motorist property damage provisions of an auto policy, particularly such policy issued under the provisions of the New Mexico Uninsured Motorist Act, Section 66-5-301. As previously noted, restrictions or exclusions to uninsured motorist coverage not contained within the statute are not permitted. *Luebbers*, 2005-NMCA-112, ¶ 23; *Schmick*, 103 N.M. at 219, 704 P.2d at 1095. All of the cases from other jurisdictions cited by Defendants rest on interpretation of policy definitions, restrictions, or exclusions that are not UM-PD contracts issued in the State of New Mexico. Defendants offer no legal support to justify this Court's reliance on opinions that uphold restrictive policy definitions or exclusions in an Ohio homeowner's policy, *see Harry Winston, Inc. v. Travelers Indem. Co.*, 366 F.Supp. 988, 990 (E.D. Mo. 1973), or the restrictions and exclusions contained in a general liability policy for the state of Vermont, *see State v. Glen Falls Ins. Co.*, 315 A.2d 257, 258 (Vt. 1974), or specific shipping contract restrictions contained in a shipper's waybill, *see Travelers Indem. Co. v. AMR Services Corp.*, 921 F.Supp. 176, 179 (S.D.N.Y. 1996). Each of the cases cited by Defendants reflects out-of-jurisdiction court opinions which uphold permitted insurance policy or contractual restrictions and exclusions for those jurisdictions where each of the cases was decided. None of the cases cited by Defendants has any bearing on the interpretation of UM-PD coverage on policies issued in New Mexico,

pursuant to our Uninsured Motorist Act. Defendants fail to provide this Court with any authority for abandonment of the guidelines set forth by the New Mexico Supreme Court for interpretation of the Uninsured Motorist Act, and the long line of cases interpreting the public policy and legislative intent contained therein.

The out-of-jurisdiction cases submitted by Defendants are not instructive in interpreting our unique New Mexico law and should therefore not be considered by this Court.

**IV.    Jaramillo has an insurable interest in the Bobcat and has standing.**

   **A.    Jaramillo has an insurable interest in the stolen Bobcat.**

The New Mexico Legislature has set forth a specific definition of what constitutes an insurable interest pursuant to NMSA 1978, Section 59A-18-6 (1984). According to this statute, an insurable interest in property is explained and defined as follows:

>    A.    No contract of insurance of property or of any interest in property or arising from property shall be enforceable as to the insurance except for the benefit of persons having an insurable interest in the things insured as at the time of the loss.
>
>    B.    "Insurable interest" as used in this section means any actual, lawful and substantial economic interest in the safety and preservation of the subject of the insurance free from loss, destruction, pecuniary damage or impairment.

Here, it is undisputed that Jimmy Jaramillo purchased the Bobcat in his name, and obtained financing in his name. *See* Exs. C-1 through C-4 to Plaintiffs' Motion for Summary Judgment. As the legal owner of the property, Jimmy Jaramillo was free to use it in any manner he saw fit. His intention was to make the property available to his father, for use in his father's landscaping business, with the agreement that his father would make payments on the Bobcat. The agreement between Jimmy Jaramillo and his father to provide the Bobcat to Sonny Jaramillo for use in his business does not invalidate Jimmy Jaramillo's legal ownership interest. He

remained liable for the financing procured on the property. *See* Ex. C-4 to Plaintiff's Motion for Summary Judgment. Jimmy Jaramillo made some payments when his father was unable to do so. *See* Exs. C-1 through C-4 to Plaintiffs' Motion for Summary Judgment.

