**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**HOWARD ARNOLD, et al.,**

     **Plaintiffs,**

**v.**                                                                         **No. CIV 09-330 JB/WDS**

**FARMERS INSURANCE COMPANY OF ARIZONA, et al.,**

     **Defendants.**

**PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE
TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

COMES NOW Plaintiffs by and through their counsel Matthew L. Garcia and Geoffrey R. Romero and hereby respectfully provides their reply pertaining to Plaintiffs' Motion for Class Certification [Doc. No. 59]. As grounds for this reply Plaintiffs state as follows:

## I. INTRODUCTION

This matter arises from the Defendants' refusal to inestigate and pay uninsured motorist property damages ("UM/PD") benefits to their insureds. The Plaintiffs were victims of a theft in which the perpetrators of the crimes utilized a motor vehicle to accomplish the thefts. Amended Complaint ("Complaint") [Doc. No. 21] at ¶¶ 10-29. Each of the Plaintiffs suffered loss, including property damage and loss of property, as a result of these crimes and requested coverage from Farmers pursuant to their UM/UIM coverage. Id. at ¶¶ 12, 16, 21. Plaintiffs have filed suit on behalf of themselves and all other New Mexico residents similarly situated.

In their Motion for Class Certification and Memorandum in Support Thereof [Doc. No. 59] established that there are a number of questions of law and fact common to the proposed class including:

1.   Whether Farmers' acts and practices of failing to investigate these claims, and denying its insureds UM/PD coverage for loss arising from theft constitute a breach of its contractual obligations with respect to its policyholders;

2.   Whether Farmers' alleged acts and practices of failing to investigate these claims, and denying its insureds UM/PD coverage for loss arising from theft have breached Farmers' implied covenant of good faith and fair dealing;

3.   Whether Farmers' acts and practices of failing to investigate these claims, and denying its insureds UM/PD coverage for loss arising from theft violate Article 16 of the New Mexico Insurance Code; and

4. The remedies available to Plaintiff and to Farmers' other policyholders, should it be determined that Farmers' acts and practices have violated its duties to its policyholders.

Id. at pp. 9-10.  Through their response to the Plaintiffs' motion, the Defendants make **no** attempt to argue that these issues are not amenable to resolution through class action procedures.  And the Defendants do not (as they cannot) challenge the Plaintiffs' assertion that these questions of law and fact permeate all other issues in this case.  Instead, the Defendants drum up difficulties and claim that individualized issues overwhelm the basic issues at play in this case – i.e. whether Farmers breached its duty to investigate these claims, and further breached its duty to pay its insureds UM/PD coverage for losses arising from theft.  Although the Defendants' arguments are predictable, they are without merit.  There is a common nucleus of facts that are common to and predominate the central legal issues in this case.  And nothing in the Defendants' Response precludes this Court from certifying this matter as a class action.

## II.  ARGUMENT

**A.     The Defendants' Attempt to Increase the Burdens for Class Certification is Without Support in the Law.**

As a threshold matter, there is no legal authority for the Defendants' request that this Court increase the burden upon Plaintiffs seeking to have their case certified for class action

treatment. To be sure, it is incumbent on the Plaintiffs to show that the proposed action satisfies all four elements of Federal Rule 23(a) and at least one of the three provisions under Rule 23(b). See, Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614 (1997). And Plaintiffs do not dispute that this Court may "probe behind the pleadings before coming to rest on the certification question."[1]  Gen. Tel. co. of S.W. v. Falcon, 457 U.S. 147, 160 (1982). But neither the Plaintiffs' burden to show that Rule 23's requirements are satisfied nor this Court's obligation to engage in some examination of the factual and legal theories at issue undermines the well-established legal authority that "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility." Casale v. Kelly, 257 F.R.D. 396, 405 (S.D.N.Y. 2009).

The Defendants ask this Court to discount this legal authority by arguing that the 2003 Federal Advisory Committee Notes to the 2003 Amendments to Rule 23 abrogates the liberal approach to class certification. Opposition to Plaintiffs' Motion for Class Certification [Doc. No. 67] at p. 8. But the Defendants grossly mischaracterize the import of the Advisory Committee's notes. Nowhere in the Committee's commentary is there any indication that the 2003 amendments to Rule 23 were intended to undercut existing jurisprudence. Indeed, such commentary could achieve this outcome because the Committee's commentary does not constitute binding legal authority.

