# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

HAROLD ARNOLD, for himself
and all other similarly situated,
JIMMY JARAMILLO, for himself
and all other similarly situated,
GARY WISE, for himself and
and all other similarly situated,

      Plaintiffs,

vs.                                                                                No. CIV 09-0330 JB/WDS

FARMERS INSURANCE COMPANY
OF ARIZONA, an Arizona corporation;
FARMERS GROUP, INC., a Nevada
corporation,

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on: (i) the Plaintiffs' Motion for Summary

Judgment Declaring Uninsured Motorist Property Damage Coverage is Applicable to the Plaintiffs'

Losses, filed April 2, 2010 (Doc. 57); and (ii) the Defendants' Opposition to Plaintiffs' Summary

Judgment & Cross-Motion for Summary Judgment, filed April 29, 2010 (Doc. 64)("Cross-Motion").

The Court held a hearing on August 17, 2010.  The primary issues are: (i) whether the phrase "injury

to or destruction of property" in the Uninsured Motorist Act, NMSA 1978, § 66-5-301 ("UMA"),

requires coverage for loss-of-use[1]-of-property claims; (ii) whether, if the UMA requires coverage

---

[1] One court has defined loss of use as "the loss of an incident of ownership[:] the right to use." <u>American Tel. & Tel. Co. v. Connecticut Light & Power Co.</u>, 470 F. Supp. 105, 108 (D. Conn. 1979)(citing 22 Am. Jur. 2d Damages § 152 (1965)("Ownership of an item of property carries with it the right to use, or to control the use of, that item of property. Therefore, where the defendant tortiously injures [sic], destroys, or takes an item of property, there has been a loss of one of the valuable rights or interests in property the right to use the property. Awarding plaintiff only the cost of repair or the decrease in market value fails to recognize that he has lost the use of the property

for loss-of-use claims, theft of property would constitute property damage; and (iii) whether, if the UMA requires coverage for loss-of-use claims, an insured can bring a loss-of-use claim without an accompanying claim for physical damage.  The Court concludes that the phrase "injury to or destruction of property" in the UMA does not require coverage for loss of use, because the New Mexico Legislature's omission of loss of use language in the UMA indicates that the Legislature intended the omission, and even though New Mexico courts liberally construe the UMA, the Court declines to disregard the statute's plain language.  The Court also believes, based on its review of New Mexico law and law from other jurisdictions, that even if the UMA requires coverage for loss of use, there is a strong argument that the UMA would not require coverage for theft or for loss-of-use damages without accompanying physical damage, but because the Court may make its determination on the statutory language itself, the Court need not decide this issue.  Because the Court finds that the UMA does not require coverage for the Plaintiffs' loss-of-use claims, the Court will grant summary judgment on the Plaintiffs' claims.[2]  The Court therefore need not inquire into whether each Plaintiffs' claims for loss of use arose from the ownership, maintenance, or use of a motor vehicle, and whether each Plaintiff is legally entitled to recover damages from the owners or operators of the uninsured motor vehicles.

---

item during the time reasonably needed to repair or replace it . . . .").

     [2] Plaintiff Jimmy Jaramillo has withdrawn his claim for damage to the trailer and his claim for physical damage to the bobcat.  See Plaintiffs' Reply to Defendants' Response to Plaintiffs' Motion for Summary Judgment and Response in Opposition to Defendants' Cross-Motion for Summary Judgment ¶ 10, at 4, filed June 1, 2010 (Doc. 76)("Plaintiffs' Reply and Response").  J. Jaramillo is left with a loss-of-use claim for the bobcat.  Plaintiffs Gary Wise and Howard Arnold have alleged only loss-of-use claims.  The Court grants summary judgment on all Plaintiffs' claims, because it finds that the UMA does not provide coverage for their loss-of-use claims.

## FACTUAL BACKGROUND

The Plaintiffs are suing for the Defendants' uninsured-motorist-property-damage benefits under their automobile insurance policies with Farmers Insurance Company of Arizona ("Farmers") relating to stolen personal property. Plaintiffs' insurance policies define uninsured motorist property damage as: "[D]amage to or destruction of [the insured's] insured car including personal property contained in [the insured's] insured car at the time of the accident. This does not include the loss of use of damaged or destroyed property." Farmers Declarations at 7, filed April 29, 2010 (Doc. 64-10).[3] Defense witnesses testified that, if there is damage or destruction to property that arises out of ownership, maintenance, or use -- i.e., property damage -- Farmers will pay for loss of use resulting from that property damage in certain circumstances. See, e.g., Deposition of Daniel J. O'Brien at 51:16-52:19 (taken February 24, 2010), filed April 29, 2010 (Doc. 64-13); Cross-Motion ¶ 42, at 8 (setting forth this fact); Plaintiffs' Reply and Response ¶ 14, at 5 (admitting this fact). The Plaintiffs' auto insurance policies provided coverage for "theft" of their insured automobiles under the policies' coverage provisions. Farmers Declarations at 10 ("We will pay for loss to your insured car caused by any accidental means except collision, . . . Loss caused by missiles, falling objections,

---

[3] The Plaintiffs dispute this assertion, stating that the policies speak for themselves. See Plaintiffs' Reply and Response ¶ 13, at 5. The Defendants correctly quoted the policy language, and the Plaintiffs did not direct the Court's attention to any evidence that controverts this assertion, solely stating that the policies speak for themselves. The Court will therefore deem this assertion by the Defendants admitted. D.N.M.LR-Civ.56.1(b) states:

> A memorandum in opposition to the motion must contain a concise statement of the material facts as to which the party contends a genuine issue does exist. Each fact in dispute must be numbered, must refer with particularity to those portions of the record upon which the opposing party relies, and must state the number of the movant's fact that is disputed. All material facts set forth in the statement of the movant will be deemed admitted unless specifically controverted.

D.N.M. LR-Civ. 56.1(b)(emphasis added).

fire, theft or larceny . . . is not deemed loss caused by collision."). G. Wise previously submitted a theft claim for his insured automobile, and his insurer paid the theft claim. See Deposition of Shirley Wise at 32:18-33:10 (taken August 26, 2009), filed April 29, 2010 (Doc. 64-2). Each Plaintiff could have purchased separate coverage for their allegedly stolen property. See, e.g., Deposition of Gary Wise at 10:14-11:6 (taken August 27, 2009), filed April 29, 2010 (Doc. 64-1); Deposition of Sonny Jaramillo at 43:10-44:5 (taken August 25, 2009), filed April 29, 2010 (Doc. 64-8).[4]

1.      **Undisputed Facts Relating to the Circumstances of J. Jaramillo's Claim.**[5]

The Plaintiffs allege that, on or about February 6, 2005, a flat-bed trailer and a bobcat tractor that Plaintiff Jimmy Jaramillo's father, Sonny Jaramillo, used in his landscaping business were stolen. See, e.g., Amended Class Action Complaint for Breach of Statutory, Common Law, and Contractual Duties ¶ 14, at 3, filed July 24, 2009 (Doc. 21)("Amended Complaint"); Cross-Motion ¶ 21, at 6 (setting forth this fact); Plaintiff's Reply and Response ¶ 4, at 3 (admitting this fact). S. Jaramillo is not a plaintiff in this case. See, e.g., S. Jaramillo Depo. at 99:15-25; Doc. 21; Cross-Motion ¶ 23, at 6 (setting forth this fact); Plaintiffs' Reply and Response ¶ 4, at 3 (admitting this fact). At the time of the alleged theft, both J. Jaramillo and S. Jaramillo had auto insurance policies with Farmers. See, e.g., S. Jaramillo Depo. at 43:22-44:5; Amended Complaint ¶ 16, at 3; Cross-

---

[4] The Plaintiffs "deny the allegations" in paragraphs 43 and 44 of the Defendants' Cross-Motion, but do not direct the Court to any evidence in the record supporting their denial. The evidence in the record appears to support the Defendants' factual assertions. The Court will thus deem these assertion admitted. See D.N.M. LR-Civ. 56.1(b).

[5] J. Jaramillo has withdrawn his claim related to the trailer and his claim for physical damage to the bobcat. See Plaintiffs' Reply and Response ¶ 10, at 4. The Court will therefore not include the asserted facts from the parties' briefing that relate to the trailer and damage to the bobcat, except when the facts are necessary to clarify the factual background of J. Jaramillo's claim.

Motion ¶ 22, at 6 (setting forth this fact); Plaintiffs' Reply and Response ¶ 4, at 3 (admitting this fact); Answer to Amended Complaint ¶¶ 16, 23, at 3-4, filed July 31, 2009 (Doc. 23)("Answer"); Plaintiffs' Memorandum in Support of Their Motion for Summary Judgment Regarding Coverage ¶ 16, at 5, filed April 2, 2010 (Doc. 58)(stating that, at the time of the theft, J. Jaramillo had a motor-vehicle insurance policy issued by Farmers, which included uninsured motorists property damage)("Memorandum"); Cross-Motion at 9 (not controverting this fact).

S. Jaramillo's landscaping business, called Sonny's Trees, is a sole proprietorship and S. Jaramillo is the sole owner. See Deposition of Jimmy Jaramillo at 12:1-13:23 (taken February 1, 2010), filed April 29, 2010 (Doc. 64-9).[6] J. Jaramillo does not have an ownership or partnership interest in Sonny's Trees; he has never invested money in Sonny's business with the expectation of receiving a profit, and he has never received any investment income from Sonny's Trees. See J.

---

[6] The Plaintiffs dispute this fact, stating that "Jimmy Jaramillo contributed monies to Sonny's Landscaping business, held legal ownership of the Bobcat, retained potential liabilities, and was considered by his father as a partial partner in the business." Plaintiffs' Reply and Response ¶ 15, at 3 (citing Deposition of Jimmy Jaramillo at 10-17, 58-61 (taken February 1, 2010), filed April 2, 2010 (Doc. 58-3)). In J. Jaramillo's deposition, he testified that Sonny's Trees is a sole proprietorship and that his father was the sole owner. See J. Jaramillo Depo. at 13:15-20 ("Q. He told me, I believe that Sonny Trees is a sole proprietorship; is that your understanding? A. Yes. Q. And he is the sole owner, as you understand it? A. Yes."). The evidence to which the Plaintiffs direct the Court's attention does not controvert the Defendants asserted fact. The Plaintiffs direct the Court's attention to portions of J. Jaramillo's deposition. In these portions, J. Jaramillo testifies that he is not a partner in Sonny's Trees, that he has never had ownership interest or partnership interest in Sonny's Trees, and that he contributed money to Sonny's Trees without any expectation of repayment. See, e.g., J. Jaramillo Depo. at 13:21-14:13 ("Q. You aren't, I take it, a partner in the business in any way, shape or form? A. No. . . . Q. Let me back up. Have you ever had any ownership interest or partnership interest in Sonny's Trees business? A. No."); id. at 59:16-22 ("Q. You also indicated that you made contribution -- monetary contributions to Sonny's Trees at times; is that correct? A. Yes. Q. And these are contributions for which you didn't seek repayment? A. Correct."). The Court will therefore deem the Defendants' assertion of fact on the issue admitted. See D.N.M. LR-Civ. 56.1(b).

Jaramillo Depo. at 13:15-23, 14:10-21.[7]  The Federal Bureau of Investigation employs J. Jaramillo.

See, e.g., J. Jaramillo Depo. at 15-16:2; Cross-Motion ¶ 25, at 6 (setting forth this fact); Plaintiffs'

Reply and Response ¶ 4, at 3 (admitting this fact).  Nevertheless, on occasion, J. Jaramillo helped

S. Jaramillo with landscaping jobs.  See, e.g., J. Jaramillo Depo. at 13:1-9; id. at 16:3-17:9; Cross-

Motion ¶ 25, at 6 (setting forth this fact); Plaintiffs' Reply and Response ¶ 4, at 3 (admitting this

fact).  S. Jaramillo would compensate J. Jaramillo for his labor like any day laborer.  See, e.g., J.

Jaramillo Depo. at 17:4-9; Cross-Motion ¶ 25, at 6 (setting forth this fact); Plaintiff's Reply and

Response ¶ 4, at 3 (admitting this fact).  After the FBI promoted J. Jaramillo in 2003, he rarely was

able to assist S. Jaramillo on landscaping jobs.  See, e.g., J. Jaramillo Depo. at 15:1-17; Cross-

Motion ¶ 25, at 6 (setting forth this fact); Plaintiffs' Reply and Response ¶ 4, at 3 (admitting this

fact).

    J. Jaramillo bought the bobcat tractor under his name for use by Sonny's Trees.  See J.

Jaramillo Depo. at 58:7-11; S. Jaramillo Depo. at 149:1-2.[8]  Sometimes J. Jaramillo assisted his

---

[7] The Plaintiffs dispute this fact, stating that "Jimmy Jaramillo contributed monies to Sonny's Landscaping business, held legal ownership of the Bobcat, retained potential liabilities, and was considered by his father as a partial partner in the business."  Plaintiffs' Reply and Response ¶ 15, at 3 (citing J. Jaramillo Depo. at 10-17, 58-61). In his deposition, J. Jaramillo stated that he gave S. Jaramillo money for Sonny's Trees as a gift and that, when he worked for S. Jaramillo, his father would pay him just as he would pay any other temporary worker.  See J. Jaramillo Depo. at 16:3-18:5.  J. Jaramillo stated that he had never invested money into Sonny's Trees with the expectation of receiving a profit and that he had never received income from the business aside from any payment for work that he did.  See id. at 18:6-13.  Because the evidence to which the Plaintiffs point does not controvert the Defendants' factual assertion, the Court will deem the fact asserted by the Defendants as admitted.  See D.N.M. LR-Civ. 56.1(b).