Had Sonny Jaramillo elected not to make payments towards the Bobcat, Jimmy Jaramillo would have been faced with the choice of making the payments himself or sustaining damage to his credit. As noted in *Teague-Strebeck Motors, Inc. v. Chrysler Insurance Co.*, 1999-NMCA-109, ¶¶ 43, 55, 127 N.M. 603, 985 P.2d 1183, *overruled on other grounds by Sloan v. State Farm Mut. Auto. Ins. Co.*, 2004-NMSC-004, 135 N.M. 106, 85 P.3d 230, analysis of insurable interest in property requires consideration of both the potential loss and the potential recovery of those with insurable interest. Jimmy Jaramillo, in his deposition testimony, confirmed that he was the legal owner of the Bobcat. If payments were not made on the Bobcat he would have been financially responsible for those payments. *See* Ex. C-4 to Plaintiffs' Motion for Summary Judgment. Jimmy Jaramillo further testified that he assisted Sonny's Trees by acquiring financing for vehicles and providing vehicles to the business, and by making monetary contributions. He testified that he made those contributions because he had an interest in seeing Sonny's Trees succeed because this business was the business his father used to provide for the family. *See* Exs. C-1 through C-4 to Plaintiffs' Motion for Summary Judgment. By this, Jimmy Jaramillo received a benefit from use of the property, fulfilling his desire to see his family provided for. Besides having the ultimate financial responsibility for payment of the Bobcat, Jimmy Jaramillo understood and accepted that if there was an accident involving the Bobcat he may incur legal liability. *See* Ex. C-4 to Plaintiffs' Motion for Summary Judgment.

As noted by Defendants, the test for insurable interest in New Mexico is whether, at the time of the loss from the perspective of the insured's factual expectations, "the insured faces a

real risk of loss."  At all times Jimmy Jaramillo was the legal owner of the Bobcat, was ultimately responsible for the loan related to the Bobcat, and could experience legal liability if the Bobcat was involved in an accident.  In all ways Mr. Jaramillo faced a real risk of loss related to his ownership of the Bobcat.

      **B.**       **Jimmy Jaramillo suffered damages related to loss of use of the Bobcat.**

There is no dispute that Jimmy Jaramillo purchased the Bobcat in his name, and obtained financing for the same in his name.  Jimmy Jaramillo was the legal owner of the Bobcat at the time of the theft.  He purchased and obtained financing on the Bobcat in order to make it available for his father's use in the business of Sonny's Trees.  *See* Exs. C-1 through C-4 to Plaintiffs' Motion for Summary Judgment.  Jimmy Jaramillo made some payments directly on the Bobcat.  *See* Exs. C-1 through C-4, D-2 through D-4 to Plaintiffs' Motion for Summary Judgment.  He also contributed money to Sonny's Trees.  *See* Exs. C-1 through C-4 to Plaintiffs' Motion for Summary Judgment.  With respect to all of these activities Jimmy Jaramillo was acting in the furtherance of Sonny's Trees, to enable his father to provide support for the family. *See* Exs. C-1 through C-4 to Plaintiffs' Motion for Summary Judgment.

Jimmy Jaramillo purchased and financed the Bobcat with the intention that it be put to the specific purpose of being used in Sonny's Trees Landscaping business.  As the legal owner of the property he could put the Bobcat to any legal use he desired.  Jimmy Jaramillo purposely put the Bobcat to a use which would benefit his father's business, based upon his desire to help his father support the family.  It is not relevant that Mr. Jaramillo did not derive a direct economic benefit from the purpose to which he put his property.  Mr. Jaramillo obtained the benefit from the property which he desired, enabling his father to utilize the same in furtherance

of his business, and enabling him to support the family. *See* Exs. C-1 through C-4 to Plaintiffs' Motion for Summary Judgment.

Upon theft of the Bobcat by use of a motor vehicle, Jimmy Jaramillo was unable to put his property to the use for which it was intended. Mr. Jaramillo's damages are properly characterized as "loss of use" damages. The New Mexico Supreme Court has established the proper measurement for loss of use of property, such as the Bobcat at issue, and that measure is the reasonable rental value of substitute property. *See Cress*, 117 N.M. at 6, 868 P.2d at 651.

The arrangement between Jimmy Jaramillo and his father, Sonny Jaramillo, is no different than the scenario by which a parent may procure a vehicle and financing for use by an adult child. The purpose of the arrangement may be to assist the adult child in furtherance of education, furtherance of business, or simply to assist the adult child financially. Defendants' position would suggest that an adult parent taking title in a vehicle, obtaining financing for a vehicle, but allowing the adult child to make payments and control use of the vehicle, would destroy the parents' legal interest in the vehicle and eliminate the parents' claim for financial loss upon destruction of the same.

Defendants offer no legal support to demonstrate that Mr. Jaramillo's legal ownership, or financial interest, was abrogated by his agreement for use of the property by his father. That this scenario represents an adult child assisting his father, rather than a parent assisting an adult child, is of no consequence. The legal ownership and right to recover damages for loss of the property is not destroyed by the same.