In any event, the Committee commentary cited by the Defendants stands for nothing more than the unremarkable proposition that the court should not certify a class unless the

---

[1] Indeed, the Plaintiffs have filed a motion for summary judgment as to their claims in this case. Accordingly, this is hardly an instance where the Plaintiffs are seeking to avoid a judicial inquiry into the merits of their claims.

requirements set forth in Rule 23 have been satisfied.[2]  And since the 2003 rules were amended, numerous courts in a variety of jurisdictions have reiterated the liberal approach in favor of class certification. <u>Casale</u>, 257 F.R.D. at 405; <u>In re Providian Fin. Corp. Sec. Litig.</u>, 2004 U.S. Dist. LEXIS 31107 (N.D. Cal. 2004) ("Because the early resolution of the class certification question requires some degree of speculation, however, all that is required is that the Court form a 'reasonable judgment' on each certification requirement.") (quoting <u>In re Citric Acid Antitrust Litig.</u>, 1996 U.S. Dist. LEXIS 16409 (N.D. Cal. 1996)).  Moreover, in this circuit, it a long-standing and venerable legal principle that "if there is to be an error made, let it be in favor and not against the maintenance of the class action." <u>Esplin v. Hirschi</u>, 402 F.2d 94, 99 (10th Cir. 1968).

The Defendants attempt to undercut binding authority from the Tenth Circuit by arguing that the holding in <u>Esplin</u> has been limited to only those "cases involving straightforward questions, clearly defined classes, and cases where little or no discovery has been done." Opposition to Plaintiffs' Motion for Class Certification [Doc. No. 67] at p. 9.  In support of this claim the Defendants cite <u>Boughton v. Cotter Corp.</u>, 65 F.3d 823, 827 n. 1 (10th Cir. 1995) and <u>Anderson v. Boeing Co.</u>, 2006 U.S. Dist. LEXIS 76964 (N.D. Okla. 2006).  The Defendants misconstrue these cases.

In <u>Boughton</u>, the Tenth Circuit discussed the <u>Esplin</u> case in determining whether a district erred in denying class certification.  In doing so, the Tenth Circuit merely held that the facts of <u>Esplin</u>, in which the Tenth Circuit overturned a district court's decision to deny class

---

[2] Notably, the Committee commentary recognizes the flexible nature of the class certification decision stating "Following a determination of liability … proceedings to define the remedy may demonstrate the need to amend the class definition or subdivide the class." Notes of Advisory Committee on 2003 amendments.

certification, were sufficiently different than those presented such that overturning the district court's decision not to certify a class was unwarranted.  The court did not limit the reach of Esplin.

In Anderson, the district court considered the defendants' motion to decertify a class.  In considering the defendants' motion the district court expressly recognized the Tenth Circuit's admonition in Esplin that any error is to be made in favor of class certification.  And it recognized that in deciding to certify the class initially "the Court leaned towards certifying the class and gave plaintiffs the benefit of the doubt[.]"  Anderson, 2006 U.S. Dist. LEXIS 76964 at 13.  However, the court held that "since both parties have completed merits discovery, the Court no longer feels the need to give the plaintiffs the benefit of [that presumption.]" Anderson, 2006 U.S. Dist. LEXIS 76964 at 14. Thus, the Anderson court employed Esplin's presumption in favor of class certification because merits discovery had not been completed.  Only after such discovery had terminated did the court state it would no longer indulge such a presumption in favor of the Plaintiffs. Here, the Plaintiffs have not yet engaged in merits discovery. Accordingly, Anderson suggests that this Court should give the Plaintiffs the benefit of the doubt and certify the class.

In short, Rule 23 is liberally interpreted to provide the courts with a flexible means of addressing complaints arising from a common core of facts and/or legal issues.  The Defendants' invitation to this Court to raise the bar for certification and employ a "strict legal standard" (Opposition to Plaintiffs' Motion for Class Certification [Doc. No. 67] at p. 7) is without foundation in the law.

**B.      The Defendants do not address the common questions of law and fact presented by the Plaintiffs' complaint.**

At the heart of this case is the question of whether Farmers' acts and practices of failing to investigate claims and denying its insureds UM/PD coverage for loss arising from theft constitute a breach of its contractual obligations with respect to its policyholders.  Through their Complaint, the Plaintiffs have asserted that Farmers wrongfully denied coverage to its insureds who were entitled to UM/PD benefits.  And it is this issue that presents the overarching questions that are common to all members of the class.