[8] The Plaintiffs contend that, "[o]n February 6, 2005, Plaintiff Jimmy Jaramillo was the legal owner of a bobcat used by his father, Sonny Jaramillo in a tree planting and landscape business."  See Memorandum at 4.  The Plaintiffs' asserted facts in paragraphs 11-15 and 17-18 of their Memorandum rely on the assertion that J. Jaramillo owned the bobcat.  See Memorandum at 4-5.  In support of their asserted facts, the Plaintiffs direct the Court's attention to S. Jaramillo's and J. Jaramillo's depositions.  The Defendants dispute the facts in paragraphs 11-15 and 17-18 of the

father with the installment payments for the bobcat.  See, e.g., J. Jaramillo Depo. at 22:21-24; Cross-

Motion ¶ 28, at 7 (setting forth this fact); Plaintiffs' Reply and Response ¶ 4, at 3 (admitting this

fact).  J. Jaramillo's payments were in the nature of gifts, and he never expected to be repaid for any

of the payments.  See, e.g., J. Jaramillo Depo. at 22:25-23:6; Cross-Motion ¶ 28, at 7 (setting forth

this fact); Plaintiffs' Reply and Response ¶ 4, at 3 (admitting this fact).  Had S. Jaramillo sold the

bobcat, J. Jaramillo would not have expected to be reimbursed for any payments he made on the

bobcat.  See, e.g., J. Jaramillo Depo. at 23:4-11; Cross-Motion ¶ 28, at 7 (setting forth this fact);

Plaintiffs' Reply and Response ¶ 4, at 3 (admitting this fact).

    The bobcat used a universal key to operate.  See, e.g., S. Jaramillo Depo. at 75:14-15; Cross-

---

Plaintiffs' Memorandum, alleging that they "incorrectly state that [J.] Jaramillo owned the bobcat and trailer."  Cross-Motion at ¶ 3, at 9.

    In support of the Defendants' assertion that the Plaintiffs' asserted facts incorrectly state that J. Jaramillo owned the bobcat, the Defendants direct the Court's attention to both S. Jaramillo's and J. Jaramillo's depositions.  They assert that S. Jaramillo did not use the bobcat for any purpose aside from Sonny's Trees.  See Cross-Motion ¶ 26, at 6 (citing J. Jaramillo Depo. at 28).  The Defendants allege that, although J. Jaramillo used his credit to finance the purchase of the bobcat, and so his name is on the title, J. Jaramillo did not consider himself to be part owner of the bobcat; he considered S. Jaramillo to be the only owner of the bobcat.  See Cross-Motion ¶ 27, at 6 (citing J. Jaramillo Depo. at 19-20, 22, 24-25).  The Defendants also assert that J. Jaramillo would have transferred the title to S. Jaramillo had either of them thought about it.  See Cross-Motion ¶ 29, at 7 (citing J. Jaramillo Depo. at 22, 24-25, 27-28).

    In S. Jaramillo's deposition, he stated that J. Jaramillo signed the purchase paperwork for the bobcat.  See S. Jaramillo Depo. at 148:16-17.  S. Jaramillo also testified that he and J. Jaramillo bought the bobcat together, and that J. Jaramillo bought the bobcat in his name but under Sonny's Trees.  See S. Jaramillo Depo. at 149:1-2.  S. Jaramillo put one thousand dollars down and financed the rest of the bobcat.  See S. Jaramillo Depo. at 149:10-12.  J. Jaramillo testified that, to the State of New Mexico, he was the owner of the bobcat, but he considered S. Jaramillo to be the sole owner of the bobcat.  See J. Jaramillo Depo. at 24:14-25:12.

    The Court believes that the issue whether J. Jaramillo was the legal owner of the bobcat is disputed.  There is conflicting evidence, and it is unclear whether the bobcat was a gift to Sonny's Trees or whether J. Jaramillo owned the bobcat.  This disputed fact is not material, however, to the legal determination whether the UMA provides coverage for J. Jaramillo's loss-of-use claim.  Cf. First Nat'l Bank and Trust Co., Perry, Okl. v. Farmland Industries, Inc., 3 F.3d 1366, 1370 (10th Cir. 1993)("The record shows that there are no disputed facts that would preclude a determination of the statute of limitations issue.").

Motion ¶ 30, at 7 (setting forth this fact); Plaintiffs' Reply and Response ¶ 4, at 3 (admitting this fact). "You can go anywhere in town and the same Bobcat key will work on any [Bobcat]."  S. Jaramillo Depo. at 75:15-16.  See Cross-Motion ¶ 30, at 7 (setting forth this fact); Plaintiffs' Reply and Response ¶ 4, at 3 (admitting this fact).

On February 6, 2005, the bobcat, which was parked and secured on top of the trailer, which was hitched to S. Jaramillo's pickup truck, was stolen from a parking lot at a local hotel where S. Jaramillo lived.  See S. Jaramillo Depo. at 62:6-24.[9]  The trailer had to be disconnected from S. Jaramillo's pickup truck and then connected to another truck before the theft could have taken place.  See, e.g., id. at 62:6-24; Cross-Motion ¶ 34, at 7 (setting forth this fact); Plaintiffs' Reply and Response at 3-4 (not controverting this fact).  Neither J. Jaramillo nor S. Jaramillo witnessed the alleged theft; S. Jaramillo was out of town at the time.  See, e.g., S. Jaramillo Depo. at 100:1-101:10; Cross-Motion ¶ 35, at 7 (setting forth this fact); Plaintiffs' Reply and Response ¶ 4, at 3 (admitting this fact).  The bobcat was eventually  recovered from a field adjacent to a landscaping company. See, e.g., S. Jaramillo Depo. at 96:19-98:14; Cross-Motion ¶ 36, at 7 (setting forth this fact); Plaintiffs' Reply and Response ¶ 4, at 3 (admitting this fact).  The bobcat was damaged.  See, e.g., S. Jaramillo Depo. at 92:12-18, 96:19-98:14; Cross-Motion ¶ 36, at 7 (setting forth this fact); Plaintiffs' Reply and Response ¶ 4, at 3 (admitting this fact).

Improper use of the bobcat after it was stolen, not a motor vehicle, caused the damage to the

---

[9] The Plaintiffs admit that "the Bobcat and trailer were stolen, but deny the trailer was attached to Sonny Jaramillo's truck at the time of the theft."  Plaintiffs' Reply and Response at 4. The Plaintiffs do not direct the Court to any evidence in the record that controverts the Defendants' assertion.  In his deposition, S. Jaramillo testified that the trailer and "skidster" were attached to his truck.  S. Jaramillo Depo. at 62:17-19.  Because the Plaintiffs have not directed the Court's attention to any evidence in the record that controverts the Defendants' factual assertion, and because the Court has not found any evidence in the record that controverts the Defendants' assertion, the Court will deem this fact admitted.  See D.N.M. LR-Civ. 56.1(b).

bobcat.  See, e.g., S. Jaramillo Depo. at 127:7-128:1; Cross-Motion ¶ 37, at 8 (setting forth this fact);

Plaintiffs' Reply and Response ¶ 10, at 4 (admitting "that the physical damage to the Bobcat was

not caused by a motor vehicle").  J. Jaramillo did not incur out-of-pocket expenses from the theft

of the bobcat, but he suffered losses from the theft of the bobcat  See J. Jaramillo Depo. at 29:12-

22.[10]

   The bobcat was not insured separately with Farmers.  See, e.g., S. Jaramillo Depo. at 43:22-

44:5; Cross-Motion ¶ 39, at 8 (setting forth this fact); Plaintiffs' Reply and Response ¶ 4, at 3

---

[10] The Defendants assert that J. Jaramillo did not incur any out-of-pocket expenses from the theft of the bobcat and did not suffer any financial loss from the theft.  See Cross-Motion ¶ 38, at 8 (citing J. Jaramillo Depo. at 29-33).  The Plaintiffs respond to this factual assertion by admitting that J. Jaramillo "utilized his credit to purchase and finance the Bobcat for use by his father[,]" and by stating that "Jaramillo considered himself liable for the debt, made some payments on the Bobcat, and acknowledge liability in the event of damage caused by the Bobcat."  Plaintiffs' Reply and Response ¶ 11, at 4 (citing J. Jaramillo Depo at 58-61).  At J. Jaramillo's deposition, counsel questioned him regarding his loss.

   Q.     So, from the theft of the Bobcat, did you incur any out-of-pocket expenses

   A.     It's my recollection, no.

   Q.     Do you consider yourself to have lost any money in the theft of the Bobcat?

   A.     Yes.

   Q.     What money do you believe you have lost from the theft of the Bobcat?

   A.     Well, the Bobcat's under my name, and the theft of the property resulted in
          a loss because, you know, it was damaged and, so . . .

J. Jarmillo Depo. at 29:12-22.  There is conflicting evidence whether J. Jaramillo suffered a loss. As the Court previously discussed, it is disputed whether J. Jaramillo owned the bobcat.  The Court believes that whether J. Jaramillo suffered a loss from the theft of the bobcat is also disputed. Although this fact is disputed, it is not material to the legal determination of whether the UMA provides coverage for J. Jaramillo's loss-of-use claim.  Cf. First Nat'l Bank and Trust Co., Perry, Okl. v. Farmland Industries, Inc., 3 F.3d at 1370 ("The record shows that there are no disputed facts that would preclude a determination of the statute of limitations issue.").

(admitting this fact).  Farmers offered to arbitrate whether theft or misuse caused the physical damage to the bobcat.  See, e.g., Letter from Daniel O'Brien to Geoffrey Romero at 4 (dated December 5, 2005), filed April 2, 2010 (Doc. 58-5); Cross-Motion ¶ 40, at 8 (setting forth this fact); Plaintiffs' Reply and Response ¶ 12, at 5 ("Plaintiffs affirmatively state that Defendants offered to arbitrate whether or not the physical damage to the Jaramillo property was caused by use of a vehicle or misuse.").  Instead of arbitration, J. Jaramillo joined the other Plaintiffs in filing suit.  See Amended Complaint.[11]

### 2.     Undisputed Facts Relating to the Circumstances of Arnold's Claim.

Arnold owned an ATV -- a four-wheel vehicle.  See, e.g., Deposition of Howard Arnold at 26:18-22, 29:12-14 (taken August 26, 2009), filed April 2, 2010 (Doc. 58-6); Memorandum ¶ 19, at 5 (setting forth this fact); Cross-Motion at 9 (not controverting this fact).  The Plaintiffs allege that, on December 5, 2005, Arnold's ATV was stolen from the bed of his pickup truck.  See, e.g., Amended Complaint ¶ 10, at 2; Cross-Motion ¶ 14, at 4 (setting forth this fact); Plaintiffs' Reply and Response ¶ 3, at 3 (admitting this fact).  At the time, Arnold had automobile and homeowner insurance policies with Farmers.  See, e.g., Deposition of Howard Arnold at 18:25-19:3 (taken August 26, 2009), filed April 29, 2010 (Doc. 64-5);[12] Cross-Motion ¶ 15, at 5 (setting forth this fact);

---

[11] The Defendants contend that J. Jaramillo did not respond to their invitation to arbitrate.  See Cross-Motion ¶ 40, at 8.  The Plaintiffs deny this allegation and state they responded by filing suit.  See Plaintiff's Reply and Response ¶ 12, at 5.  Because the Defendants assert this fact in their Cross-Motion, and because the Court must construe the evidence in the light most favorable to the non-moving party, the Court will accept as true the Plaintiffs' statement.  See Hunt v. Cromartie, 526 U.S. 541, 551 (1999)(stating that the court must resolve all reasonable inferences and doubts in favor of the non-moving party, and construe all evidence in the light most favorable to the non-moving party).

[12] The following citations to Arnold's deposition will be to the copy of the deposition that the Defendants provided the Court, as it is the more complete copy.

Plaintiffs' Reply and Response ¶ 3, at 3 (admitting this fact).  Arnold's ATV was not separately insured with Farmers.  See, e.g., Arnold Depo. at 23:1-25; Cross-Motion ¶ 20, at 5 (setting forth this fact); Plaintiffs' Reply and Response ¶ 3, at 3 (admitting this fact).  Arnold testified that his ATV was easier to hotwire than a car, and could be pushed or rolled.  See, e.g., Arnold Depo. at 45:11-46:16; Cross-Motion ¶ 19, at 5 (setting forth this fact); Plaintiffs' Reply and Response ¶ 3, at 3 (admitting this fact).

On December 5, 2005, Arnold was transporting his ATV in the bed of his pickup truck as he returned from a hunting trip.  See, e.g., Arnold Depo. at 46:20-47:18; Memorandum ¶ 20, at 5 (setting forth this fact); Cross-Motion at 9 (not controverting this fact).  Arnold stopped at a local tavern and parked his truck in the parking lot.  See, e.g., Arnold Depo. at 46:23-47:18; Memorandum ¶ 21, at 5 (setting forth this fact); Cross-Motion at 9 (not controverting this fact).  While Arnold did not witness the alleged theft, two patrons who were in the tavern, Constantine Argyres and Robert Deal, witnessed portions of the theft on a television monitor that displayed video-footage from the tavern's rotating security cameras.  See, e.g., Deposition of Constantine Argyres at 15:8-24, 20:8-11 (taken September 22, 2010), filed April 29, 2010 (Doc. 64-6); Cross-Motion ¶ 16, at 5 (setting forth this fact); Plaintiffs' Reply and Response ¶ 3, at 3 (admitting this fact); Memorandum ¶ 22, at 5 (setting forth this fact); Cross- Motion at 9 (not controverting this fact).  Neither witness saw the entire theft from start to finish, because the security camera rotated to a new angle in the middle of the theft.  See, e.g., Deposition of Robert A. Deal at 11:20-12:17 (taken September 22, 2010), filed April 29, 2010 (Doc. 64-7); Cross-Motion ¶ 16, at 5 (setting forth this fact); Plaintiffs' Reply and Response ¶ 3, at 3 (admitting this fact).