While the Bobcat was out of the possession of Mr. Jaramillo, and his father, it could not be put to the purpose intended by Mr. Jaramillo. Mr. Jaramillo, therefore, sustained damages and has standing to proceed in this matter.

**V.    The thefts were caused by "owners or operators of uninsured motor vehicles" from whom Plaintiffs are "legally entitled to recover damages."  The thefts arose "out of the ownership, maintenance or use of a motor vehicle."**

Defendants accept, for the purposes of the Motion for Summary Judgment, their Response, and their Cross-Motion, Plaintiffs' assumption that vehicles were involved in transporting the thieves to and from the crime scenes.  Though not explicit in Defendants' statement, presumption that the thieves left the crime scene utilizing a vehicle also presumes that a vehicle was used to remove the property from the crime scene.  As set forth in Plaintiffs' Motion for Summary Judgment, they are entitled to recovery of uninsured motorist coverage if: (1) the damages arose out of the ownership, maintenance, or use of the uninsured motor vehicle, and (2) the insureds are legally entitled to recovery monetary damages for the damage caused by the owner or operator of the uninsured motor vehicle.  *Britt v. Phoenix Indem. Ins. Co.*, 120 N.M. 813, 816, 907 P.2d 994, 997 (1995); *State Farm Mut. Auto. Ins. Co. v.  Blystra*, 86 F.3d 1007, 1014 (10th Cir. 1996).  As noted in Plaintiffs' Motion for Summary Judgment, Plaintiffs here easily meet this burden.

**A.    Plaintiffs' damages arose out of the ownership, maintenance, or use of a motor vehicle under New Mexico's well-established three-part test.**

The New Mexico Supreme Court adopted a three-part test to determine whether losses arise out of ownership, maintenance, or use of a motor vehicle in *Britt*.  The three-part test considered by the *Britt* court includes the following:

1)    There is sufficient causal nexus between the use of the uninsured vehicle and the resulting harm;

2)    Whether or not there is an act of independent significance which breaks the causal link between use of the vehicle and the harm; and

3)    Whether or not the vehicle was put to "normal" use when it caused the injury.

*Britt*, 120 N.M. at 818, 907 P.2d at 999; *Barncastle v. Am. Nat'l Prop. & Cas. Companies*, 2000-NMCA-095, ¶ 7, 129 N.M. 672, 11 P.3d 1234 (using *Britt*'s three-part test). Here, Plaintiffs easily demonstrate each of the three factors.

**1.      The uninsured vehicles were active accessories to alleged thefts.**

      **a.      The property losses to Plaintiffs were completed by use of uninsured motor vehicles.**

Plaintiffs have demonstrated that the loss of property to Plaintiffs, resulting in loss of use of such property, was caused by the actions of uninsured motorists using motor vehicles. Defendants, for purposes of Plaintiffs' Motion for Summary and Defendants' Cross-Motion for Summary Judgment, accept the assumption that vehicles were involved in transporting the thieves away from the crime scenes, presumably in possession of the stolen property. Plaintiffs, however, need not rely on Defendants' concession as the facts speak for themselves.

In the theft of the Bobcat, and the trailer upon which it was situated, the only known witness advised Sonny Jaramillo that she saw the thieves hook up the trailer, with the Bobcat, to a pickup truck, and drive away. *See* Ex. D-5 to Plaintiffs' Motion for Summary Judgment.

With respect to the theft of Gary Wise's four-wheeler, the only evidence of the theft is the presence of tire tracks of his four-wheeler leading to, and not beyond, a separate set of tire tracks. The tire tracks located by Mr. Wise were in sand in the street next to his property. Had the four-wheeler been pushed or ridden away from the Wise residence the tire tracks would have continued in the sand, rather than stopping at a separate set of tracks. *See* Exs. A-5 through A-7 to Plaintiffs' Motion for Summary Judgment.

With respect to the theft of Howard Arnold's four-wheeler, witnesses saw the same being driven away in the bed of a truck operated by an unidentified motorist. *See* Exs. F-3, G-2 through G-7, H-1 through H-3 to Plaintiffs' Motion for Summary Judgment. All evidence

available indicates, and the only reasonable inferences to be drawn therefrom, that the property thefts related to each of the Plaintiffs was completed when unidentified motorists utilized vehicles to remove the Plaintiffs' respective property from the scenes of the crimes. The use of the vehicles to cause the damages to Plaintiffs is inextricably linked to the actual damage caused.