The Defendants make no attempt to address the questions of law and fact, which are common to all class members including inter alia:

> 1.  Whether Farmers' acts and practices of failing to investigate claims and denying its insureds UM/PD coverage for loss arising from theft constitute a breach of its contractual obligations with respect to its policyholders;
>
> 2.  Whether Farmers' alleged acts and practices of failing to investigate claims and denying its insureds UM/PD coverage for loss arising from theft have breached Farmers' implied covenant of good faith and fair dealing;
>
> 3.  Whether Farmers' acts and practices of failing to investigate claims and denying its insureds UM/PD coverage for loss arising from theft violate Article 16 of the New Mexico Insurance Code; and
>
> 4. The remedies available to Plaintiff and to Farmers' other policyholders, should it be determined that Farmers' acts and practices have violated its duties to its policyholders.

Motion for Class Certification and Memorandum in Support Thereof [Doc. No. 59] at 9-10. Instead, the Defendants argue that this matter should not be certified on the basis of hypothetical scenarios and facts not in the record (e.g. what if there were no security cameras in the bar parking lot and [Mr.] Arnold simply found the ATV missing?).  However, such questions are little more than a red herring.  "A class action [ ] is not defeated by factual variations in

individual class members grievances." <u>Heastie v. Community Bank of Peoria</u>, 125 F.R.D. 669, 675 (N.D. Ill. 1989). See also, <u>Patterson v. General Motors Corp.</u>, 631 F.2d 476 (7th Cir. 1980) ("a class action will not be defeated solely because there was some factual variations among members' grievances."); <u>Flanigan v. GE</u>, 1998 U.S. Dist. LEXIS 22873 at * 20 (D. Conn. 1998) ("claims of the plaintiffs need not be identical and the necessity of answering individual questions after answering common questions will not prevent a class action.").   The party seeking class certification need only show there is at least one question of law or fact common to the class. And "[c]laims arising from a defendant's standardized conduct towards members of the proposed class or from the interpretation of a standard contract often present a case for treatment as a class action. <u>In re FedEx Ground Package Sys., Empl. Practices Litig.</u>, 2008 U.S. Dist. LEXIS 112104, 42-43 (N.D. Ind. Mar. 25, 2008) (citing <u>Keele v. Wexler</u>, 149 F.3d 589, 594 (7th Cir. 1998)); See also, <u>Kleiner v. First Nat'l Bank of Atlanta</u>, 97 F.R.D. 683, 691 (N.D. Ga. 1983) ("When viewed in light of Rule 23, claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action."); <u>Heartland Communications, Inc. v. Sprint Corp.</u>, 161 F.R.D. 111, 116 (D. Kan. 1995) (certifying class where contracts signed by all class members contained virtually the same provision as that challenged by class representative) as we explain below, common questions regarding whether the Defendants breached their legal to the plaintiffs permeate and predominate all other issues in this case.

Moreover, the Defendants' argument assumes that all of Plaintiffs' claims would be subsumed by the analysis discussed in New Mexico state cases involving drive-by shootings. This is wrong.  The Plaintiffs have raised a number of claims in their Complaint and each claim must analyzed in light of Rule 23.

For example, even assuming this Court determined that Plaintiffs' breach of contract claims required an individualized inquiry into the merits (a position which we dispute), that holding would not be dispositive of Plaintiffs' claims for the implied covenant of good faith and fair dealing.  Indeed, under New Mexico law "insurance contracts, as with every contract, there is an implied covenant of good faith and fair dealing that the insurer will not injure its policyholder's right to receive the full benefits of the contract. More specifically, this means that an insurer cannot be partial to its own interests, but must give its interests and the interests of its insured equal consideration." Salas v. Mt. States Mut. Cas. Co., 145 N.M. 542, 546 (N.M. 2009) (quoting Dairyland Ins. Co. v. Herman, 1998 NMSC 5, P 12, 124 N.M. 624, 954 P.2d 56).  "[A]n insurer who fails to pay a first-party claim has acted in bad faith where its reasons for denying or delaying payment of the claim are frivolous or unfounded." Sloan v. State Farm Mutual Auto. Ins. Co. (In re Sloan), 135 N.M. 106, 112, 85 P.3d 230, 236 (N.M. 2004).