Argyres testified that he saw a red pickup truck back up to Arnold's pickup truck.  See, e.g., Argyres Depo. at 21:4-25:24; Cross-Motion ¶ 17, at 5 (setting forth this fact); Plaintiffs' Reply

and Response ¶ 3, at 3 (admitting this fact); Memorandum ¶¶ 22-23, at 5 (setting forth this fact); Cross- Motion at 9 (not controverting this fact).  Argyres observed two people drop the tail gates for each truck and roll the ATV from Arnold's pickup  into the red pickup.  See, e.g., Argyres Depo. at 25:24-26:24; Cross-Motion ¶ 17, at 5 (setting forth this fact); Plaintiffs' Reply and Response ¶ 3, at 3 (admitting this fact); Memorandum ¶¶ 22-23, at 5 (setting forth this fact); Cross-Motion at 9 (not controverting this fact).  Argyres did not see what happened after that scene, nor does he know whether the driver of the red pickup was one of the two people he saw rolling the ATV or whether the person who backed up the pickup to Arnold's truck was the same person who drove off with the ATV.  See, e.g., Argyres Depo. at 24:2-15, 27:16-25; Cross-Motion ¶ 17, at 5 (setting forth this fact); Plaintiffs' Reply and Response ¶ 3, at 3 (admitting this fact).

Deal testified that he saw a man standing near Arnold's pickup truck who looked out of place.  See, e.g., Deal Depo. at 19:20-20:9; Cross-Motion ¶ 18, at 5 (setting forth this fact); Plaintiffs' Reply and Response ¶ 3, at 3 (admitting this fact).  The video camera then cut away to another location and the next thing he saw was a red pickup truck driving away with Arnold's ATV in the back.  See, e.g., Deal Depo. at 20:8-21:17; Cross-Motion ¶ 18, at 5 (setting forth this fact); Plaintiffs' Reply and Response ¶ 3, at 3 (admitting this fact); Memorandum ¶ 24, at 6 (setting forth this fact); Cross-Motion at 9 (not controverting this fact).  Deal did not see any of the occupants in the red pickup truck; he does not know how many people were in the red pickup truck, whether the driver was a man or a woman, whether the person he saw standing at the back of Arnold's truck was the red pickup's driver, or whether the red pickup's driver was involved with the person he saw standing next to Arnold's truck.  See, e.g., Cross-Motion ¶ 18, at 5 (setting forth this fact); Plaintiffs'

Reply and Response ¶ 3, at 3 (admitting this fact).[13]   The identity of the operator of the motor

vehicle who negligently or intentionally caused the loss of property to Arnold remains unknown,

and the property has not been recovered.   See, e.g., Memorandum ¶ 25, at 6 (setting forth this fact);

Cross-Motion at 9 (not controverting this fact).[14]

### 3.   Undisputed Facts Relating to the Circumstances of G. Wise's Claim.

G. Wise owned an all-terrain vehicle -- an ATV.   See Deposition of Gary Wise at 12:21-

13:13 (taken August 27, 2009), filed April 2, 2010 (Doc. 58-1).[15]   On December 16, 2004, G. Wise's

---

[13] The Defendants did not provide the Court with the portion of Deal's deposition that allegedly supports this assertion.   Because the Plaintiffs admit this asserted fact, however, the Court will deem this fact true.   See D.N.M. LR-Civ. 56.1(b).

[14] In their Memorandum, the Plaintiffs assert that "[u]pon information and belief the loss of property to all Plaintiffs was caused intentionally by the unknown motorists."   Memorandum ¶ 26, at 6 (citing Letter from Karen Ginsberg to Geoffrey Romero (dated September 6, 2006), filed April 2, 2010 (Doc. 58-2); Letter from Daniel J. O'Brien to Geoffrey Romero (dated December 5, 2005), filed April 2, 2010 (Doc. 58-5); Letter from Karen Ginsberg to Geoffrey Romero (dated September 6, 2006), filed April 2, 2010 (Doc. 58-9)).   The Defendants dispute this assertion, stating that the Plaintiffs' assertion is not a factual statement and is based on conjecture and speculation.   See Cross-Motion ¶ 4, at 9.   These letters do not provide evidence supporting the assertion that unknown motorists intentionally caused the Plaintiffs' loss of property; instead, the letters summarize the Plaintiffs' assertions, and address the Plaintiffs assertions in denying coverage.   See, e.g., Letter from Karen Ginsburg to Geoffrey Romero at 1-4 (dated September 6, 2006).   The Court will not deem this fact as true, because it is based is based on speculation, and any reasonable inference is in the jury's province.   See Dean Witter Reynolds Inc. v. Variable Annuity Life Ins. Co., 373 F.3d 1100, 1111-12 (10th Cir. 2004)(reversing the district court's grant of summary judgment on fraud and promissory estoppel claims, in part because the district court relied on speculation in dismissing the claim, and "such 'speculation' is within the province of the jury; only by indulging inferences in favor of the party moving for summary judgment could the possibility that VALIC could have stopped payment on a check in time be dismissed").

[15] In the Plaintiffs' Memorandum, the Plaintiffs asserted several facts which state that both Gary and Shirley Wise are Plaintiffs.   See Memorandum ¶¶ 1, 7, 8, 9, 10, at 3-4.   The Defendants disputed paragraphs 1, 8, and 9 on the basis that they incorrectly stated that S. Wise is a Plaintiff.   See Cross-Motion ¶ 1, at 9.   At the hearing, Mr. Romero stated that his inclusion of S. Wise as a plaintiff was an error on his part.   See Transcript of Hearing at 43:10-23 (taken August 17, 2010)(Court, Romero)("Tr.")(the Court's citations to the transcript refer to the court reporter's original, unedited version; any final transcript may contain slightly different page and/or line

ATV was stolen from his backyard.  See, e.g., Amended Complaint ¶ 18, at 3; Cross-Motion ¶ 1, at 3 (setting forth this fact); Plaintiffs' Reply and Response ¶ 1, at 2 (admitting this fact).  At the time, G. Wise had automobile and homeowner insurance policies with Farmers.  See, e.g., S. Wise Depo. at 12:2-14:1; Cross-Motion ¶ 2, at 3 (setting forth this fact); Plaintiffs' Reply and Response ¶ 1, at 2 (admitting this fact).  G. Wise's motor vehicle insurance policy with Farmers provided coverage for uninsured-motorist property damage.  See Answer to Amended Complaint ¶¶ 21-23, at 3, filed July 31, 2008 (Doc. 23).  His ATV was not separately insured with Farmers.  See G. Wise Depo. at 10:14-11:6;[16] Cross-Motion ¶ 3, at 3 (setting forth this fact); Plaintiffs' Reply and Response ¶ 1, at 2 (admitting this fact).  G. Wise testified that a person could move the ATV without starting it if the person rolled, pushed, or hotwired the ATV.  See G. Wise Depo. at 14:15-16:20; Cross-Motion ¶ 6, at 4 (setting forth this fact); Plaintiffs' Reply and Response ¶ 1, at 2 (admitting this fact).

On December 16, 2004, G. Wise's ATV was parked on the rear porch of his home.  See G. Wise Depo. at 18:4-6; Memorandum ¶ 2, at 3 (setting forth this fact); Cross-Motion at 9 (not controverting this fact).  At approximately 7:00 a.m., G. Wise returned home from work.  See G. Wise Depo at 18:7-21:25; Memorandum ¶ 3, at 3 (setting forth this fact); Cross-Motion at 9 (not controverting this fact).  G. Wise noticed that one of the gates in his backyard was open.  See, e.g., G. Wise Depo. at 21:15-16; Cross-Motion ¶ 4, at 3 (setting forth this fact); Plaintiffs' Reply and Response ¶ 1, at 2 (admitting this fact).  The gate opened directly onto a drive-way that led to the

---

numbers).  The Court will exclude any references to S. Wise as a plaintiff, and will deem the facts in paragraphs 1, 8, and 9 in the Plaintiffs' Memorandum admitted, because the addition of S. Wise was an oversight.  See D.N.M. LR-Civ. 56.1(b).

[16] The following citations to G. Wise's and S. Wise's depositions will be to the copy of the depositions that the Defendants provided the Court, as they are the more complete copies of the depositions.

street.  See G. Wise Depo. at 24:2-4; Cross-Motion ¶ 4, at 3 (setting forth this fact); Plaintiffs' Reply

and Response ¶ 1, at 2 (admitting this fact).  After G. Wise discovered that the gate was open, he

noticed that his ATV was missing.  See G. Wise Depo. at 21:16-17; Cross-Motion ¶ 4, at 3 (setting

forth this fact); Plaintiffs' Reply and Response ¶ 1, at 2 (admitting this fact).

G. Wise noticed ATV tire tracks heading from the back patio to the open gate.  See G. Wise

Depo. at 15:20-23; id. at 25:9-27:18; Cross-Motion ¶ 5, at 3 (setting forth this fact); Plaintiffs' Reply

and Response ¶ 1, at 2 (admitting this fact); Memorandum ¶ 4, at 3 (setting forth this fact); Cross-

Motion at 9 (not controverting this  fact). G. Wise also saw ATV tire tracks on the concrete

driveway outside the gate and on the asphalt in the street for a short distance.  See G. Wise Depo.

at 27:19-28:23; Cross-Motion ¶ 5, at 3-4 (setting forth this fact); Plaintiffs' Reply and Response ¶ 1,

at 2 (admitting this fact).  G. Wise noticed another set of tire tracks in the blown sand on the street

near his driveway and gate.  See G. Wise Depo. at 30:1-31:22; Cross-Motion ¶ 7, at 4 (setting forth

this fact); Plaintiffs' Reply and Response ¶ 1, at 2 (admitting this fact).  G. Wise believed those tire

tracks were left by a truck and a trailer.  See G. Wise Depo at 30:1-37:25; Cross-Motion ¶ 7, at 4

(setting forth this fact); Plaintiffs' Reply and Response ¶ 1, at 2 (admitting this fact); Memorandum

¶ 5, at 3 (setting forth this fact); Cross-Motion at 9 (not controverting this fact).

Although there were no witnesses to the theft, G. Wise believes that his ATV was stolen by

one or more persons who jumped the wall of his backyard, opened the gate, pushed the ATV down

the driveway, and loaded the ATV onto a vehicle towing a trailer.  See G. Wise Depo. at 35:2-36:23;

id. at 41:16-23; id. at 45:13-23; Cross-Motion ¶ 8, at 4 (setting forth this fact); Plaintiffs' Reply and

Response ¶ 1, at 2 (admitting this fact).[17]  G. Wise reported the theft to the police, but the police

_____

[17] In the Plaintiffs' Memorandum, they assert that the existence of ATV tire tracks leading
up to, but not continuing past the tire tracks of a small trailer, "lead[s] to a reasonable inference that

report does not make reference to a vehicle or trailer being involved in the theft.  See, e.g., State of

New Mexico Uniform Incident Report (dated December 16, 2004), filed April 29, 2010 (Doc. 64-3);

Cross-Motion ¶ 9, at 4 (setting forth this fact); Plaintiffs' Reply and Response ¶ 1, at 2 (admitting

this fact).  G. Wise's theory of the theft is that a roofer noticed the ATV parked in his backyard and

proceeded to steal it.  See, e.g., G. Wise Depo. at 46:8-17; Cross-Motion ¶ 10, at 4 (setting forth this

fact); Plaintiffs' Reply and Response ¶ 1, at 2 (admitting this fact).  Other than this theory, G. Wise

does not know how his ATV was stolen; he does not know how many people participated in the

alleged theft, when the theft occurred, what the people looked like, or whether the driver of the

vehicle participated in the theft.  See G. Wise Depo. 41:20-20; id. at 68:13-11.[18]

The police officer who responded to G. Wise's telephone call about the theft testified that

_____

an unknown tortfeasor utilized a motor vehicle hauling a trailer to remove the ATV from the Wises [sic] home."  Memorandum ¶ 6, at 3 (citing G. Wise Depo.).  The Plaintiffs also assert that "[t]he unidentified operator of the motor vehicle utilized the same to negligently or intentionally cause a loss of property to the Wise Plaintiffs."  Memorandum ¶ 7, at 4.  The Defendants dispute these asserted facts, arguing that these facts set forth legal argument and are based on conjecture and speculation.  See Cross-Motion ¶ 2, at 9.  The Court will not deem these facts admitted, because they set forth legal argument, which is not proper in asserted undisputed facts, and call for speculation, and indulging inferences in favor of the moving party.  See Dean Witter Reynolds, Inc. v. Variable Annuity Life Ins. Co., 373 F.3d at 1112 ("We believe such 'speculation' is within the province of the jury; only by indulging in inferences in favor of the party moving for summary judgment could the possibility that VALIC could have stopped payment on a check in time be dismissed."); Ruiz v. City of Brush, 2006 WL 1816454, at *4 (D. Colo. 2006)("[T]he 'sole purpose' of the required statements of and responses to undisputed material facts is 'to establish facts and determine which of them are in dispute[;] [l]egal argument should be reserved for separate portions of the brief.")(citation omitted).

[18] The Plaintiffs dispute this fact, contending that the only reasonable inference that can be drawn from the evidence is that G. Wise's "ATV was loaded onto the back of a truck or trailer in commission of the theft, resulting in the complete loss of the property to Mr. Wise."  Plaintiffs' Reply and Response ¶ 2, at 3.  The Court accepts the Defendants' assertion as true, because the Plaintiffs have failed to controvert the Defendants' statement of fact with a denial or counter-statement that meets the substance of the Defendants' statement; instead, the Plaintiffs have "intermixed [their] response[] . . . with legal argument[]" and speculation.  Mitchael v. Intracorp, Inc., 179 F.3d 847, 856 (10th Cir. 1999).

G. Wise did not know any details about the actual theft.  See Deposition of Shawn Christopher Benavidez at 18:1-21:22 (taken February 1, 2010), filed April 29, 2010 (Doc. 64-4); Cross-Motion ¶ 12, at 4 (setting forth this fact); Plaintiffs' Reply and Response ¶ 1, at 2 (admitting this fact).  G. Wise's ATV was never recovered.  See G. Wise Depo. at 68:25-69:6; Cross-Motion ¶ 13, at 4 (setting forth this fact); Plaintiffs' Reply and Response ¶ 1, at 2 (admitting this fact).

After the theft, G. Wise submitted a claim for damages under the uninsured motorist property damage provisions of his policy.  See Answer to Amended Complaint ¶ 21, at 3.  Farmers denied coverage.  See Letter from Karen Ginsberg to Geoffrey Romero at 1 (dated September 6, 2006), filed April 2, 2010 (Doc. 58-2)("Letter Regarding G. Wise's Claim"); Memorandum ¶ 10, at 4 (setting forth this fact); Cross-Motion at 9 (not controverting this fact).  One of the bases for Farmer's denial of coverage was that the tortfeasors' conduct was intentional.  See, e.g., Letter Regarding G. Wise's Claim at 3; Memorandum ¶ 27, at 6 (setting forth this fact); Cross-Motion at 9 (not controverting this fact).