Here, the unknown tortfeasors use of the vehicle allowed the thief/thieves to approach the property, load the property into a vehicle, and use the vehicle to remove the property causing damage to the Plaintiffs. These factual scenarios are most analogous to facts considered by the New Mexico Court of Appeals in *Barncastle*, 2000-NMCA-095. In *Barncastle*, the plaintiff was driving a vehicle which was stopped at the intersection of Fourth Street and Alameda Road in Albuquerque, New Mexico. *Id.* ¶ 2. An unidentified vehicle pulled up next to the plaintiff's vehicle, whereby an unidentified passenger got out, walked over to the plaintiff's window and shot him with a handgun. *Id.* Immediately thereafter, the assailant returned to the unidentified vehicle and left the scene at a high rate of speed with its headlights off. *Id.* Barncastle suffered substantial personal injuries as a result of the shooting. *Id.* In finding that uninsured motorist coverage was available to Mr. Barncastle, the New Mexico Court of Appeals indicated that the assailant's vehicle was an "active accessory" in the attack. *Id.* ¶ 9. The assailant-driver used the vehicle to get into a position where assailant could get out and shoot Barncastle. *Id.* As noted by the *Barncastle* court, whether it was a passenger or driver who shot the victim does not change the fact that the vehicle was an integral element of the shooting. *Id.* (citing *Blystra*, 86 F.3d at 1014). The vehicle was further used to escape the scene. *Id.*

Plainly, in the instant case the tortfeasors utilized vehicles to position themselves, and any co-conspirators, in such a fashion as to enable them to remove Plaintiffs' property by use of a vehicle. The operators of the unknown vehicles then utilized the same to remove the property

from the scenes of the respective crimes. Here, as in *Barncastle*, no act of independent significance broke the causal chain. Here, as in *Barncastle*, the uninsured vehicle was the instrumentality which is "perhaps the major component in the incident, clearly facilitating" the crime. *Id.* ¶ 10.

Here, as in *Barncastle*, the casual chain was not broken because the intended damages were not complete until the tortfeasors left the scene with the stolen property being transported by the uninsured vehicle.

Finally, the uninsured vehicles were put to normal use, transporting persons and property. Defendants cite to no case which holds transportation of persons and property is not the normal use of a vehicle.

> **b.** **The unidentified tortfeasors' use of vehicles to transport Plaintiffs' property away from the scene of the crime, completing the damage to the Plaintiffs, makes the vehicles active accessories triggering uninsured motorist coverage.**

Defendants here argue that mere transportation of the tortfeasors to and from the scene of the crime is inadequate to trigger uninsured motorist coverage for Plaintiffs' losses in this matter. In support of this contention, Defendants cite several cases in which parties were harmed irrespective of use of an uninsured motor vehicle.

Defendants rely primarily on one New Mexico case, *Hartford Ins. Co. of the Midwest v. Estate of Tollardo*, 409 F.Supp.2d 1301 (D.N.M. 2005). In *Tollardo*, the decedent was involved in gang related violence. *Id.* at 1302-03. The uninsured tortfeasor had utilized his vehicle to drive around town searching for individuals he believed had robbed him. *Id.* at 1303. After searching for some time, he gave up and was on his way home when he spotted the victims parked at a gas station. *Id.* He drove towards the gas station, and in his haste, slammed him car into a nearby light pole. *Id.* at 1304. He then exited his vehicle, ran towards the victims in their

parked car, and began shooting, killing two occupants and injuring a third. *Id.*; *see also*
Defendants' Response and Cross-Motion for Summary Judgment at p. 23. The *Tollardo* court,
concluding that Mr. Tollardo did not utilize the vehicle in his attack upon the victims,
determined that the vehicle was not an active accessory to the crime. *Tollardo*, 409 F.Supp.2d at
1308. The tortfeasor was determined to have abandoned his vehicle, approaching the victims on
foot, and then began his attack. *Id.* at 1310. The harm caused by the tortfeasor was wholly
unrelated to the use of a vehicle. *Id.* Defendants cite other out-of-jurisdiction cases with similar
facts for the same proposition. Common in each of these occurrences is that use of a vehicle was
wholly unrelated to the harm caused by the tortfeasors.