Here, there are common questions of law and fact as to whether Farmers systematically and wrongfully failed to investigate claims and denied UM/PD coverage to its insureds arising from loss due to theft without any reasonable basis.  The evidence garnered to this point overwhelmingly suggests that Farmers did just that.[3]  Accordingly, the Court may certify (at a minimum) the Plaintiffs' claims for breach of the covenant of good faith and fair dealing for class action treatment.  Johnson v. GEICO Cas. Co., 673 F. Supp. 2d 255, 275 (D. Del. 2009) (certifying plaintiffs' claims for breach of the covenant of good faith and fair dealing for class treatment even though the breach of contract claims were not certified due to the court's

---

[3] The Defendants' wrongful and unlawful denial of the Plaintiffs' claims are discussed at length in Motion for Summary Judgment Declaring Uninsured Motorist Property Damage Coverage is Applicable to the Plaintiffs' Losses [Doc. No. 57].  Moreover, Plaintiffs expect merits discovery to yield additional evidence of the Defendants' breach of the covenant of good faith and fair dealing.

determination that individual inquiries into the factual circumstances of each plaintiff's claim would be necessary).

Similarly, there are common questions of law and fact as to whether Famers' systematic denial of the claims at issue violated Article 16 of the New Mexico Insurance Code.  Indeed, through the Complaint the Plaintiffs have alleged that in refusing to afford coverage to their insureds Farmers knowingly violated its contractual obligations to provide uninsured motorist coverage to its policyholders for damage sustained to property by an uninsured motorist. Amended Complaint [Doc. No. 21] at ¶ 27.  These issues will be decided through common questions of law and fact.  Accordingly, the Plaintiffs' allegations that Farmers failed to act in good faith to effectuate prompt, fair and equitable settlements of the Plaintiffs' claims is suitable for class action treatment.  Johnson, 673 F. Supp. 2d at 275.  The Defendants' opposition does not show otherwise.

Plaintiffs' claims, including their claims for breach of contract, breach of the covenant of good faith and fair dealing, and their claims for violations of the New Mexico Insurance Code may be certified for class treatment because each of these claims involve common questions of law and fact.  The Court should certify the class.

**C.    The members of the first proposed subclass are readily ascertainable through objective criteria.**

The Defendants next argue that individualized determinations preclude an objectively ascertainable class.  Opposition to Plaintiffs' Motion for Class Certification [Doc. No. 67] at pp. 15-16.  But again, the Defendants ask this Court to apply an improper standard to the Rule 23 analysis. The relevant inquiry under federal procedural standards is whether the class definition is sufficiently definite that the Court can, by using relatively objective criteria, identify who is a member of the class. "It is not necessary that the members of the class be so clearly and

completely identified that any member can be presently ascertained." Haywood v. Barnes, 109 F.R.D.568, 576 (E.D.N.C. 1986). See also, In re Tetracycline Cases, 107 F.R.D. 719, 728 (W.D. Mo. 1985) ("class need not be so ascertainable from the definition that every potential member can be identified at the commencement of the action"); Davoll v. Webb, 160 F.R.D. 142, 144 (D. Colo. 1995) ("[T]he class does not have to be so ascertainable that every potential member can be identified at the commencement of the action"); Carpenter v. Davis, 424 F.2d 257, 260 (5th Cir.1970) ("It is not necessary that the members of the class be so clearly identified that any member can be presently ascertained."). Through their opposition the Defendants suggest that each individual member of the class needs to be readily identifiable. Farmers, however, has unsuccessfully raised this argument before.

In Lindquist v. Farmers Insurance Company of Arizona, et al., 2008 U.S. Dist. LEXIS 11832 (D. Ariz. 2008), plaintiffs filed suit after Farmers underpaid its insureds for claims arising from water damage and for engaging in a systematic practice of attempting to undervalue claims. Id. at *4-5. Under Arizona law, an insured is entitled to recover damages "stemming from general contractor's overhead and profit" provided the cost to repair the damaged property would "likely require" the services of individual contractor. Id. at *6-8. The plaintiffs sought to recover these costs, among others, in its class complaint. As in this case, Farmers moved to dismiss the plaintiffs' class action allegations arguing that the class was not identifiable because "the class definition … lacks objective ascertainability and would require the Court to impermissibly delve into the merits of each claim to determine who is a member of the class." Id. at * 8. The court rejected this argument stating that "identification of class members does not require the Court to delve into the 'likely require' question to determine who are members of the

class.  Rather class members can be identified by objective criteria that are contained in the claims files maintained by the Defendants' files."  Id. at * 9.