## PROCEDURAL BACKGROUND

On February 5, 2009, Arnold, J. Jaramillo, and G. Wise filed a Complaint for themselves and all others similarly situated in the Second Judicial District of New Mexico, alleging breach of statutory, common-law, and contractual duties.  See Class Action Complaint for Breach of Statutory, Common Law, and Contractual Duties, filed April 2, 2009 (Doc. 1-2).  The Defendants removed the action, alleging that the Court had original jurisdiction under 28 U.S.C. § 1332(a) and (d), because there is complete diversity of citizenship and the matter is a class action in which the amount in controversy exceeds $5,000,000.00.  See Notice of Removal at 1, filed April 2, 2009 (Doc. 1).

The Plaintiffs now move the Court for entry of summary judgment declaring that the uninsured-motorist property-damage coverage of the Plaintiffs' policies was in effect for the

property damage losses of which they complained.  <u>See</u> Motion for Summary Judgment Declaring

Uninsured Motorist Property Damage Coverage is Applicable to the Plaintiffs' Losses, filed April

2, 2010 (Doc. 57).   The Plaintiffs submitted a memorandum in support of their motion.

<u>See</u> Plaintiffs' Memorandum in Support of Their Motion for Summary Judgment Regarding

Coverage, filed April 2, 2010 (Doc. 58)("Memorandum").  The Plaintiffs argue that two questions

are at issue in their motion: (i) whether the UMA requires an insurance carrier to provide coverage

for loss of or damage to property, including loss of use, that an unknown motorist using a motor

vehicle to commit a theft causes; and (ii) whether, if the UMA requires coverage of the Plaintiffs'

claims, Farmers improperly denied Plaintiffs' claims for uninsured motorist property damage

benefits.  <u>See</u> Memorandum at 2.  The Plaintiffs argue that the UMA requires coverage of their

claims for loss of property, because New Mexico courts liberally interpret the UMA, and because

similar statutes include loss of use as a damage.  <u>See</u> Memorandum at 11-15.

     The Defendants oppose the Plaintiffs' motion for summary judgment, and filed a cross-

motion for summary judgment.  <u>See</u> Opposition to Plaintiffs' Summary Judgment Motion & Cross-

Motion for Summary Judgment, filed April 29, 2010 (Doc. 64).  The Defendants recognize that, as

a threshold matter, the Plaintiffs must demonstrate that the UMA requires auto insurers to pay

uninsured motorist property damage for theft of personal property.  <u>See</u> Cross-Motion at 1.  The

Defendants contend that the UMA's plain language says nothing about loss of property, loss of use,

or theft; instead, it provides coverage only for destruction of property.  <u>See</u> Cross-Motion at 2.  The

Defendants thus ask the Court to deny the Plaintiffs' summary judgment motion, and to grant their

motion for summary judgment on Arnold's and G. Wise's claims.  <u>See</u> Cross-Motion at 18.  The

Defendants further argue that the Court should grant summary judgment on J. Jaramillo's claims,

because he has no insurable interest, did not suffer damages, and lacks standing.  <u>See</u> Cross-Motion

at 18.  The Defendants also argue that, assuming the UMA covers theft, all the Plaintiffs' claims fail

as a matter of law, because they cannot prove the required elements of uninsured-motorist property-

damage coverage.  See Cross-Motion at 2.  The Defendants contend that none of the Plaintiffs can

prove that their particular theft arose out of the ownership, maintenance, or use of a motor vehicle,

or that owners or operators of uninsured motor vehicles from whom each Plaintiff is legally entitled

to recover damages caused the theft.  See Cross-Motion at 3.  The Defendants contend that, at a

minimum, these elements of proof involve disputed fact issues and inferences that defeat the

Plaintiffs' motion and require three separate trials.  See Cross-Motion at 3.

In the Plaintiffs' Reply and Response, the Plaintiffs contend that J. Jaramillo has standing.

See Plaintiffs' Reply and Response at 20.  The Plaintiffs also contend that:

> Of the five grounds previously relied upon by Farmers to deny coverage, Defendants
> now abandon all but one.  In doing so, Farmers apparently concedes that four of the
> five reasons it relied in denying coverage to Plaintiffs were unfounded, unreasonable,
> and in violation of public policy.  In an effort to distance themselves from these
> wrongful denials of coverage, Defendants now contend that the same are moot.
> They are moot only in so far as Defendants no longer relies upon these basis [sic] for
> denial of coverage.

See Plaintiffs' Reply and Response at 34.  The Plaintiffs argue that their damages arose out of the

ownership, maintenance, or use of a motor vehicle.  See Plaintiffs Reply and Response at 24.  In the

Plaintiffs' response to the Defendants' asserted undisputed facts, J. Jaramillo admits that the

physical damage to the bobcat was not caused by a motor vehicle, and withdraws his claim relating

to the trailer.  See Plaintiffs' Reply and Response at ¶ 10, at 4.

In their Reply, the Defendants stated:

> One clarification relates to Plaintiffs' assertion that we somehow conceded that the
> bases Farmers Arizona gave during the claims process for not paying Plaintiffs'
> claims were "unfounded, unreasonable, and in violation of public policy." (Dkt. # 76
> at 34) We did not. There was (and is) no reason for us to debate Farmers Arizona's
> bases for not paying Plaintiffs' pre-litigation claims because the cross motions are

> about coverage. Whether coverage exists is a present-tense issue and requires an analysis of the scope of the UMA, or alternatively the facts of each theft, without regard to the specific positions either side took during the claims handling process.

Reply at 18 n.6.  The Defendants allege that, because J. Jaramillo has withdrawn his claim for the trailer and his claim for physical damage to the bobcat, all of the Plaintiffs now assert only loss-of-use claims, and the Court should dismiss all the Plaintiffs' claims if it finds that the UMA does not provide coverage for loss of use.  <u>See</u> Reply at 14.  The Defendants also argue that, if the Court finds that the UMA covers loss of use, the Defendants are entitled to summary judgment, because J. Jaramillo lacks standing and does not have an insurable interest, and because the thefts of the Plaintiffs' property did not arise out of the ownership, maintenance or use of a motor vehicle. <u>See</u> Reply at 14-17.

At the hearing, the Court asked Geoffrey Romero, the Plaintiffs' counsel, whether he was arguing that Farmers' policy was broader than what the UMA requires.  <u>See</u> Tr. at 26:18-20 (Court). Mr. Romero stated that he was not.  <u>See id.</u> at 26:22-25 (Romero).  The Court asked whether it should deal with the intricacies of Farmers' policy or whether it should decide only what the UMA requires.  <u>See</u> Tr. at 27:8-11 (Court).  Mr. Romero stated that he believes the Court should decide what the UMA requires.  <u>See</u> Tr. at 27:12-15.  Emily Cates, the Defendants' counsel, stated that the Court should focus on what the statute requires, not on the Farmers' policy, because the Defendants' position is that the UMA does not afford coverage.  <u>See</u> Tr. at 34:1-7 (Court, Cates).  Ms. Cates stated that Farmers' policy is irrelevant for purposes of determination of the cross motions.  <u>See</u> Tr. at 34:18-19.  The Court also asked Mr. Romero about the Defendants' position that J. Jaramillo withdrew his property claim.  <u>See</u> Tr. at 40:15-19 (Court).  Mr. Romero stated that J. Jaramillo withdrew his claim relating to the trailer.  <u>See</u> Tr. at 41:2-19 (Romero).  Mr. Romero did not discuss J. Jaramillo's claim for physical damage to the bobcat, but in the pleadings, J. Jaramillo admitted

that a motor vehicle did not cause the physical damage to the bobcat.  It therefore appears that J.

Jaramillo alleges only a claim for loss of use of the bobcat.

## RELEVANT LAW REGARDING THE UMA

The UMA states:

A. No motor vehicle or automobile liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person and for injury to or destruction of property of others arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in New Mexico with respect to any motor vehicle registered or principally garaged in New Mexico <u>unless coverage is provided therein or supplemental thereto in minimum limits for bodily injury or death and for injury to or destruction of property</u> as set forth in Section 66-5-215 NMSA 1978 and such higher limits as may be desired by the insured, but up to the limits of liability specified in bodily injury and property damage liability provisions of the insured's policy, <u>for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, and for injury to or destruction of property</u> resulting therefrom, according to the rules and regulations promulgated by, and under provisions filed with and approved by, the superintendent of insurance.

NMSA 1978, § 66-5-301A (emphasis added).  This statute "embodies a public policy of New

Mexico to make uninsured motorist coverage a part of every automobile liability insurance policy

issued in this state, with certain limited exceptions." <u>Romero v. Dairyland Ins. Co.</u>, 111 N.M. 154,

156, 803 P.2d 243, 245 (1990).

The purpose of compulsory uninsured motorist insurance is

to protect persons injured in automobile accidents from losses which, because of the tortfeasor's lack of liability coverage, would otherwise go uncompensated. In other words, the legislative purpose in creating compulsory uninsured motorist coverage was to place the injured policyholder in the same position, with regard to the recovery of damages, that he would have been in if the tortfeasor had possessed liability insurance.

<u>Chavez v. State Farm Mut. Auto. Ins. Co.</u>, 87 N.M. 327, 329, 533 P.2d 100, 102 (1975)(internal

quotation marks and citations omitted).  See <u>Romero v. Dairyland Ins. Co.</u>, 111 N.M. at 156, 803

P.2d at 245 (citations omitted)(stating that the purpose of the statute is "to expand insurance coverage and to protect individual members of the public against the hazard of culpable uninsured motorists").  New Mexico courts interpret the UMA liberally to implement its remedial purpose; therefore, any provision that allows for "an exception to uninsured coverage is strictly construed to protect the insured."  Phoenix Indem. Ins. Co. v. Pulis, 129 N.M. at 398, 9 P.3d at 642 (citation omitted).

New Mexico case law dictates that "the only limitations on protection are those specifically set out in the statute itself: that the insured be legally entitled to recover damages and that the negligent driver be uninsured."  State Farm Mutual Auto. Ins. Co. v. Luebbers, 138 N.M. 289, 295, 119 P.3d 169, 175 (Ct. App. 2005)(citation omitted).  "Only where the exclusions can be construed to be within the legislature's intent, . . .  or where a claim is not completely precluded and the limit simply implicates policy limits . . . will an exclusion on uninsured motorist coverage be considered valid." 138 N.M. at 295-96, 119 P.2d at 174-75.  New Mexico courts have invalidated policy provisions that exclude all government-owned vehicles from the definition of an uninsured motor vehicle and that exclude coverage when the insured was, at the time of the injury, occupying an uninsured motor vehicle, because reading the UMA to permit these exclusions would create the impermissible gap in coverage that the Legislature sought to avoid.  See Boradiansky v. State Farm Mutual Auto. Ins. Co., 141 N.M. 387, 388, 156 P.3d 25, 26 (N.M. 2007);  Chavez v. State Farm Mut. Auto. Ins. Co., 87 N.M. 327, 328-29, 533 P.2d 100, 101-02 (N.M. 1975).  In Boradiansky v. State Farm Mutual Auto Ins. Co., the Supreme Court of New Mexico stated:

> [I]t is not the intent of the statute to limit coverage for an insured to a particular location or a particular vehicle.  The main focus behind the Uninsured Motorist Act was to allow for coverage to be provided for innocent motorists injured through the fault of uninsured or underinsured motorists in New Mexico.   It seems counterintuitive to suggest that the Legislature intended to create a gap in coverage

by permitting a contractual exclusion of government-owned vehicles from uninsured or underinsured motorist claims.  It also seems inconsistent with our concern for excluding coverage for discrete groups.  If coverage is intended to be broad, then the exclusion of discrete groups of defendants seems as anomalous as discrete groups of plaintiffs.

141 N.M. at 389, 156 P.3d at 27 (internal quotation marks and citation omitted).

## RELEVANT LAW REGARDING MANDATORY FINANCIAL RESPONSIBILITY ACT

The New Mexico Legislature enacted the Mandatory Financial Responsibility Act, NMSA 1978, §§ 66-5-201 to -239 ("MFRA"), "to require residents of New Mexico who own and operate motor vehicles upon the highways of the state either to have the ability to respond in damages to accidents arising out of the use and operation of a motor vehicle or to obtain a motor vehicle insurance policy."  NMSA 1978, § 66-5-201.  The MFRA states that no owner shall permit operation of an uninsured motor vehicle, and no driver shall drive an uninsured motor vehicle, unless the vehicle or driver is exempted from the MFRA's provisions.  See NMSA 1978, § 66-5-205A-B.  The MFRA defines

"Judgment," as used in the Mandatory Financial Responsibility Act, [as] any judgment which becomes final by expiration without appeal of the time within which an appeal might have been perfected or by final affirmation on appeal rendered by a court of competent jurisdiction of any state or of the United States, upon a cause of action arising out of the ownership, maintenance or use of any motor vehicle of a type subject to registration under the laws of New Mexico, for damages, including damages for care and loss of services, because of bodily injury to or death of any person or for damages because of injury to or destruction of property, including the loss of use thereof, or upon a cause of action on an agreement of settlement for such damages.

NMSA 1978, § 66-5-209 (emphasis added).  MFRA sets forth the payments that are sufficient to satisfy the requirements in the MFRA. The statute states:

A. Judgments herein referred to shall, for the purpose of the Mandatory Financial Responsibility Act only, be deemed satisfied when:

(1) twenty-five thousand dollars ($25,000) has been credited upon any judgment or

-23-

judgments rendered in excess of that amount because of bodily injury to or death of one person as the result of any one accident;

(2) subject to the limit of twenty-five thousand dollars ($25,000) because of bodily injury to or death of one person, the sum of fifty thousand dollars ($50,000) has been credited upon any judgment or judgments rendered in excess of that amount because of bodily injury to or death of two or more persons as the result of any one accident; or

(3) ten thousand dollars ($10,000) has been credited upon any judgment or judgments rendered in excess of that amount because of injury to or destruction of property of others as a result of any one accident.