The cases cited by Defendants in support of their proposition are dissimilar from the
circumstances of the Plaintiffs' claims in the instant matter. The harm to each of the Plaintiffs
was specifically caused by use of a motor vehicle. Mr. Jaramillo's Bobcat was not gone until it
was removed by use of a pickup truck towing a trailer. *See* Exs. D-1 through D-5 to Plaintiffs'
Motion for Summary Judgment. Mr. Wise's four-wheeler was not gone until it was loaded into a
vehicle and removed from his property. *See* Exs. A-4 through A-7 to Plaintiffs' Motion for
Summary Judgment. Mr. Arnold's four-wheeler was not gone until it was removed from the
scene of the crime in the bed of an unidentified pickup truck. *See* Ex. F-3, G-2 through G-7, H1
through H-3 to Plaintiffs' Motion for Summary Judgment. In each circumstance the vehicles
involved were active accessories in causing the harm claimed by Plaintiffs. As noted previously,
the instant circumstances are most like those considered by the New Mexico Court of Appeals in
*Barncastle*. Here, the vehicles were used to approach the property, to transport the tortfeasors
into position to cause harm, to load the property, and remove the same from the scene of the
crimes. Defendants offer no credible factual allegation to demonstrate that the uninsured

vehicles were not active accessories in causing the harm to Plaintiffs. Plaintiffs here demonstrate use of the uninsured motor vehicles to cause harm, beyond mere transportation of the tortfeasors to the scene of the crimes.

It is significant to note that Defendants do not allege that Mr. Jaramillo's Bobcat was driven under its own power from the scene of the crime. Nor did they allege the Bobcat was carried by thieves on foot. Defendants do not allege that Mr. Wise's four-wheeler was pushed nor ridden away from his home. Defendants do not allege that Mr. Arnold's four-wheeler was pushed, ridden, or carried on foot away from the scene of the crime. Defendants offer no facts to support an argument that the uninsured motor vehicles were not utilized to complete the thefts as alleged by Plaintiffs.

Because the harm caused to Plaintiffs is inextricably tied to the tortfeasors' use of motor vehicles to complete the same, Plaintiffs are entitled to coverage under the uninsured motorist provisions of their respective policies.

       **c.**       **The ATV and Bobcat thefts did not occur without use of a vehicle.**

Defendants allege that Farmers should be excused from coverage in the instant cases because the thefts "could have" occurred without use of a vehicle. Whether or not the Bobcat could have been driven away, or shouldered by a pedestrian, there is no evidence indicating this occurred. Similarly there is no evidence indicating the ATVs were pushed, ridden, or carried away by pedestrians. Whether or not the losses "could have" been sustained by alternate means, without use of a motor vehicle, there is no evidence suggesting this occurred. The only evidence available in each case demonstrates the property losses were completed by use of an uninsured motor vehicle.

**d.**  **Jimmy Jaramillo's loss of use of the Bobcat was caused by use of an uninsured motor vehicle.**

Defendants accurately state that certain physical harm to the stolen Bobcat was not caused by use of a vehicle, but rather by improper use of the Bobcat after it was stolen. To the extent that the Bobcat was damaged through improper use, certainly this damage is unrelated to use of a motor vehicle. Mr. Jaramillo, however, sustained loss of use of the vehicle from the time of its theft until the time it was recovered. Though these damages may be small relative to the physical damage to the Bobcat, the loss of use damage still constitutes damages for which Mr. Jaramillo is entitled to compensation.

**e.**  **The New Mexico cases of *Blystra* and *Barncastle* support Plaintiffs' position.**

In a convoluted discussion, Defendants argue that the losses to Plaintiffs are unlike the circumstances described in *Blystra*, although similar facts were considered by the New Mexico Court of Appeals in *Barncastle*. Defendants' attempt to distinguish the circumstances of Plaintiffs' losses from those set forth in *Blystra* and *Barncastle* amount to making a distinction without a difference. In *Blystra* and *Barncastle*, the tortfeasors utilized a motor vehicle to creep up to the victim without revealing their intent to cause harm, hiding their weapons from public view, using the vehicle as an active accessory to commit the harm, and then using the same as a quick means of escape to avoid apprehension.