The holding in Lindquist is instructive in the present matter.  The class at issue in this case is identifiable through information contained in Farmers' files.  Indeed, in the Declaration of Sylvia Ting [Doc. No 1-13], which was attached to the Defendants' notice of removal, Ms. Ting stated that through a data search she was able to identify, inter alia, those claims identified as a loss arising from theft and which were closed with no payment to the insured during the relevant time period.   Id. at ¶¶ 14-15.  Further, as Ms. Ting conceded in her deposition, Farmers codes the cause of loss submitted by automobile insurance policy holders.  See Deposition of Sylvia Ting pp. 26-27 attached hereto as Exhibit A.  Farmers' own adjusters determine an insured's particular cause of loss.  Id. at 27-28.  Thus, as in the Lindquist case, "Defendants' own files would reflect the objective information encompassed by Plaintiffs' class definition[.]"  Lindquist, 2008 U.S. Dist. LEXIS 11832 at * 10.

Moreover, Farmers can objectively identify the members of the proposed class, and has demonstrated its ability to retrieve such information from its own files.  And Farmers has a strict duty to properly investigate claims.  Should it argue that it cannot identify claims in which property was lost or destroyed by use of a motor vehicle, and therefore the claims are subject to individual fact inquiry, it is really asking this court to reward it for its admitted bad faith in failing to properly investigate these claims.  This unlawful conduct, which is common to all claimants, begins with Farmers' failure to properly investigate the claims at issue.  It ends with Farmers' wrongful denial of coverage for thousands of insureds.  Farmers' conduct demonstrates a scheme common to all of these claims in which it knowingly commits systemic bad faith.

For these reasons, the Defendants' argument that the class members cannot be identified should be rejected.  The class members are objectively ascertainable.

**D.    The Plaintiffs' claims satisfy Rule 23's requirements of typicality and adequacy.**

The Defendants continue their shotgun approach to defeating class certification by half-heartedly arguing that individualized determinations "defeat the rule 23(a) requirements of typicality and adequacy." Opposition to Plaintiffs' Motion for Class Certification [Doc. No. 67] at pp. 16-17.    But as we showed in our opening memorandum, these elements are easily satisfied in this case.

To begin with, the typicality requirement is satisfied where, as here, "it arises from the same event or practice or course of conduct that gives rise to a claim of another class member's where his or her claims are based on the same legal theory." Bynum v. District of Columbia, 214 F.R.D. 27, 34 (D.D.C. 2003).   Indeed, all of the Plaintiffs' claims arise from the basic assertion that the Defendants breached their contractual obligations to them – including those duties imposed by statute and common law.   See generally, Plaintiffs' Amended Complaint for Breach of Statutory, Common Law, and Contractual Duties [Doc. No. 21].   And any slight differences in the factual patterns underlying the claims or defenses of individual class members do not defeat typicality.   See e.g., 5 James Wm. Moore et al., Moore's Federal Practice § 23.24[4] (3d ed. 2000) ("If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality.").

The Defendants also argue that they have unique defenses to Mr. Jaramillo's claim that preclude typicality and adequacy.    However, in order to defeat typicality or adequacy, the specific defense must be "unique, arguable and likely to usurp a significant portion of the litigant's time and energy." McNichols v. Loeb Rhoades & Co., 97 F.R.D. 331, 334 (N.D. Ill.

1982).  The Defendants make no showing, even prima facie, that their "unique defenses" will undermine Mr. Jaramillo's interest in representing the class. <u>Clark v. Retrieval Masters Creditors Bureau, Inc.</u>, 185 F.R.D. 247, 249 (N.D. Ill. 1999) (holding that "typicality will be destroyed only if such defenses are likely to usurp a significant portion of the litigant's time and energy, distracting him from representing the interests of other class members.").  And this Court should not speculate as to the impact of the Defendants' defenses on Mr. Jaramillo's ability to represent the class.

Finally, the Defendants argue that Mr. Arnold and Mr. Jaramillo lack standing to seek declaratory or injunctive relief.  As the Defendants see it, their unlawful conduct should remain unchallenged and unimpeded by this Court. "It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." <u>Farez-Espinoza v. Napolitano</u>, 2009 U.S. Dist. LEXIS 35392, at * 13 (S.D.N. Y. Apr. 27, 2009).  Accordingly, "[t]he heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up… lies with the party asserting mootness." <u>Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.</u>, 528 U.S. 167, 189, 145 L. Ed. 2d 610, 120 S. Ct. 693 (2000) (quoting <u>United States v. Concentrated Phosphate Export Assn.</u>, 393 U.S. 199, 203, 89 S. Ct. 361, 364, 21 L. Ed. 2d 344 (1968)). Defendants argument fails to account for the fact that Farmers' wrongful denial of coverage, applies to current and former insureds.  The policies in question are occurrence based policies. An insured has an ongoing right to insurance benefits arising from a covered occurrence regardless of whether or not such claimant remains insured with the carrier.  Farmers' conduct of wrongfully denying these covered claims is ongoing, and applies to current and former insureds

who experienced covered losses. All have standing to seek injunctive relief to require Farmers to cease its conduct of wrongful denials.