NMSA 1978, § 66-5-215.   The MFRA allows for persons to give evidence of financial responsibility, when required under MFRA, in several ways -- specifically, by filing: (i) evidence of a motor vehicle insurance policy; (ii) a surety bond; or (iii) a certificate of deposit of money.  <u>See</u> NMSA 1978, § 66-5-218.  The certificate of deposit of money certifies that the person named in the certificate has deposited $60,000.00 in cash with the state treasurer.  <u>See</u> NMSA 1978, § 66-5-266. This cash deposit

shall be held by the state treasurer to satisfy, in accordance with the provisions of the Mandatory Financial Responsibility Act, any execution on a judgment issued against the person making the deposit, <u>for damages, including damages for care and loss of services because of bodily injury to or death of any person or for damages because of injury to or destruction of property, including the loss of use thereof</u>, resulting from the ownership, maintenance, use or operation of a motor vehicle of a type subject to registration under the laws of New Mexico after the deposit was made.

NMSA 1978, § 66-5-277 (emphasis added).

### RELEVANT LAW REGARDING THE NEW MEXICO INSURANCE CODE

The New Mexico Insurance Code sets forth different categories of insurance.  The Insurance Code defines property insurance as "insurance of real or personal property . . . against loss or damage from any and all hazards or causes, and against loss consequential upon such loss or damage," and "insurance against the liability of the insured for loss or damage to the property or

property interests of another from any cause for which the insured's property involved in such loss

or damage is insured by the same insurer."  NMSA 1978, § 59A-7-4.  The Insurance Code defines

vehicle insurance as insurance that covers:

> A. Physical Damage. <u>Insurance against loss of or damage to any land vehicle</u> or aircraft or any draft or riding animal resulting from or incident to ownership, maintenance or use of any such vehicle, aircraft or animal;

> B. Public Liability and Property Damage. Insurance against any hazard or cause, and against any loss, liability or expense resulting from or incident to ownership, maintenance or use of any such vehicle, aircraft or animal;

> C. Cargo. Insurance against loss of or damage to property contained in a vehicle or being loaded or unloaded therein or therefrom or incident to the ownership, maintenance or use of any such vehicle, aircraft or animal; and

> D. Medical Payments. Insurance for payment on behalf of the injured party or for reimbursement of the insured for payment, irrespective of legal liability of the insured, of medical, hospital, surgical and disability benefits, to persons injured and funeral and death benefits to dependents, beneficiaries or personal representatives of persons killed as the result of an accident, resulting from or incident to ownership, maintenance or use of any such vehicle, aircraft or animal. Such coverage shall not be deemed to be "health" insurance for purposes of the Insurance Code.

NMSA 1978, § 59A-7-7 (emphasis added).  The Court has been unable to find any cases that discuss

recovery for loss of use in the context of the New Mexico Insurance Code.

## RELEVANT NEW MEXICO LAW REGARDING STATUTORY INTERPRETATION[19]

A court's central concern, in construing a particular statute, "is to determine and give effect

to the intent of the legislature,"  <u>State ex rel. Klineline v. Blackhurst</u>, 106 N.M. 732, 735, 749 P.2d

_____

[19] Because the federal court is applying New Mexico law, it follows that it should apply state law as faithfully as a lower state court in New Mexico would.  Accordingly, the Court should apply the rules of statutory construction that New Mexico state courts apply, to the extent that federal and state rules of construction differ.  See <u>United States v. Ruiz</u>, 589 F.3d 1310, 1313 (10th Cir. 2009)("When the highest [state] court . . . has not interpreted a particular state statutory provision, . . . a federal court must examine state appellate court opinions and other authorities to predict how the [highest] court would interpret [that particular provision].  In doing so, a federal court must follow state rules of statutory construction.")(internal quotation marks and citations omitted)

1111, 1114 (1988)(citation omitted), "using the plain language of the statute as the primary indicator

of its intent," City of Santa Fe v. Travelers Cas. & Sur. Co., 147 N.M. 699, 702, 228 P.3d 483, 486

(2010). Courts give "the words used in the statute their ordinary meaning unless the legislature

indicates a different intent." State ex rel. Klineline v. Blackhurst, 106 N.M. at 735, 749 P.2d at 1114

(citation omitted).  Courts "construe the entire statute as a whole so that all the provisions will be

considered in relation to one another." Regents of Univ. of N.M. v. N.M. Fed'n of Teachers, 125

N.M. 401, 411, 962 P.2d 1236, 1246 (1998)(citing N.M. Pharmaceutical Ass'n v. State, 106 N.M.

73, 738 P.2d 1318 (1987)("In interpreting statutes, we should read the entire statute as a whole so

that each provision may be considered in relation to every other part." (citation omitted)).  A court

must construe a statute "so that no part of the statute is rendered surplusage or superfluous."  Matter

of Rehabilitation of W. Investors Life Ins. Co., 100 N.M. 370, 373, 671 P.2d 31, 34 (1983)(citations

omitted).  New Mexico courts will not, however, "read into a statute or ordinance language which

is not there, particularly if it makes sense as written." Regents of Univ. of N.M. v. N.M. Fed'n of

Teachers, 125 N.M. at 411, 962 P.2d at 1246 (quoting Burroughs v. Bd. of Cnty. Com'rs of

Bernalillo Cnty., 88 N.M. 303, 306, 540 P.2d 233, 236 (1975))(internal quotation marks omitted).

New Mexico courts also will "not depart from the plain wording of a statute, unless it is necessary

to resolve an ambiguity, correct a mistake or an absurdity that the Legislature could not have

intended, or to deal with an irreconcilable conflict among statutory provisions." Regents of Univ.

of N.M. v. N.M. Fed'n of Teachers, 125 N.M. at  411, 962 P.2d at 1246 (citation omitted).

New Mexico courts presume that the New Mexico Legislature knows of the existing law

when it enacts legislation.  See Herrera v. Quality Imports, 128 N.M. 300, 302-03, 992 P.2d 313,

315-16 (Ct. App. 1999).   New Mexico courts therefore presume that, where the New Mexico

Legislature has included language in one statute but not in another statute, it is "compelling evidence

that the legislature" intended to exclude the language.  Hanson v. Turney, 136 N.M. 1, 4, 94 P.3d 1, 4 (Ct. App. 2004).  See State v. Jade G., 141 N.M. 284, 290, 154 P.3d 659, 665 (2007)(stating that, when the legislature provided exceptions in one portion of the statute, but not another portion, the court "must presume these omissions were intentional").

New Mexico courts have declined to construe statutes more broadly than the plain language of the statute allows, even when the statute is one which they liberally interpret.  See Krahling v. First Trust Nat'l Ass'n, 123 N.M. 685, 689-90, 944 P.2d 914, 918-19 (Ct. App. 1997).  In Krahling v. First Trust Nat'l Ass'n, the Court of Appeals of New Mexico stated:

> Finally, Honeywell argues generally that the purpose of the Guaranty Association is to protect New Mexico residents.  As such, Honeywell urges us to liberally construe the Guaranty Law because of its humanitarian policy and to enforce coverage in this instance.  We decline to give the Guaranty Law any construction but a reasonable one since the language of the statute is clear as applied to the GICs in this case.  See United Water N.M. Inc. v. New Mexico Pub. Util. Comm'n, 121 N.M. 272, 276, 910 P.2d 906, 910 (1996)(statute should be given reasonable interpretation in accordance with the Legislature's apparent purpose); see also Unisys Corp., 943 S.W.2d at 140 (even though Texas Guaranty Act provided for liberal construction, court was not permitted to ignore statutory language excluding coverage of certain unallocated annuity contracts).  We therefore decline to construe the Guaranty Law more broadly than its plain language allows.

Krahling v. First Trust Nat'l Ass'n, 123 N.M. at 689-90, 944 P.2d at 918-19.

Similarly, in the workers' compensation context, New Mexico courts have stated that they will not use the cannon of liberal construction of a statute as a justification for disregarding the statute's plain language.  See Garcia v. N.M. State Highway Dept., 61 N.M. 156, 163, 296 P.2d 759, 763 (1956)("[W]e cannot close our eyes [to the statute's language] even under the canon of liberal construction of the compensation act to effect its remedial purposes.").  In Varela v. Mounho, 92 N.M. 147, 584 P.2d 194 (Ct. App. 1978), the Court of Appeals of New Mexico addressed whether the Workmen's Compensation Act should apply to a farm laborer employed at a commercial dairy

who was injured by a cow.  See 92 N.M. at 148-49, 584 P.2d at 195-96.  The Act provided that it

did not apply to employers of farm laborers.  See 92 N.M. at 149, 584 P.2d at 196.  The plaintiff

contended that the farm labor exclusion was outdated and had been criticized by legal writers, and

that New Mexico decisions hinted that the exclusion would not apply where the employer's activity

was a commercial enterprise.  See 92 N.M. at 149, 584 P.2d at 196.  The Court of Appeals stated

that the plaintiff

> asserts that unless we hold that commercial dairies do not come within [Section]
> 59-10-4(A), . . . our decision would be contrary to the purposes of the Workmen's
> Compensation Act which is "to provide a humanitarian and economical system of
> compensation for injured workmen".  [sic]  Graham v. Wheeler, [77 N.M. 455, 423
> P.2d 980 (1967)].  To achieve that purpose, plaintiff asserts the statute must be
> liberally construed in his favor.  See Schiller v. Southwest Air Rangers, Inc., 87 N.M.
> 476, 535 P.2d 1327 (1975).  Plaintiff also asserts there must be liberal construction
> in order to obtain fundamental fairness.  See Transport Indemnity Company v.
> Garcia, 89 N.M. 342, 552 P.2d 473 (Ct. App.1976).  Our answer is that the
> provisions of the Workmen's Compensation Act "may not be disregarded in the name
> of liberal construction." Graham v. Wheeler, supra.  The asserted unfairness to farm
> laborers "is a matter of legislative policy, and we are bound to interpret and apply
> the law as it is given us." Koger v. A. T. Woods, Inc., [38 N.M. 241, 31 P.2d 255
> (1934)].

92 N.M. at 149-50, 584 P.2d at 196-97.

## RELEVANT LAW REGARDING WHETHER THEFT OR LOSS OF PROPERTY CONSTITUTES PROPERTY DAMAGE

Several courts have held that theft or loss of property does not constitute property damage,

as defined in the applicable insurance policy.  See Travelers Ins. Companies v. P.C. Quote, Inc., 570

N.E.2d 614, 616-18 (Ill. App. Ct. 1991)(stating that the "loss of computers" is not property damage,

and distinguishing "damage to property and loss of property"); General Ins. Co of Am. v. Pametto

Bank, 233 S.E.2d 699, 701-02 (S.C. 1977)(finding that the loss of use of the property was not

"property damage" under the terms of the liability insurance policy -- which defined property

damage as "injury to or destruction of tangible property" -- because the only damage alleged was

"wrongful deprivation of property, not physical injury to property").

In <u>Harry Winston, Inc. v. Travelers Indem. Co.</u>, 366 F. Supp. 988 (E.D. Mo. 1973), the United States District Court for the Eastern District of Missouri addressed whether the plaintiff could recover $18,200.00 from Travelers Indemnity Company under the insured's homeowners policy after the plaintiff never received the jewelry that the insured allegedly mailed to the plaintiff. <u>See</u> 366 F. Supp at 989.  The policy stated that the insurer would pay on behalf of the insured all sums the insured was legally obligated to pay as damages because of property damage, and defined property damage as "injury to or destruction of property, including loss of use thereof."  366 F. Supp. at 989-90.  The district court addressed whether the loss of jewelry in the mails was covered within the language of the policy's liability section -- in other words, whether the loss of jewelry was property damage as defined in the policy.  <u>See</u> 366 F. Supp. at 990.  The district court believed that the loss of the jewelry was not a loss covered within the meaning of the policy's definition of property damage.  <u>See</u> 366 F. Supp. at 989-90.  The court found that, given the plain meaning of the policy's language, there was no injury to or destruction of the jewelry; therefore, there was no property damage within the meaning of the policy -- the jewelry was rather lost or stolen in some manner.  <u>See</u> 366 F. Supp. at 990.

In <u>State v. Glens Falls Ins. Co., Inc.</u>, 315 A.2d 257 (Vt. 1974), the Supreme Court of Vermont addressed whether an insurer had an obligation to defend the State in a lawsuit, brought by the owner of transparencies that he had sent to the State, but were never returned.  <u>See</u> 315 A.2d at 257.  The general liability policy stated that the insurer would pay on behalf of the insured all sums which the insured was legally obligated to pay as damages "because of injury to or destruction of property, including the loss of use thereof."  315 A.2d at 259.  The state argued that the transparencies had, in effect, been destroyed, but the Supreme Court found that, because there was

no evidence of actual destruction, the destruction was conjectural.  See 315 A.2d at 259.  The Supreme Court found that, in such circumstances, "the insurance company has no obligation to defend."  Id. at 259.

Other courts have held that theft or loss of property constitutes property damage, as defined under the applicable insurance policies.  In U.S. Fidelity & Guaranty Co. v. Mayor's Jewelers of Pompano, Inc., 384 So.2d 256 (Fla. Dist. Ct. App. 1980), the District Court of Appeal of Florida found that the applicable insurance policy covered theft of jewelry.  See 384 So.2d at 257, 259.  The insurance policy provided coverage for bodily injury or property damage, and defined property damage as "injury to or destruction of tangible property."  Id. at 257.  The insurer argued that theft of jewelry did not constitute "injury to or destruction of tangible property."  384 So.2d at 257.  The Florida Court of Appeal defined injury as "[a]ny wrong or damage done to another, either in his person, rights, reputation, or property," and "an act which damages, harms or hurts[,]" and found that the jewelry store suffered "the ultimate injury to its property" when a thief stole the property.  Id. at 258 (citation omitted).  The Florida Court of Appeal stated that the property was damaged, because the market value of the property to the one who lawfully possessed it was "totally diminished."  Id. at 258.  The Florida Court of Appeal therefore found that theft of personal property is "property damage" unless a contrary intent is clearly expressed in the policy.  384 So.2d at 258.