Defendants contend that the thieves in the instant cases did not use the vehicle to hide their identities. To date, none of the thieves have been identified. Defendants allege that the thieves approached the Wise property in a slow, methodical, and public manner, and then carefully loaded the ATV into a vehicle, securing the same, followed by a leisurely getaway. *See* Defendants' rendition of facts contained in Response/Cross-Motion at p. 26. While Plaintiffs

agree with Defendants' contention that a vehicle was used to remove Mr. Wise's ATV from the scene of the crime, the remaining details of theft as set forth by Defendants are created from whole cloth. What is known is that the unknown tortfeasors utilized a vehicle to remove the Mr. Wise's ATV from his property, and did so in a fashion which was rapid enough that there are no reported witnesses. The tortfeasors utilized the vehicle to remove the property from the scene of the crime, completing the damage to Mr. Wise, and making good their escape. Whether the tortfeasors drove away from the scene of the crime slowly, or carefully secured their illicit cargo prior to departing, is irrelevant. The only relevant detail is that the vehicle was used to cause harm to Mr. Wise.

Similarly, Defendants contend that because unknown thieves committed the theft of Mr. Jaramillo's Bobcat in public, that this somehow negates the fact that the thieves utilized a vehicle to cause damage to Mr. Jaramillo. Whether the thieves acted covertly, quickly, slowly, or fled the scene at a high rate of speed is irrelevant to this Court's inquiry. The only relevant inquiry, a fact not contested by Defendants, is that the trailer and Mr. Jaramillo's Bobcat were stolen by use of a motor vehicle.

Curiously, Defendants argue that because Mr. Arnold's ATV was stolen in a public place that this fact should somehow negate the idea that the tortfeasors used the vehicle to quickly approach his vehicle, load his property, and flee the scene of the crime with his property, concealing their identities, and evading apprehension. In making this argument Defendants apparently ignore the fact that the drive-by shootings discussed in *Blystra* and *Barncastle* happened on a public roadway.

Regardless of the subtle variations in the losses relative to each of the circumstances, the only relevant inquiry is whether or not the uninsured tortfeasors utilized motor vehicles to

complete the harm to the Plaintiffs, loss of their vehicles, and loss of use thereof. Defendants apparently concede that in each instance the Plaintiffs' property was removed utilizing a motor vehicle, indicating that the theft and harm related thereto was completed via use of a motor vehicle.

2. **No act of independent significance broke the causal nexus between the harm caused and the use of the vehicle.**

While Defendants make a pro forma argument that an act of independent significance broke the causal nexus between the harm caused to Plaintiffs and use of the motor vehicle, they offer no facts to support this argument.

As repeatedly demonstrated, the thieves in each instance completed the theft by use of a motor vehicle. None of the Plaintiffs sustained property loss and loss of use thereof, until their property was driven away from the scene of the crime by an uninsured motorist.

In *Tollardo*, and in *Farmers Ins. Co. of Arizona v. Sedillo*, 2000-NMCA-094, 129 N.M. 674, 11 P.3d 1236, the New Mexico courts determined that the causal nexus between use of a vehicle and harm to the claimant was broken when the tortfeasors left the vehicles and subsequently attacked the victims. *See Tollardo*, 409 F.Supp.2d at 1310; *Sedillo*, 2000-NMCA-094, ¶¶ 9, 10. In each of those cases the harm to the claimants occurred irrespective of the use of a vehicle, and after each of the attackers had left the vehicle in order to complete the assault. In stark contrast, the harm to each of the Plaintiffs here was completed only through use of an uninsured motor vehicle. Defendants offer no facts to support an argument that the casual nexus between the harm and the use of the vehicles was severed.