The Defendants' naked assertions that they have unique defenses are insufficient to meet their heavy burden to show that their unlawful activity should continue. They are obligated to show that the named Plaintiffs will expend a significant amount of time addressing the Defendants' defenses. Because they have not made such a showing, the Defendants' argument that Rule 23's adequacy requirement precludes certification in this case is without merit.

**E.  Common issues of law and fact predominate.**

The Defendants argue that individual issues of proof preclude a finding by this Court that Rule 23's predominance requirement is has been satisfied. However, the Defendants apply too rigid a standard to the predominance inquiry. The question of whether the predominance requirement has been satisfied is a pragmatic one: "are there enough common questions to justify a common adjudication?" In re Copley Pharm., Inc., 158 F.R.D. 485, 491 (D. Wyo. 1994) (citing Wright & Miller, Federal Practice and Procedure§ 1777 (1986)). And while Rule 23 requires that common issues predominate, not **all** issues need be common to the class. See, e.g., In re Prudential Ins. Co. of America Sales Practices Litig., 148 F.3d 283, 315 (3d Cir. 1998). Unless individual liability issues will overwhelm common questions, the predominance inquiry is satisfied. As "the leading commentators on the federal courts have explained that when one or more of the central issues in the action are common to the class and can be said to predominate, the action will be considered proper under Rule 23(b)(3) even though important matters will have to be tried separately." Bynum, 214 F.R.D. at 37 (quoting 7A Charles Alan Wright & Arthur R. Miller, Federal Practice And Procedure § 1778 (2d ed. 1986)). Even in the face of "significant issues which require individual determination" predominance may be satisfied where

14

there are "equally significant common issues." In re Copley Pharm., Inc., 158 F.R.D. at 491.  As

one court stated:

> The common questions need not be dispositive of the entire action. In
> other words, "predominate" should not be automatically equated with
> "determinative" or "significant." Therefore, when one or more of the
> central issues in the action are common to the class and can be said to
> predominate, the action will be considered proper under Rule 23(b)(3)
> even though other important matters will have to be tried separately.

Cook v. Rockwell Int'l Corp., 151 F.R.D. 378, 388 (D. Colo. 1993) (quoting 7A Charles A.

Wright et al., Federal Practice and Procedure § 1759 at 99 (1986)).

Here, the Defendants concede that the class members "have the issue of statutory

interpretation in common[.]"  Opposition to Plaintiffs' Motion for Class Certification [Doc. No.

67] at p. 17.  However, this is not the only common question at issue.  In addition to the question

of statutory interpretation, the class members also have the question of contractual interpretation

in common.  Indeed, the Plaintiffs have alleged and the Defendants have admitted that Farmers

has not paid any UM/PD claims for property damage occurring as a result of theft.   See

Defendants' Response to Interrogatory No. 20 attached hereto as Exhibit B.  And all of the

claims at issue turn on the same contractual language in Farmers' insurance policies. Amended

Complaint ("Complaint") [Doc. No. 21] at ¶ 24.[4]

Moreover courts have recognized that the need for some level of individualized inquiry

as to the entitlement of individuals to share in a class recovery does not present a problem of

ascertainability sufficient to overcome the "predominance" of the common issues in a case such

as this one.  See, Zeno v. Ford Motor Company, 238 F.R.D. 173, 196 (W.D. Pa. 2006) (certifying

---

[4] The Defendants' response to this allegation is telling.   In their Amended Answer, the
Defendants refused to admit or deny the allegation as required by Fed. R. Civ. Proc. 8, the
Defendants state that "the Farmers Arizona insurance policies and declarations pages speak for
themselves."  See Answer to Amended Complaint [Doc. No. 23] at ¶ 24.

a breach of contract case for class action treatment even though "some individualized inquiry may be required with respect to causation and damages.).[5]  And there is nothing remarkable about the fact that in this case, as in all class actions, the Court or a claims administrator will have to determine who is entitled to receive a portion of the class benefit.