In Hofing GMC Truck, Inc. v. Kay Wheel Sales Co., Inc., 543 F. Supp. 414 (E.D. Pa. 1982), the United States District Court for the Eastern District of Pennsylvania addressed a general liability policy's coverage.  See 543 F. Supp. at 416.  The policy stated that the insurer would pay all sums that the insured became legally obligated to pay as damages because of bodily injury or property damage, and defined property damage as

physical injury to or destruction of tangible property which occurs during the policy

> period, including the loss of use thereof at any time resulting therefrom, or . . . loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.

543 F. Supp. at 416-17.  The insurance company argued that the policy did not provide coverage for theft of property, because theft of property was not property damage within the meaning of the policy.  See 543 F. Supp. at 417.  The district court recognized that, arguably, theft of property is not a form of physical injury to or destruction of tangible property.  See id. at 418 (citing U.S. Fidelity & Guaranty Co. v. Mayor's Jewlers of Pompano, Inc., 384 So.2d 256, 258 (Fla. App. 1980).  The district court stated, however:

> Nevertheless, if property is stolen, the rightful possessor is necessarily no longer able to use that property. Thus, he suffers a "loss of use" in the plain, ordinary sense of those words. Midland's argument to the contrary is embodied in three conclusionary sentences which fail to suggest any tenable ground for concluding that the phrase "loss of use" has some narrower meaning that would exclude loss of use caused by theft.  Accordingly, the Court holds that the theft of Hofing's tractor from Kay's premises constituted "property damage" within the meaning of the Midland policy.

543 F. Supp. at 418.

  In Collin v. American Empire Ins. Co., 26 Cal. Rptr. 2d 391 (Cal. Ct. App. 1994), the Court of Appeal of California addressed a liability policy practically identical to the policy at issue in Hofing GMC Truck, Inc. v. Kay Wheel Sales Co., Inc. and found that the policy did not cover loss of property.  See 26 Cal. Rptr. 2d at 408.  The insurer's policy defined property damage as

> physical injury to or destruction of tangible property which occurs during the policy period, including loss of use thereof at any time resulting therefrom, or . . . loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.

26 Cal. Rptr. 2d at 408.  The Court of Appeal distinguished loss of use of property from loss of property in reversing the trial court's holding that conversion fell within the policy's definition of property damage because conversion constitutes loss of use of property.  See 26 Cal. Rptr. 2d at 409.

The Court of Appeal held that conversion does not constitute loss of use of property, finding instead that conversion constitutes loss of property.  See 26 Cal. Rptr. 2d at 409.  The Court of Appeal illustrated its distinction between loss of property and loss of use of property through an example, stating that the value of the loss of use of a stolen car is the rental value of a substitute vehicle whereas the value of the loss of the car is its replacement cost.  See  26 Cal. Rptr. 2d at 409.

The Court is not aware of any New Mexico cases that discuss whether the theft of property or the loss of property constitutes property damage.  In Lamb v. Randall, 95 N.M. 35, 618 P.2d 379 (Ct. App. 1980), however, the Court of Appeals of New Mexico interpreted a parental liability statute to determine the liability of parents of a child who burglarized the plaintiff's home and took the plaintiff's jewelry, which the plaintiff  never recovered.  See 95 N.M. at 36, 618 P.2d at 380. The statute stated that a person "may recover damages . . . from the parent . . . of a child when the child has maliciously or willfully injured a person or damaged or destroyed property, real or personal, belonging to the person bringing the action."  95 N.M. at 36, 618 P.2d at 380.  The Court of Appeals recognized that the plaintiff's property was pawned for money "but [was] not physically mutilated or destroyed." 95 N.M. at 37, 618 P.2d at 381.  The Court of Appeals stated: "There being no evidence that the property was damaged or destroyed, the parents are not liable . . . for the value of the property."  95 N.M. at 37, 618 P.2d at 381.

**RELEVANT LAW REGARDING WHETHER LOSS-OF-USE DAMAGES ARE RECOVERABLE WITHOUT ACCOMPANYING PHYSICAL DAMAGE**

Several courts have found that, without "physical damage or destruction to tangible property, one cannot recover damages for loss of use to tangible property."  Coulter v. CIGNA Property & Cas. Companies, 934 F. Supp. 1101, 1119 (N.D. Iowa 1996).  See Sadler v. Pacific Indemnity Co., CIV 08-0670 RLP/LFG, Memorandum Opinion and Order at 4, 9 (D.N.M. Mar. 24, 2009)(Puglisi,

J.)(finding that, when the personal liability policy defined property damage as "physical injury to or destruction of tangible property, including the loss of its use[,]" New Mexico courts would find that the policy language means "that the 'loss of use' must be accompanied by physical damage"), aff'd, NO. 09-2009, 2010 WL 299224 (10th Cir. Jan. 27, 2010); Mutlu v. State Farm Fire and Cas. Co., 785 N.E.2d 951, 954, 960 (Ill. App. Ct. 2003)(stating that the analysis in Coulter v. CIGNA Property & Cas. Companies and Elhers v. Johnson, 476 N.W.2d 291 (Wis. App. 1991), is sound and logical in a grammatical sense, and holding that there can be no coverage for the loss of use of tangible property unaccompanied by physical damage or destruction when the condominium unit owners insurance policy defines property damage as physical damage to or destruction of tangible property, including loss of use); Ehlers v. Johnson, 476 N.W.2d at 293 ("The only reasonable meaning of the clause [defining property damage as physical injury to or destruction of tangible property, including loss of use of this property] is that it defines property damage to include loss of use damage that accompanies physical injury or destruction."). The Court of Appeals of Wisconsin has analyzed the phrase "physical injury to or destruction of tangible property, including loss of use of this property" in a homeowners' insurance policy to determine its meaning.  See 476 N.W.2d at 293.

> The loss of use clause is introduced by the verb "including."  The dictionary defines "including" as "to take in or comprise as part of a whole . . . ."  The Mirriam-Webster Dictionary 358 (1974).  The loss of use clause is thus introduced as a subset of "physical injury to or physical destruction of tangible property."  If the loss of use clause were interpreted as the Frisches would have it, i.e., as any nonphysical injury to tangible property, the definition of property damage would effectively read: "physical injury to . . . tangible property, including non-physical injury."  We reject such a contradictory reading.

476 N.W.2d at 293.

In contrast, several courts have allowed loss-of-use claims to proceed without property

damage.  See Gibson v. Farm Family Mut. Ins. Co., 673 A.2d 1350, 1353 (Me. 1996)(stating that

the court interprets a "standard policy of insurance . . . 'most strongly' against the insurer[;] [thus]

'[p]roperty damage'" -- which was defined as physical injury to or destruction of tangible property

in the insurance policy -- "includes loss of use of tangible property with no accompanying physical

injury to that property").  In American Home Assurance Co. v. Libbey-Owens-Ford Co., 786 F.2d

22 (1st Cir. 1986), the United States Court of Appeals for the First Circuit found that a general

liability policy "did not require tangible property to suffer physical injury in order for a loss of use

claim to be covered."  786 F.2d at *25.  The First Circuit found the district court's reasoning

persuasive.  See 786 F.2d at *25.  The district court found

> coverage for the loss of use claim because the policy defined property damage as
> "physical injury to . . . tangible property, including the loss of use thereof" (emphasis
> added).  The court noted that, although the word "including" could suggest that loss
> of use must be traced to some physical injury, it was more reasonable to view the
> additional phrase "loss of use thereof" as including any "loss of use of tangible
> property", [sic] independent of physical injury to that property.  The court also noted
> that the American Home policy was significantly different from other policies that
> explicitly cover only "physical injury to tangible property . . . including loss of use
> thereof resulting therefrom."

786 F.2d at *25 (emphasis in original).

The Court has been unable to find a case from a New Mexico state court that discusses

whether loss-of-use damages are awardable in the absence of physical damage to property.  There

is a case from the Supreme Court of New Mexico, however, that discusses loss-of-use damages.  In

Cress v. Scott, 117 N.M. 3, 868 P.2d 648 (1994), the Supreme Court reversed the trial court's grant

of summary judgment on the plaintiff's claim for loss-of-use damages.  See 117 N.M. at 5, 868 P.2d

at 650.  The plaintiff took his vehicle to a repair shop for repair of his vehicle's timing system.  See

id. at 5, 868 P.2d at 650.  Six weeks after the repair shop conducted the repairs, the plaintiff took his

vehicle to another repair shop, where the mechanics told him that the timing system had been

repaired incorrectly.  See id. at 5, 868 P.2d at 650.  During the time that the second repair shop

worked on his vehicle, the plaintiff rode the bus or his bicycle, but did not rent a substitute vehicle.

See id. at 5, 868 P.2d at 650.  The Supreme Court of New Mexico reversed the trial court's grant of

summary judgment on the plaintiff's claim for loss-of-use damages, because it found that loss-of-use

damages may be measured by the reasonable rental value of a substitute vehicle, even in the absence

of a rental.  See id. at 6, 868 P.2d at 651.  The Supreme Court of New Mexico stated:

> The purpose of awarding loss-of-use damages is to provide reasonable compensation
> for inconvenience or monetary loss suffered during the time required for repair of
> damaged property.  If an individual avoids the inconvenience by actually renting
> substitute property then the measure of damages is the actual cost of the substitute.
> As we have reaffirmed above, if the individual cannot avoid the inconvenience, for
> financial reasons or otherwise, that person still may recover reasonable
> compensation.

117 N.M. at 6, 868 P.2d at 651.  The current Uniform Jury Instruction on loss-of-use damages

reflects the Supreme Court's opinion in Cress v. Scott, defining loss-of-use damages as the

"reasonable rental value of similar property during the period reasonably required for the repair of

the damaged property."  UJI 13-1818 NMRA.

## ANALYSIS

The Court finds that the phrase "injury to or destruction of property" in the UMA does not

require coverage for loss of use, because the Court finds that the omission of loss of use language

in the UMA indicates that the New Mexico Legislature intended the omission, and declines to

disregard the statute's plain language, even though New Mexico courts liberally construe the UMA.

Based on its review of New Mexico law, and law from other jurisdictions, the Court believes that,

even if the UMA required coverage for loss of use, there are good arguments that it would not

provide coverage for theft of property or for loss-of-use damages without accompanying physical

damage; the Court, however, need not decide this issue.  Because the Court finds that the UMA does

not provide coverage for the Plaintiffs' asserted claims, the Court will grant summary judgment on the Plaintiffs' claims.[20]   The Court therefore does not need to inquire into whether each Plaintiffs' claims arose from the ownership, maintenance, or use of a motor vehicle, or whether each Plaintiff is legally entitled to recover damages from the owners or operators of the uninsured motor vehicle.

I.   **THE PHRASE "INJURY TO OR DESTRUCTION OF PROPERTY" IN THE UNINSURED MOTORIST ACT DOES NOT REQUIRE COVERAGE FOR LOSS OF USE.**

The Plaintiffs contend that the UMA requires coverage for loss of use of property. See Memorandum at 11.  The Plaintiffs argue that the UMA requires coverage for loss of use of property, because New Mexico courts liberally interpret the UMA to implement its remedial purpose, which is to put the insured in the same position he or she would have been in had the uninsured motorist had liability coverage.  See Memorandum at 12.  The Plaintiffs allege that the "New Mexico statutory scheme pertaining to uninsured motorist coverage indicates that such damages include loss of use." Memorandum at 12.  In support of this argument, the Plaintiffs point to provisions in the MFRA and the New Mexico Insurance Code.  See Memorandum at 12- 14.

The Defendants argue that the UMA does not require coverage for loss of use or theft.  See Cross-Motion at 9.  The Defendants rely on several arguments to support their contention.  First, the Defendants argue that the UMA's plain language indicates that the New Mexico Legislature intended to require coverage only for physical damage to property, because the statute does not reference loss of use.  See Cross-Motion at 10.  The Defendants contend that the Plaintiffs ask the

---

[20] J. Jaramillo withdrew his claim for the trailer and for physical damage to the bobcat.  He now seeks damages only for loss of use of the bobcat.  This means that J. Jaramillo's claim is now identical to Arnold's and G. Wise's claims.  All three now seek only loss-of-use damages.  Because the Court finds that the UMA does not require coverage for loss of use, the Court grants summary judgment on all three of the Plaintiffs' claims.

Court to rewrite the statute's language.  See Cross-Motion at 11.  The Defendants allege that references to loss of use in the MFRA and the New Mexico Insurance Code indicate that the New Mexico Legislature intended not to include this language in the UMA.  See Cross-Motion at 12-13.

In their Reply and Response, the Plaintiffs contend that the Defendants ignore the standard that the UMA must be liberally interpreted to implement its remedial purpose.  See Plaintiffs' Reply and Response at 7.  The Plaintiffs also contend that the Defendants are asking the Court to read an exclusion that the New Mexico Legislature did not include in the UMA, and that this construction violates public policy and the legislative intent of the UMA by creating an impermissible gap in coverage.  See Plaintiffs' Reply and Response at 11.

The Court finds that the omission of loss of use language in the UMA indicates that the New Mexico Legislature intended the omission, and declines to disregard the statute's plain language, even though New Mexico courts liberally construe the UMA. A court's central concern, in construing a particular statute "is to determine and give effect to the intent of the legislature," State ex rel. Klineline v. Blackhurst, 106 N.M. at 735, 749 P.2d at 1114 (citation omitted), "using the plain language of the statute as the primary indicator of its intent," City of Santa Fe v. Travelers Cas. & Sur. Co., 147 N.M. at 702, 228 P.3d at 486.  The UMA states that, insurance policies should provide coverage for "bodily injury or death and for injury to or destruction of property," "for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, and for injury to or destruction of property resulting therefrom."  NMSA 1978, § 66-5-301. The statute's language does not require coverage for the loss of use of property.  Because New Mexico courts look to the statute's plain language as the primary indicator of the Legislature's intent, the Court finds that the language of the statute indicates that the New Mexico Legislature did

not intend to require coverage for loss of use in the UMA.