### 3. The uninsured vehicles were put to normal use in commission of the thefts.

Defendants ask this Court to disregard New Mexico law as set forth in *Blystra* by finding that the use to which the thieves put a motor vehicle is not normal use. The courts in *Britt* and *Blystra*, however, both found that use of a vehicle in commission of a crime may be deemed normal use. *See Britt*, 120 N.M. at 819, 907 P.2d at 1000; *Blystra*, 86 F.3d at 1014. In such a circumstance use of a vehicle as transportation was deemed to be normal use. *Id.* Here, the uninsured tortfeasors utilized the motor vehicles for transportation of person and property. Nothing set forth by Defendants mandates that this Court overrule prior New Mexico jurisprudence. The cases cited by Defendants are dissimilar to the instant cases in that none of those cases in which the court deemed use of the vehicle to be abnormal use involved transportation of persons or property to complete the harm. Here, unknown tortfeasors using uninsured motor vehicles completed the harm through use of the vehicles, through normal use of conveying people and property. [3]

### 4. The owners or operators of the uninsured motor vehicles caused harm to Plaintiffs, for which Plaintiffs are legally entitled to recover damages.

Defendants argue that there is no evidence that the thieves who operated the motor vehicles, causing property damage/loss to Plaintiffs are legally liable to Plaintiffs. Defendants argue that because Plaintiffs cannot prove the specific mindset of the thieves operating the motor vehicles, Plaintiffs cannot prove a culpable mindset, and therefore cannot recover damages.

The facts set forth by Plaintiffs plainly demonstrate that Plaintiffs' property was stolen by use of motor vehicles. In various arguments, Defendants agree that the thefts occurred by use of

---

[3] Although the restrictive qualifying term "normal use" is discussed in *Britt* and *Blystra*, this limiting qualifier is not an exclusion or exception contained in the Uninsured Motorist Act and is therefore impermissible. *See Schmick*, 103 N.M. at 221, 704 P.2d at 1097.

motor vehicles. There is no apparent question that Plaintiffs sustained damage via complete loss of their property, and the loss of use thereof, when uninsured motorists removed the property from the scene of a crime utilizing motor vehicles. At minimum Plaintiffs demonstrate negligence, if one were to take the irrational leap of faith that the thieves operating the motor vehicles were inadvertent thieves at the time they caused the property loss. More reasonably, given all evidence, facts, and circumstances presented, Plaintiffs demonstrate that the operators of the motor vehicles were complicit in the thefts, operating motor vehicles to intentionally complete the harm to Plaintiffs. Defendants offer no evidence, and no legal support, which would indicate the operators of the motor vehicles are not liable for their misconduct in causing Plaintiffs' property losses, and loss of use thereof. Accordingly, this Court should grant Plaintiffs' motion for summary judgment.

**C. Farmers concede that four of its five basis for denial of coverage are not supported in Plaintiffs' Motion for Summary Judgment, Plaintiffs set forth five grounds relied upon by Farmers to deny coverage to Plaintiffs in the instant case.**

Of the five grounds previously relied upon by Farmers to deny coverage, Defendants now abandon all but one. In doing so, Farmers apparently concedes that four of the five reasons it relied upon in denying coverage to Plaintiffs were unfounded, unreasonable, and in violation of public policy. *See* Plaintiffs' Motion for Summary Judgment, p. 21.

In an effort to distance themselves from these wrongful denials of coverage, Defendants now contend that the same are moot. They are moot only in so far as Defendants no longer relies upon these basis for denial of coverage.

## VI.    CONCLUSION

For the foregoing reasons Plaintiffs respectfully request that the Court grant Plaintiffs'

Motion for Summary Judgment, and deny Defendants' Cross-Motion for Summary Judgment on

the issues presented.


Respectfully submitted,


_____/s/_____
Geoffrey R. Romero, Esq.
*Co-counsel for Plaintiffs*
4801 All Saints Road NE
Albuquerque, NM  87120
(505) 247-3338

and


_____
Matthew L. Garcia, Esq.
Bach & Garcia, LLC
*Co-counsel for Plaintiffs*
300 Central SW, Ste. 2000-East
Albuquerque, NM 87120
(505) 899-1030

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on June 1, 2010 I filed Plaintiffs' Reply to Defendants' Response to Plaintiffs' Motion for Summary Judgment and Response in Opposition to Defendants' Cross-Motion for Summary Judgment electronically through the CM/ECF system, which caused all counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

Matthew L. Garcia, Esq.
Bach & Garcia, LLC
*Co-counsel for Plaintiffs*
300 Central SW, Ste. 2000-East
Albuquerque, NM 87120
(505) 899-1030