To the extent that this Court determines that there are inquiries necessitating individual inquiries, it may still certify the common issues for class resolution.  "[M]any courts have seen the benefits to partial certification for common issues." In re Copley Pharm., Inc., 158 F.R.D. at 491 (citing Horton v. Goose Creek Ind. Sch. Dist., 690 F.2d 470, reh'g denied, 693 F.2d 524 (5th Cir. 1982) (class of plaintiffs challenging drug searches certified for issue of liability only); Endo v. Albertine, 147 F.R.D. 164 (N.D. Ill. 1993) (plaintiffs class certified in securities fraud case for issue of materiality of misrepresentations only); Werlein v. United States, 746 F. Supp. 887 (D. Minn. 1990)).  Indeed, Rule 23(c) (4) encourages partial certification. Central Wesleyan College v. W.R. Grace & Co., 6 F.3d 177, 185 (4th Cir. 1993)  ("This court also has admonished district courts to take full advantage of the provision in Rule 23(c)(4) permitting class treatment of separate issues in order 'to promote the use of the class device and to reduce the range of disputed issues' in complex litigation.").

F.    The claims in this case are manageable.

 The Defendants argue that the class action device is not a superior means of resolving the common questions of law and fact.  In raising this argument the Defendants again ignore nearly all of the Plaintiffs' claims choosing instead to focus only the breach of contract claim. To that end, the Defendants simply restate their earlier arguments that although there a number of common issues of law and fact at issue, individual issues preclude this Court from

---

[5] Indeed, in all class actions, the Court or a claims administrator will have to determine who is entitled to receive a portion of the class benefit.

determining that it can manage this litigation. Opposition to Plaintiffs' Motion for Class Certification [Doc. No. 67] at pp. 22-23.  However, the Defendants continued refrain is nothing more than speculation at this point of the litigation.  Merits discovery will reveal whether the Defendants are correct in their unsubstantiated assertion that there may be a necessity for individual hearings to determine a right to recover.  In any event, even if such hearings were necessary for some class members, there are a number of ways to resolve those issues efficiently including the use of a special master.  See e.g., Ridings v. Canadian Imperial Bank, 94 F.R.D. 147, 151 (N.D. Ill. 1982) ("If necessary, the court may order  separate hearings on the individual questions of reliance after determination of the common questions of law and fact."); Caleb & Co. v. E.I. DuPont de Nemours & Co., Fed. Sec. L. Rep. (CCH) P 92,739 at 93,594 (S.D.N.Y. 1986) ("Consideration of the individual issues can later be decided through a separate trial or through the use of a special master.") (citations omitted)

Moreover the Defendants argument must be viewed in light of the general rule that the "failure to certify an action under Rule 23(b)(3) on the sole ground that it would be unmanageable is disfavored and should be the exception rather than the rule."  In re S. Cent. States Bakery Prods. Antitrust Litig., 86 F.R.D. 407, 423 (M.D. La. 1980) (quoting Manual for Complex Litigation, § 1.43 n.72 (1977)); See also, In re Workers' Compensation, 130 F.R.D. 99, 110 (D. Minn. 1990) (stating that "dismissal for management reasons is never favored"); In re Bristol Bay, Alaska, Salmon Fishery Antitrust Litig., 78 F.R.D. 622, 628 (W.D. Wa. 1978) (stating that "dismissal for management reasons, in view of the public interest involved in class actions, should be the exception rather than the rule") (internal quotation marks and citation omitted).   And the Defendants have offered nothing more than its bald assertion that the class is unmanageable.

Finally, the Defendants argue that that this case is unmanageable and not superior because the Plaintiffs have not yet proposed a plan describing how the case will be tried. Opposition to Plaintiffs' Motion for Class Certification [Doc. No. 67] at p. 23. There is no requirement in Rule 23, however, that imposes such an obligation on the Plaintiffs – particularly in this nascent stage of the litigation.  Moreover, in cases such as this one with few defendants and straightforward legal issues, courts have routinely held that a "trial plan" is not necessary to establish manageability or superiority.   Compare   Robinson v. Texas Automobile Dealers Association, 387 F.3d 416 (5th Cir. 2004) (requiring a trial plan where there were an anti-trust case involving "potentially, millions of consumers" and "over a thousand defendants") with Feder v. Elec. Data Sys. Corp., 429 F.3d 125, 139 (5th Cir. Tex. 2005) (refusing to interpret the Robinson case to require a trial plan in a case with only three defendants).