Although the Plaintiff directs the Court's attention to the language in the MFRA and the New Mexico Insurance Code as evidence that the Legislature intended the UMA to require coverage for loss of use of property, the Court is not convinced that the Legislature intended the UMA to cover loss of use. The Court does not believe that the language in the New Mexico Insurance Code should affect its statutory interpretation of the UMA the way that the Plaintiffs propose. Although New Mexico courts "construe the entire statute as a whole so that all the provisions will be considered in relation to one another," Regents of Univ. of N.M. v. N.M. Fed'n of Teachers, 125 N.M. at 411, 962 P.2d at 1246 (citation omitted), the Court does not believe that it is required to or should consider the words in a separate and unrelated statute in its statutory interpretation, and add a phrase from one missing in the other. Chapter 59A of the New Mexico statutes contains the New Mexico Insurance Code. The UMA is in Chapter 66, which relates to motor vehicles. The Court has not found any cases discussing loss of use damages in the context of the New Mexico Insurance Code. For these reasons, the Court does not believe that it must or should consider the language of the New Mexico Insurance Code in its interpretation of the UMA. The Court will, however, consider the language of the MFRA in its statutory interpretation. Chapter 66 of the New Mexico statutes contains both the UMA and the MFRA and the UMA references the MFRA. See NMSA 66-5-301 (stating that "unless coverage is provided therein or supplemental thereto in minimum limits for bodily injury or death and for injury to or destruction of property as set forth in Section 66-5-215 NMSA 1978").

The Court is not convinced, however, that the inclusion of the language of loss of use in the MFRA means that it should read the language of loss of use into the UMA. The subject matter of the MFRA and of the UMA is similar. Both the UMA and the MFRA were enacted in 1983. The

Court will presume that the New Mexico Legislature knew the intricacies of the laws that it was enacting in the same legislative session and was aware of the differences between the statutes concerning similar subject matter.  See Herrera v. Quality Imports, 128 N.M. at 302-03, 992 P.2d at 315-16 (stating that the New Mexico courts presume that the New Mexico Legislature knows of the existing law when it enacts legislation).  That the UMA does not contain the language of loss of use when the MFRA -- which was enacted at the same time -- does, is compelling evidence that the New Mexico Legislature intentionally excluded the language of loss of use in the UMA. See Hanson v. Turney, 136 N.M. at 4, 94 P.3d at 4 (stating that, where the New Mexico Legislature has included language in one statute but not in another statute, it is "compelling evidence that the legislature" intended to exclude the language).  The Court will decline to read such language into the UMA when it appears that the Legislature's omission of the language was intentional.

The Plaintiffs argue that the Court should interpret the UMA to require coverage for loss of use of property, because New Mexico courts liberally interpret the UMA to implement its remedial purpose, which is to put the insured in the same position he or she would have been in had the uninsured motorist had liability coverage.  The Court, however, cannot use the cannon of liberal construction of the UMA as a justification for disregarding the UMA's plain language.  See Garcia v. N.M. State Highway Dept., 61 N.M. at 163, 296 P.2d at 763 ("[W]e cannot close our eyes [to the statute's language] even under the canon of liberal construction of the compensation act to effect its remedial purposes.").  The UMA's plain language indicates that it does not require coverage for loss of use.  The Court is not willing to disregard the UMA's plain language under the cannon of liberal construction of the statute.

The Court's decision that the UMA does not cover loss of use does not create an impermissible gap in the UMA's coverage.  Unlike cases where New Mexico courts have

invalidated policy provisions on the grounds that they create the impermissible gap in coverage that the Legislature sought to avoid, the Court's decision that the UMA does not require coverage for loss of use is not a contractual exclusion.  See Boradiansky v. State Farm Mutual Auto Ins. Co., 141 N.M. at 389, 156 P.3d at 27 ("It seems counterintuitive to suggest that the Legislature intended to create a gap in coverage by permitting a contractual exclusion of government-owned vehicles from uninsured or underinsured motorist claims.  It also seems inconsistent with our concern for excluding coverage for discrete groups.").  In this case, the apparent Legislative intent was to exclude loss of use from required coverage under the UMA, and this construction of the statute will not exclude coverage for discrete groups of people, because the UMA does not create two groups of people, one of whom will be covered and another who will not.  See Boradiansky v. State Farm Mutual Auto. Ins. Co., 141 N.M. at 388, 156 P.3d at  26 (stating exclusion of government-owned vehicles from the definition of uninsured motor vehicle would create an impermissible gap in coverage);  Chavez v. State Farm Mut. Auto. Ins. Co., 87 N.M. at 328-29, 533 P.2d at 101-02 (stating exclusion from coverage of people who were at the time of the injury occupying an uninsured motor vehicle created an impermissible gap in coverage).  On the contrary, under the Court's Memorandum Opinion and Order, no one will recover under a loss-of-use claim.

There are sound policy reasons for the Legislature not to require loss-of-use coverage in uninsured motorist policies in the state of New Mexico.  An insurance company is free to provide coverage as broadly as it desires, and an insured is free to negotiate for more coverage; more coverage will likely come at a cost.  Insurance companies and consumers are free to let the market dictate their preferences, needs, costs, and choices.  When the Legislature requires coverage, however, neither the insurance company nor the consumer have any choice in the matter; the motorists must purchase -- and the insurance company must provide -- that coverage.  The burden

imposes a cost on motorists that they cannot avoid.  The Legislature thus may desire to tailor the requirements as precisely and narrowly as possible to achieve its intended result without being any broader than necessary.

Here, the Legislature primarily wanted motorists to carry insurance that would protect them against "bodily injury . . ., and . . . injury to or destruction of property,"  NMSA 1978, § 66-5-301A, if an uninsured motorist hit them.  If a motorist is hurt in an automobile accident and loses his or her car, society could suffer in a number of ways -- loss in productivity, and the public might have to assume the burden of medical care.  The Legislature may not have been as concerned about theft, figuring that a motorist could insure in the market against that risk if he or she wished.

The wealthy can handle increased costs to uninsured motorist coverage.  As both the Legislature and the citizens of New Mexico know, many drivers do not buy insurance, because they cannot afford it.  Many of New Mexico's poor, which contains illegal aliens who have drivers licenses, see 18.19-5-12 NMAC (June 29, 2001, as amended through July 31, 2009), often drive without coverage because of the cost.  The Legislature could have made a sensible decision that minimal coverage was better than Cadillac coverage, if the cost for loss of a car and other bells and whistles would place an undue burden on people who could not afford increased costs to uninsured motorist coverage.

The Court will not interpret the UMA to include loss of use, because the New Mexico Legislature's exclusion of the language from the UMA, which was enacted at the same time as the MFRA, is compelling evidence that the Legislature intentionally omitted the language, and because the Court cannot disregard the UMA's plain language solely because the New Mexico courts liberally interpret the UMA.  Because the Court finds that the UMA does not require coverage for loss of use of property, the Court will grant summary judgment on the Plaintiffs' claims for the loss

of use of their property under the UMA.

## II.   THE COURT NEED NOT DECIDE WHETHER, IF THE UMA REQUIRES COVERAGE FOR LOSS-OF-USE DAMAGES, IT WOULD REQUIRE COVERAGE FOR THEFT OF PROPERTY.

The Defendants argue that, even if the Court finds that the UMA covers loss of use, the Plaintiffs' claims fail.  See Cross-Motion at 14.  The Defendants contend that courts from other jurisdictions have encountered similar issues and have concluded that theft does not constitute property damage.  See Cross-Motion at 17.  The Plaintiffs argue that the cases on which the Defendants rely to support their assertion that theft does not constitute property damage are inapplicable, because they are out-of-jurisdiction cases that construe insurance policies, and thus do not have any bearing on the interpretation of uninsured motorist coverage in New Mexico.  See Plaintiffs' Reply and Response at 17, 19.

The Court finds that, even if the UMA requires coverage for loss-of-use damages, it would not provide coverage for the theft of the Plaintiffs' property.  In their Memorandum, the Plaintiffs assert: "In this matter each of the Plaintiffs would have the right to seek recovery of damages against the policies insuring the vehicles operated by the unidentified/uninsured motorists if the identity of the drivers, vehicles, and respective insurers was known."  Memorandum at 12.  In other words, the Plaintiffs contend that, had they known the alleged thieves' identities, they could have sued the thieves, and the thieves' insurers would have had to pay for the thefts under the liability provisions of the thieves' automobile insurance.

The Court was unable to find New Mexico law addressing whether either the MFRA or the UMA requires coverage for theft of property.  The Court was also unable to find cases from other

jurisdictions addressing whether uninsured motorist acts required coverage for theft of property.[21]

Courts in other jurisdictions have interpreted various insurance policies in addressing whether theft

constitutes property damage under the policies.  Although these cases do not interpret Uninsured

Motorist statutes, the language in the insurance policies is comparable to the language in the UMA.

Cases interpreting the language in these insurance policies is instructive in the Court's determination

whether the UMA would provide coverage for theft of property, because the Legislative purpose in

enacting "compulsory uninsured motorist coverage was to place the injured policyholder in the same

position, with regard to the recovery of damages, that he would have been in if the tortfeasor had

possessed liability insurance."  Chavez v. State Farm Mut. Auto. Ins. Co., 87 N.M. at 329, 533 P.2d

at 102 (internal quotation marks and citations omitted).  The Court therefore believes that the cases

interpreting the extent of liability insurance are instructive.

      Several courts have found that the loss of property, or theft of property, does not constitute

injury to or destruction of property.  See Travelers Ins. Companies v. P.C. Quote, 570 N.E.2d at 618

---

[21] The Court of Appeals of Kansas has cited a case from the Supreme Court of Kansas as holding that "theft of a car is not within the coverage mandated by the uninsured motorist statutes." Parker v. Mid-Century Ins. Co., 962 P.2d 1114, 1117 (Kan. App. 1998)(citing Farmers Ins. Co. v. Schiller, 597 P.2d 238 (1979)).  The Supreme Court of Kansas in Farmers Insurance Co. v. Schiller did not, however, hold that theft of property is not within the coverage mandated by the uninsured motorist statute.  Instead, it held:

> The uninsured motorist statute was not enacted to provide coverage for everyone. In event of theft or nonpermissive use of a vehicle a guest passenger of the unauthorized user, which passenger does not fall within the definition of "insured" contained in the policy, is not within the coverage mandated by the uninsured motorist statute, K.S.A. 40-284.

597 P.2d at 243 (citations omitted).  The Court does not believe that this case stands for the proposition that the uninsured motorist statute does not mandate coverage for theft of property. Instead, the Court believes that this case stands for the proposition that the uninsured motorist statute does not mandate coverage for a passenger of an unauthorized user -- a user who does not have permission to use the vehicle.

("We cannot agree with P.C. Quote that the loss of computers is property damage. There is a difference between damage to property and loss of property."). In <u>Harry Winston, Inc v. Travelers Indem. Co.</u>, the district court found that a homeowner's insurance policy, which defined property damage as "injury to or destruction of property, including loss of use thereof," did not provide coverage for lost or stolen property. 366 F. Supp. at 990-91. The plaintiff sued Travelers Indemnity Company to recover $18,000.00 under the insured's homeowner policy after the plaintiff never received a piece of jewelry that the insured allegedly mailed to the plaintiff. <u>See</u> 366 F. Supp. at 989. The United States District Court for the Eastern District of Missouri stated that it was

> of the opinion that this loss of jewelry in the mails is not the type of loss covered within the meaning of the term "property damage" as set out in the homeowners policy in question. "Property damage" is defined in the policy under "Section II-5. Supplemental Definitions (b) "as follows: "[I]njury to or destruction of property, including loss or use thereof." Giving this language its "plain meaning" as required by State ex rel. Security etc. v. Allen, [267 S.W. 379, 381, 382 (1924)], there was no injury to or destruction of the jewelry. Therefore, there was no property damage within the meaning of the policy. The jewelry was simply lost or stolen in some manner.

366 F. Supp. at 990.

Other courts have found that a loss of property, or theft of property, constitutes property damage. A United States District Court in the Eastern District of Pennsylvania found that theft of property constituted property damage within the meaning of the insurance policy. <u>See</u> <u>Hofing GMC Truck, Inc. v. Kay Wheel Sales Co., Inc.</u>, 543 F. Supp. at 416-17. The district court found that the theft of the property constituted property damage within the meaning of the policy, because the rightful possessor was no longer able to use the property once it was stolen, and he therefore suffered a loss of use. <u>See</u> 543 F. Supp. at 418. The Court believes that this case is distinguishable, and does not counsel that the Court should find that the UMA covers theft of property, because the policy at issue in <u>Hofing GMC Truck, Inc. v. Kay Wheel Sales Co., Inc.</u> is broader than the language

-44-

in the UMA.  The policy at issue in Hofing GMC Truck, Inc. v. Kay Wheel Sales Co., Inc. defined property damage to include a "loss of use of tangible property which has not been physically injured or destroyed," in addition to "physical injury to or destruction of tangible property . . . including the loss of use thereof."  543 F. Supp. 416-17.  The UMA does not include similar language requiring coverage for loss of use of tangible property that was not physically injured or destroyed.  The UMA provides coverage solely for "injury to or destruction of property."  NMSA 1978, § 66-5-301A. Arguably, theft of property is covered under the plain language of the policy at issue in Hofing GMC Truck, Inc. v. Kay Wheel Sales Co., Inc., because theft results in the loss of use the tangible property, and does not necessarily result in the physical injury or destruction of the property.  In contrast, the UMA's plain language does not require coverage for theft or loss of property with no physical destruction of the property.  The Court therefore does not believe it is obligated to or should follow the holding in Hofing GMC Truck, Inc. v. Kay Wheel Sales Co., Inc.