In short, the Defendants' attempt to impose additional requirements not found in Rule 23 is without foundation in the law and contrary to case law on point.  This Court, with input from the parties can form a suitable plan for trial when merits discovery is completed.

**G.     Individual lawsuits are not a superior means of resolving the claims at issue.**

As a finale to their opposition to Plaintiffs' request that this matter be certified as a class action pursuant to Rule 23(b)(3), the Defendants argue that "with the potential to recover such substantial damages, class member will generally want to control their own litigation.  And, they will find no shortage of attorneys ready, willing, and able to represent them." Opposition to Plaintiffs' Motion for Class Certification [Doc. No. 67] at p. 24.  This argument is dealt with by simply noting that if class members, and their counsel were so willing to engage in litigation pertaining to the issues involved in this case there would undoubtedly be numerous cases filed in

this district seeking damages.  However, the Plaintiffs are not aware of any other lawsuit involving the same claims nor have the Defendants identified one.

Moreover, the mere fact that a class member may be entitled to damages in an amount that is more than de minimis does not preclude class certification.  To the contrary, a number of cases have been certified where the class plaintiffs were expected to receive an award significantly more substantial than any plaintiff in this case. Murray v. Sunrise Chevrolet, Inc., 2006 U.S. Dist. LEXIS 19626 (N.D. Ill. 2006) (certifying class where potential for large statutory damages existed).

**H.    Certification pursuant to Rule 23(b)(2) is appropriate in this case.**

As explained in the Plaintiffs' motion for class certification, where, as here, Plaintiffs seek both injunctive relief as well as damages, "the court may adopt a hybrid approach, certifying a Rule 23(b)(2) class as to the claims for declaratory or injunctive relief, and a Rule 23(b)(3) class as to the claims for monetary relief, effectively granting Rule 23(b)(3) protections including the right to opt out to class members at the monetary relief stage." Bynum v. District of Columbia, 214 F.R.D. 27, 35 (D.D.C. 2003) (quoting Eubanks v. Billington, 110 F.3d 87, 96 (D.C. Cir. 1997)); see also Lemon v. Int'l Union of Operating Engineers, 216 F.3d 577, 581 (7th Cir. 2000) (discussing the option of divided certification when plaintiffs seek both monetary and injunctive relief).

The Defendants ignore this legal authority choosing instead to mischaracterize the injunctive relief requested as a bald statement to obey the law. Opposition to Plaintiffs' Motion for Class Certification [Doc. No. 67] at p. 26.  But as Plaintiffs stated in their motion for class certification: "Injunctive relief is necessary to ensure that Farmers apprises its insureds of the full measure of UM/UIM benefits for which they have paid." Plaintiffs' Motion for Class

Certification [Doc. No. 59] at p. 15. There is nothing vague about such relief and it does not constitute the type of relief disapproved of by <u>Vallario v. Vandehey</u>, 554 F.3d 1259, 1268 (10th Cir. 2009).  Accordingly, Plaintiffs' request to certify a class pursuant to Rule 23(b)(2) should be granted.[6]

Respectfully submitted,

_____
Matthew L. Garcia
Bach & Garcia, LLC.
300 Central SW
Suite 2000 East
Albuquerque, NM 87102
Ph: (505) 899-1030

Geoffrey R. Romero
4801 All Saints Road NW
Albuquerque, NM 87120
Ph: (505) 247-3338

---

[6] The Defendants claim that the holding in <u>Vallerio</u> addressed the "sort of general injunctive relief" requested by the Plaintiffs here. Opposition to Plaintiffs' Motion for Class Certification [Doc. No. 67] at p. 26.  However, even a cursory reading of that case undermines the Defendants' contention. In <u>Vallerio</u>, the Tenth Circuit overturned a district court's decision to certify a class of prisoners seeking injunctive relief to prevent the guards from using a variety of control mechanisms.  The Tenth Circuit refused to uphold the district court's decision because Plaintiffs sought to enjoin a "wide range of behavior" against a "broad class."

## <u>CERTIFICATE OF SERVICE</u>

I certify that I filed the foregoing pleading electronically through the CM/ECF system, which caused all counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

Respectfully submitted,

_____

Matthew L. Garcia
Bach & Garcia, LLC.
300 Central SW
Suite 2000 East
Albuquerque, NM 87102
Ph: (505) 899-1030