Furthermore, the Court notes that Collin v. American Empire Ins. Co. addressed a policy practically identical to the policy at issue in Hofing GMC Truck, Inc. v. Kay Wheel Sales Co., Inc. and found that the policy did not cover loss of property -- i.e., conversion. The policy defined "property damage" as "(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period."  26 Cal. Rptr.2d at 408.  The California Court of Appeal stated that loss of use of property is different than loss of property, and held that loss of property was not covered under the definition of property damage in the insurance policy.  See 26 Cal. Rptr. at 409.  The Court of Appeal used the example of a stolen automobile to illustrate its distinction between loss of use and loss of property, stating that the value of loss of use of the

automobile is the "rental value of a substitute vehicle," while the value of the loss of the car "is its replacement cost." 26 Cal. Rptr. at 409.

There is, of course, no certainty what the Supreme Court of New Mexico would do if confronted with the issues in this case. Because the Court can decide this case without deciding this issue, the Court will not decide this case on what would be an alternative ground, and the Court does not reach this question. It is sufficient for the Court to leave this issue for another day and perhaps another court by noting that there are reasonable grounds to believe that the Supreme Court of New Mexico would follow the analysis of the courts that have held that theft of property does not constitute property damage under the UMA.[22] The main reason the Court makes this statement is because the cases adopting the construction the Court adopts are much better reasoned than the cases that stretched to find coverage. Moreover, the Court of Appeals of New Mexico's 1980 opinion in Lamb v. Randall -- while not binding --to be instructive. In Lamb v. Randall, the Court of Appeals analyzed the language of a parental liability statute, which allowed a person to recover damages from a child's parent when the child "damaged or destroyed" the person's property. 95 N.M. at 36,

---

[22] The Court must predict what the Supreme Court of New Mexico would decide.

In cases arising under diversity jurisdiction, the federal court's task is not to reach its own judgment regarding the substance of the common law, but simply to ascertain and apply the state law. The federal court must follow the most recent decisions of the state's highest court. Where no controlling state decision exists, the federal court must attempt to predict what the state's highest court would do. In doing so, it may seek guidance from decisions rendered by lower courts in the relevant state, appellate decisions in other states with similar legal principles, district court decisions interpreting the law of the state in question, and the general weight and trend of authority in the relevant area of law. Ultimately, however, the Court's task is to predict what the state supreme court would do.

Wade v. EMCASCO Ins. Co., 483 F.3d 657, 665 (10th Cir. 2007)(internal quotation marks and citations omitted).

618 P.2d at 380.  Because the child who had stolen the plaintiff's money pawned the plaintiff's property, and the plaintiff never recovered the property, the Court found that, because there was no evidence that the property was damaged or destroyed, the parents were not liable for the value of the property.  See id. at 37, 618 P.2d at 381.

The Plaintiffs argue that their case is distinguishable from Lamb v. Randall, because the UMA includes the word injury, whereas the statute at issue in Lamb v. Randall does not.  See Letter from Geoffrey Romero to the Court at 4 (dated August 25, 2010), filed August 25, 2010 (Doc. 95); NMSA 1978, § 32A-2-27A ("Any person may recover damages . . . from the parent . . . of a child when the child has maliciously or willfully injured a person or damaged, destroyed or deprived property, real or personal, belonging to the person bringing the action."); NMSA 1978, § 66-5-301 ("[F]or the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury . . . and for injury to or destruction of property resulting therefrom.").  The Plaintiffs contend that the Supreme Court of New Mexico has defined "injury" as something done against "the right of a party, producing damage," see Clark v. Cassetty, 71 N.M. 89, 376 P.2d 37 (1962), overruled on other grounds by Stephens v. Dulaney, 78 N.M. 53, 428 P.2d 27 (1967), and that this definition of injury should be used in interpreting the UMA.  In other words, the Plaintiffs are contending that the UMA provides coverage for the violation of another's legal right to their property, or destruction of property.[23]

---

[23] The Court has found one case in which a court -- the District Court of Appeal of Florida -- stated that a plaintiff suffered injury when a thief stole the plaintiff's property.  U.S. Fidelity & Guaranty Co. v. Mayor's Jewlers of Pompano, Inc., 384 So.2d at 257.   This case may not fully support the Plaintiffs' argument that the UMA would require coverage for theft of property, because the theft violated the Plaintiffs' legal right to their property.  The Florida Court of Appeal defined injury as both a wrong done to a person's rights or property and an act which damages or harms.  See 384 So.2d at 258.  The Court of Appeal premised its holding that the theft constituted property damage on its finding that the property was damaged because its market value to the one who

Lamb v. Randall may not be distinguishable such that it is not instructive in the Court's
determination whether the UMA would provide coverage for theft of property. Clark v. Cassety is
a contributory negligence case, and the Supreme Court of New Mexico may conclude that the
definition of injury is limited to the definition the Supreme Court of New Mexico gave in Clark v.
Cassety. Injury could mean something more or different in the UMA or in insurance policies,
depending on how they are written or defined in the statute or policies. Black's Law Dictionary
provides a definition of the word "injury" as "[t]he violation of another's legal right, for which the
law provides a remedy," and "[a]ny harm or damage." Black's Law Dictionary 856 (9th ed. 2009).
A plaintiff may bring a negligence action in an attempt to recover for his or her injuries, see Clark
v. Cassetty, 71 N.M. at 92, 376 P.2d at 39, and the Supreme Court's discussion of injury as a
something done against the right of a party is appropriate in a negligence case. In this case, where
the issue is one of statutory interpretation, the definition of injury as a harm or damage may be more
appropriate for determining the extent of the statute's coverage. Using Clark v. Cassetty's broad
definition of damage to a right could make the uninsured motorist coverage almost unlimited. Using
the definition of injury as a harm or damage in the UMA's language, the UMA provides coverage
for any harm or damage to or destruction or property. This language may make more sense in this
context than the Plaintiffs' proposal that the UMA provides coverage for the violation of another's

─────────────

lawfully possessed it was totally diminished. See 384 So.2d at 258. The Court of Appeal did not
base its holding on a finding that the theft constituted a wrong done against a person's right to his
property. This case therefore may not support the Plaintiffs' argument that, because the Supreme
Court of New Mexico has defined injury as something done against the rights of a person, and
because the UMA uses the word injury, their claims for theft of property are covered because the
thefts violated their legal rights to their property. The Supreme Court of New Mexico may decide
not to use its general, common-law definition of injury -- as broad as it is -- to override the
Legislature's careful structuring in its insurance regulations and in its phrasing-- or lack thereof --
in the UMA.

legal right to their property or destruction of property.  The use of the word injury in the UMA therefore does not necessarily mean that Lamb v. Randall is distinguishable from this case.  Lamb v. Randall may be instructive in its interpretation of the UMA, because the Court of Appeals in that case addressed the coverage of an analogous statute.  See 95 N.M. at 36, 618 P.2d at 380 (addressing a statute that stated: "Any person may recover damages . . . from the parent . . . of a child . . . when the child has maliciously or willfully . . . damaged or destroyed property, real or personal, belonging to the person bringing the action").  The Court of Appeals found that there was no evidence that the plaintiff's property was damaged or destroyed when the child pawned the property, and the plaintiff never recovered the property.  See 95 N.M. at 36, 618 P.2d at 380.  Based on Lamb v. Randall, the New Mexico Supreme Court may follow the analysis of the courts that have found that theft or loss of property does not constitute property damage.

III.    **THE COURT NEED NOT DECIDE WHETHER, IF THE UMA PROVIDES COVERAGE FOR LOSS-OF-USE DAMAGES, LOSS-OF-USE DAMAGES WOULD BE RECOVERABLE WITHOUT ACCOMPANYING PHYSICAL DAMAGE.**

The Defendants argue that, even if the Court finds that the UMA covers loss of use, the Plaintiffs' claims fail, because loss-of-use damages are recoverable only when accompanied by physical damage.  See Cross-Motion at 14.  The Defendants thus contend that, even if the Court finds that the UMA covers loss of use, there "would still be no coverage under the UMA without accompanying physical damage to property."  Cross-Motion at 15.

The Plaintiffs respond that "adding the requirement that 'loss of use' damages be payable only when accompanied by physical damage is a restriction of uninsured motorist coverage, not specifically set forth in the Uninsured Motorist Act, creating an impermissible gap in coverage."  Plaintiffs' Reply and Response at 12.  The Plaintiffs contend that liberal construction of the UMA mandates that the Court find that the UMA requires coverage of loss-of-use damages and that the

-49-

Defendants' requested restriction is impermissible.  <u>See</u> Plaintiffs' Reply and Response at 12.  The Plaintiffs argue that the cases on which the Defendants rely are inapplicable because they are out-of-jurisdiction cases that construe insurance policies, and thus do not have any bearing on the interpretation of the required coverage of the UMA.  <u>See</u> Plaintiffs' Reply and Response at 17, 19.

Again, the Court does not need to reach this question.  There are good grounds, however, to believe that the Supreme Court of New Mexico would find that, if the UMA requires coverage for loss-of-use damages, those damages can be awarded only if accompanied by physical damage.  No court in New Mexico has addressed whether loss-of-use damages are recoverable without accompanying physical damage.  The courts in other jurisdictions who have addressed this issue have come out both ways.  The Supreme Court of New Mexico could, based on <u>Cress v. Scott</u>, agree with the analysis of the courts that have found that loss-of-use damages are not recoverable without accompanying physical damage.

Several courts have found that the only reasonable meaning of a policy that defines property damage as physical injury to or destruction of tangible property, including loss of use of the property, is that the policy "defines property damage to include loss of use damage that accompanies physical injury or destruction."  <u>Ehlers v. Johnson</u>, 476 N.W.2d at 293.  The Court of Appeals of Wisconsin stated

> The loss of use clause is introduced by the verb "including."  The dictionary defines "including" as "to take in or comprise as part of a whole. . . ."  The <u>Mirriam-Webster Dictionary</u> 358 (1974).  The loss of use clause is thus introduced as a subset of "physical injury to or physical destruction of tangible property."  If the loss of use clause were interpreted as the Frisches would have it, i.e., as any nonphysical injury to tangible property, the definition of property damage would effectively read: "physical injury to . . . tangible property, including non-physical injury."  We reject such a contradictory reading.

476 N.W.2d at 293.  One court has allowed a loss-of-use claim to proceed without accompanying

property damage.  In American Home Assur. Co. v. Libbey-Owens-Ford Co., the First Circuit found that, although the word "including" could suggest that the loss of use must be traced to some physical injury, the additional phrase was more reasonably read as independent of physical injury to the property.  786 F.2d at *24-25.  Similarly, in Gibson v. Farm Family Mut. Ins. Co., the Supreme Court of Maine rejected the insurer's argument that a loss of use of property -- without accompanying physical injury to the property -- does not constitute property damage pursuant to the policy, stating: "We interpret a standard policy of insurance, however, 'most strongly' against the insurer; '[p]roperty damage' as defined by the [insurance] policy includes the loss of use of tangible property with no accompanying physical injury to that property."  673 A.2d at 1253 (internal citation omitted).  This sentence was the extent of the Supreme Court of Maine's reasoning on the subject.

New Mexico law suggests that a claim for loss-of-use damages is not recoverable without accompanying property damage.  In Cress v. Scott, the plaintiff's loss-of-use claim arose because a repair shop incorrectly repaired his vehicle, leaving him without use of his vehicle while a second repair shop worked on his vehicle.  See 117 N.M. at 5, 868 P.2d at 650.  The Plaintiffs' characterize the plaintiff's lawsuit in Cress v. Scott as a suit for breach of contract and "failure to make proper repair."  Plaintiffs' Reply and Response at 16.  The Plaintiffs thus assert that the Supreme Court of New Mexico recognizes that loss-of-use damages may be payable in situations that do not involve physical damage to property.  See Plaintiffs' Reply and Response at 16.  The plaintiff in Cress v. Scott, however, sued the repair shot for breach of contract and negligent workmanship.  See 117 N.M. at 5, 868 P.2d at 650.  The repair shop had incorrectly repaired his vehicle -- in other words, the repair shop damaged his property.  These facts thus suggest that loss-of-use damages are awardable when accompanied by physical damage.  The language in the opinion also suggests that the Supreme Court of New Mexico might limit recovery for loss-of-use damages to situations where

-51-

the loss-of-use damages are accompanied by physical damage.  In <u>Cress v. Scott</u>, the Supreme Court stated: "The purpose of awarding loss-of-use damages is to provide reasonable compensation for inconvenience or monetary loss suffered during the time required for repair of damaged property." 117 N.M. at 6, 868 P.2d at 651.  If the purpose of an award of loss-of-use damages is to provide compensation for the inconvenience a person suffers during the time required for repair of damaged property, it would follow that, without damaged property, there is no need to provide compensation. Based on <u>Cress v. Scott</u>, the Supreme Court of New Mexico might agree with the analysis of the courts that find that loss-of-use damages are not recoverable without accompanying physical damage.

The Court will grant summary judgment on the Plaintiffs' claims because it has determined that the phrase "injury to or destruction of property" in the UMA does not require coverage for loss of use.  Because the Court will grant summary judgment on the Plaintiffs' claims, it will not inquire whether each Plaintiffs' claims for damages arose out of the ownership, maintenance, or use of an uninsured motor vehicle, or whether each Plaintiff is legally entitled to recover damages from the owners or operators of the uninsured motor vehicle.

**IT IS ORDERED** that: (i) the Plaintiffs' Motion for Summary Judgment Declaring Uninsured Motorist Property Damage Coverage is Applicable to the Plaintiffs' Losses, filed April 2, 2010 (Doc. 57) is denied; and (ii) the Defendants' request in their Opposition to Plaintiffs' Summary Judgment & Cross-Motion for Summary Judgment, filed April 29, 2010 (Doc. 64), that the Court enter summary judgment on the Plaintiffs' claims because the Uninsured Motorist Act, NMSA 1978, § 66-5-301, does not require coverage for their claims is granted.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Matthew L. Garcia
Bach & Garcia
Albuquerque, New Mexico

-- and --

Geoffrey R. Romero
Law Offices of Geoffrey R. Romero, Esq.
Albuquerque, New Mexico

     *Attorneys for the Plaintiffs*

Emily Cates
Steven J. Hulsman
Lewis and Roca, LLP
Phoenix, Arizona

-- and --

Ross L. Crown
Lewis and Roca, LLP
Albuquerque, New Mexico

     *Attorneys for the Defendants*