## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

HAROLD ARNOLD, for himself
and all others similarly situated,
JIMMY JARAMILLO, for himself
and all others similarly situated,
GARY WISE, for himself and
and all others similarly situated,

       Plaintiffs,

vs.                                                                                     No. CIV 09-0330 JB/WDS

FARMERS INSURANCE COMPANY
OF ARIZONA, an Arizona corporation;
FARMERS GROUP, INC., a Nevada
corporation,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Plaintiffs' Motion for Reconsideration of Order Granting Summary Judgment, for Relief from Judgment, or to Alter or Amend the Judgment, and Request for Certification to the Supreme Court of New Mexico, filed December 9, 2010 (Doc. 101)("Motion for Reconsideration"). The Court held a hearing on July 26, 2011. The primary issues are whether: (I) the Plaintiffs have presented controlling precedent to demonstrate that the Court clearly erred in declining to interpret the New Mexico Uninsured Motorist Act, NMSA 1978, § 66-5-301A, ("UMA") to require coverage for loss of use; (ii) the Court should certify the underlying issues in the case to the Supreme Court of New Mexico; and (iii) whether the Court erred in deciding that, as a matter of law, the UMA does not provide coverage for theft of the Plaintiffs' personal property. Because the Plaintiffs' request for certification to the Supreme Court of New Mexico was made in the alternative, and because certification on issues would not be appropriate

after the Court has rendered judgment in favor of the Defendants, the Court will deny the untimely request to certify the issue. Because the Court is persuaded, after carefully reviewing the Supreme Court of New Mexico's opinions, that New Mexico's highest court would, if the issues were presented to it, hold that the UMA provides coverage for loss of use, the Court will reconsider that portion of its Memorandum Opinion and Order, filed November 12, 2010 (Doc. 99)("MOO").

Because the Court remains confident, however, that the Supreme Court of New Mexico would support the Court's alternative holding that New Mexico courts would not award loss-of-use damages for theft of property because there has been no accompanying physical damage to the property, summary judgment in favor of the Defendant remains appropriate on the alternative grounds the Court discussed in its opinion. Thus, the Court will not reconsider the alternative grounds on which it granted summary judgment in favor of the Defendant and will not set aside its final judgment.

## PROCEDURAL BACKGROUND

On April 2, 2010, the Plaintiffs filed their Motion for Summary Judgment Declaring Uninsured Motorist Property Damage Coverage Is Applicable to the Plaintiffs' Losses. See (Doc. 57). On April 28, 2010, the Defendants filed their Opposition to Plaintiffs' Motion for Summary Judgment and Cross-Motion for Summary Judgment. See (Doc. 63). The Plaintiffs in their motion asked the Court to declare that uninsured motorist property damage coverage applies to the Plaintiffs' losses. On August 17, 2010, the Court held a hearing on the two motions.

In its fifty-three page MOO, the Court concluded:

[T]he phrase "injury to or destruction of property" in the UMA does not require coverage for loss of use, because the New Mexico Legislature's omission of loss of use language in the UMA indicates that the Legislature intended the omission, and even though New Mexico courts liberally construe the UMA, the Court declines to disregard the statute's plain language.

-2-

MOO at 2.  Because the Court found that the UMA does not require coverage for the Plaintiffs' loss-of-use claims for its stolen property because there is no accompanying physical damage, the Court granted summary judgment on all claims in the Defendants' favor.  See MOO at 52.  The Court then entered final judgment.  See Final Judgment, filed November 12, 2010 (Doc. 100).

On December 9, 2010, the Plaintiffs filed their Motion for Reconsideration under rules 59 and 60 of the Federal Rules of Civil Procedure.  See Motion for Reconsideration.  They contend that the Court's ruling "is a significant departure from decades of New Mexico jurisprudence."  Motion for Reconsideration at 3.  Specifically, they point to the consistent expression of policy concerns in New Mexico cases promoting a liberal interpretation of the UMA.  See Motion for Reconsideration at 3.  They also point to some recent New Mexico cases on the issue as well as some dicta from a Court of Appeals of New Mexico opinion, Montano v. Allstate, 135 N.M. 681, 92 P.3d 1255 (Ct. App. 2004), rev'd on other grounds, 135 N.M. 681, 92 P.3d 1255, suggesting that loss-of-use damages may be available under the UMA.  See Motion for Reconsideration at 5.  The Plaintiffs alternatively request that the Court withdraw its MOO and corresponding final judgment, and certify the questions presented for review to the Supreme Court of New Mexico.  See Motion for Reconsideration at 15-16.

On January 26, 2011, the Defendants filed their Opposition to Plaintiffs' Motion for Reconsideration/Alter or Amend and Plaintiffs' Request for Certification to the Supreme Court of New Mexico.  See (Doc. 106)("Response").  In their response, the Defendants emphasize that granting a motion for reconsideration would not be proper under these circumstances.  See Response at 3.  The Defendants contend that the Court has already thoroughly addressed the issues in the case, and that any additional authority the Plaintiffs cite does not justify the Court reconsidering its decision.  See Motion for Reconsideration at 4-9.  Additionally, the Defendants argue that

certification to the Supreme Court of New Mexico is not appropriate given that the Court has already decided these issues.  See Response at 10-12.

At the hearing, the Plaintiffs argued that New Mexico state courts consistently construe the UMA liberally.  See Transcript of Hearing at 3:8-13 (taken July 26, 2011)("Tr.")(Romero).[1]  The Plaintiffs emphasized that this Court looked at restrictive terms from other statutory schemes for insurance coverage and in doing so did not properly interpret the UMA.  See Tr. at 5:4-10 (Romero). They stated that the Court authored an opinion that for the first time defines UMA coverage more narrowly than Mandatory Financial Responsibility Act ("MFRA") coverage.  See Tr. at 7:1-8 (Romero).  The Court and the Plaintiffs engaged in a dialogue about how helpful the Court of Appeals of New Mexico decision in Montano v. Allstate would be in deciding this issue.  See Tr. at 11:16-12:16 (Court, Romero).  The Plaintiffs then argued that certification to the Supreme Court of New Mexico is in the interests of judicial economy.  See Tr. at 13:5-13 (Romero).  The Plaintiffs also contended that the Court's analysis in its alternative holding was incorrect, because "[t]he uninsured motorist act does not use the term 'property damage.'  It uses the terms 'injury to property or destruction thereof. . . . [Under Clark v. Cassetty, 71 N.M. 89, 376 P.2 37 (1962)], injury means damage to a property interest or infringement of an interest."  Tr. at 5:17-24 (Romero).

The Defendants emphasized at the hearing that a motion for reconsideration is not a proper way to address this issue given the Court's thorough opinion and the thorough briefing on these issues already.  See Tr. 15:16-25 (Hulsman).  The Defendants then argued that Montano v. Allstate does not provide much help in deciding these issues.  See Tr. at 16:7-17:15, 18:5-19:20 (Court, Hulsman).  In a subsequent letter to the Court, the Defendants point out that, the "Plaintiffs' loss of

---

[1]The Court's citations to the transcript are to the Court Reporter's original, unedited version. A final version may have slightly different line or page numbers.

use theory involves only injury <u>to the insured</u>, with Plaintiffs conceding that the theft did not injure

<u>their property</u> at all."  Letter to the Court at 2, filed August 11, 2011 (Doc. 112)("Aug. 11, 2011

Letter").

## LAW REGARDING MOTIONS TO RECONSIDER UNDER RULES 59(e) AND 60[2]

The United States Court of Appeals for the Tenth Circuit has recognized:

Generally, a "motion for reconsideration, not recognized by the Federal Rules of Civil Procedure, <u>Clough v. Rush</u>, 959 F.2d 182, 186 n.4 (10th Cir. 1992), may be construed in one of two ways: if filed within 10 days of the district court's entry of judgment, it is treated as a motion to alter or amend the judgment under Rule 59(e); if filed more than 10 days after entry of judgment, it is treated as a motion for relief from judgment under Rule 60(b)." <u>Computerized Thermal Imaging, Inc. v. Bloomberg, L.P.</u>, 312 F.3d 1292, 1296 n.3 (10th Cir. 2002).

<u>Price v. Philpot</u>, 420 F.3d 1158, 1167 n.9 (10th Cir. 2005).  The time limit in rule 59(e) is now

twenty-eight days rather than ten days.  <u>See</u> Fed. R. Civ. P. 59(e).  A motion for reconsideration is

an "inappropriate vehicle[ ] to reargue an issue previously addressed by the court when the motion

merely advances new arguments, or supporting facts which were available at the time of the original

---

[2]Although the Plaintiffs cite both rules 59 and 60 as the basis for their Motion, because the only substantive basis for reconsideration is their contention that the Court committed legal error in applying the rules of statutory construction and New Mexico case law, it is in substance a motion brought under rule 59(e).  <u>See</u> <u>Van Skiver v. United States</u>, 952 F.2d 1241, 1244 (10th Cir. 1991)(noting that arguments that "challenge the legal correctness of the district court's judgment by arguing that the district court misapplied the law . . . are properly brought under Rule 59(e)" instead of Rule 60(b)).  The Tenth Circuit stated in <u>Phelps v. Hamilton</u>:

This court has previously held that regardless of how it is styled or construed . . . , a motion filed within ten days of the entry of judgment that questions the correctness of the judgment is properly treated as a Rule 59(e) motion.  Furthermore, we have held that a motion will be considered under Rule 59(e), when it involves reconsideration of matters properly encompassed in a decision on the merits.

122 F.3d 1309, 1323-24 (10th Cir. 1997)(internal quotation marks and citations omitted)).  The Plaintiffs filed their motion twenty-eight days after the Court entered final judgment, which is within the time limit set in rule 59(e).  <u>See</u> Final Judgment.

motion." <u>Servants of Paraclete v. Does</u>, 204 F.3d 1005, 1012 (10th Cir. 2000).  "Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." <u>Servants of Paraclete v. Does</u>, 204 F.3d at 1012.  "Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." <u>Servants of Paraclete v. Does</u>, 204 F.3d at 1012 (citation omitted).  A district court has considerable discretion in ruling on a motion to reconsider.  <u>See</u> <u>Phelps v. Hamilton</u>, 122 F.3d 1309, 1324 (10th Cir. 1997).

Rule 60 more generally authorizes a district court to "[o]n motion and just terms . . . relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons," including "any other reason that justifies relief."  Fed. R. Civ. P. 60(b).  Rule 60(b)(6) is a "grand reservoir of equitable power to do justice in a particular case."  <u>Van Skiver v. United States</u>, 952 F.2d 1241, 1244 (10th Cir. 1991)(quotation marks omitted).  District courts, however, generally may only grant relief under this provision in extraordinary circumstances.  <u>See</u> <u>Sindar v. Garden</u>, 284 F. App'x 591, 596 (10th Cir. 2008)(unpublished).  Additionally, rule 60 recognizes by implication a district court's general power to "entertain an independent action to relieve a party from a judgment, order, or proceeding," although courts should use this provision sparingly for more extreme cases.  Fed. R. Civ. P. 60(d).  <u>See</u> <u>Sindar v. Garden</u>, 284 F. App'x at 596.

**LAW REGARDING CERTIFICATION TO<br>THE SUPREME COURT OF NEW MEXICO**

N.M.R.A. Rule 12-607 provides:

A. Power to answer.

(1) The Supreme Court may answer by formal written opinion questions of law certified to it by a court of the United States, an appellate court of another state, a

tribe, Canada, a Canadian province or territory, Mexico or a Mexican state if the answer may be determinative of an issue in pending litigation in the certifying court and the question is one for which answer is not provided by a controlling:

> (a) appellate opinion of the New Mexico Supreme Court or the New Mexico Court of Appeals; or

> (b) constitutional provision or statute of this state.

N.M.R.A. § 12-607(A)(1).  See, e.g., Walker v. United States, 142 N.M. 45, 47, 162 P.3d 882, 884 (2007)(answering questions that the United States Court of Federal Claims certified); Campos v. Murray, 139 N.M. 454, 455, 134 P.3d 741, 742 (2006)(answering questions that the Honorable Bruce D. Black, United States District Judge for the United States District Court for the District of New Mexico, certified).  Federal courts have the option of determining what a state court would do if confronted with the same issue, see Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938), or of certifying the question to the state appellate court for review, see Allstate v. Stone, 116 N.M. 464, 465, 863 P.2d 1085, 1086 (1993)("This matter comes before us by way of certification from the United States District Court for the District of New Mexico.").  See Lehman Bros. v. Schein, 416 U.S. 386, 390-91 (1974)("The decision to certify a question to the state supreme court 'rests in the sound discretion of the federal court.'").  Pursuant to N.M.S.A. 1978, § 39-7-4, the Supreme Court of New Mexico may answer questions that the federal district court certifies to it if they involve propositions of New Mexico law that may be determinative of the matter before the certifying court and there are no controlling precedents from the New Mexico appellate court.  See Swink v. Fingado, 115 N.M. 275, 276, 850 P.2d 978, 979 n.1 (1993); Schlieter v. Carlos, 108 N.M. 507, 508, 775 P.2d 709, 710 (1989).

In New Mexico, the Supreme Court may only answer questions that the federal district court certifies to it "if the answer may be determinative of an issue in pending litigation in the certifying

court and there is no controlling appellate decision, constitutional provision or statute of this state."

N.M.S.A. 1978, § 39-7-4; <u>see</u> N.M.R.A. 12-607(A).  In explaining when it will accept certification

from a federal court, the Supreme Court of New Mexico has noted that:

> To date, we by and large have limited our acceptance of certifications prior to judgment to those cases in which there is no dispute over the factual predicates to the Court's determination of the questions certified, and our answer either disposes of the entire case or controversy, or disposes of a pivotal issue that defines the future course of the case.

<u>Schlieter v. Carlos</u>, 108 N.M. 507, 508-09, 775 P.2d 709, 710-11 (1989).  One federal magistrate

judge has stated that litigation is not pending under this statute when the district court "has already

ruled upon the issue for which [the party] seek[s] certification."  <u>Hartford Ins. Co. of the Midwest</u>

<u>v. Cline</u>, 367 F.Supp. 2d 1342, 1344 (D.N.M. 2005)(Smith, M.J.).

  In <u>Stoner v. New York Life Insurance Co.</u>, 311 U.S. 464 (1940), the Supreme Court of the

United States explained that, "in cases where jurisdiction rests on diversity of citizenship, federal

courts, under the doctrine of <u>Erie Railroad Co. v. Tompkins</u> . . . must follow the decisions of

intermediate state courts in the absence of convincing evidence that the highest court of the state

would decide differently."  311 U.S. at 467.  "In particular, this is true where the intermediate state

court has determined the precise question in issue in an earlier suit between the same parties, and

the highest court of the state has refused review."  <u>Stoner v. New York Life Insurance Co.</u>, 311 U.S.

at 467.  <u>See</u> <u>Adams-Arapahoe Joint School Dist. No. 28-J v. Continental Ins. Co.</u>, 891 F.2d 772, 774

(10th Cir. 1989)("With respect to issues which the Colorado Supreme Court has not addressed, we

may consider all available resources, including Colorado appellate court decisions, other state and

federal decisions, and the general trend of authority, to determine how the Colorado Supreme Court

would construe the law in this case.").  As the Tenth Circuit explained in <u>Wade v. Emcasco</u>

<u>Insurance Co.</u>, 483 F.3d 657 (10th Cir. 2007):

> In cases arising under diversity jurisdiction, the federal court's task is not to reach its own judgment regarding the substance of the common law, but simply to ascertain and apply the state law. . . . The federal court must follow the most recent decisions of the state's highest court. . . . Where no controlling state decision exists, the federal court must attempt to predict what the state's highest court would do. . . .  In doing so, it may seek guidance from decisions rendered by lower courts in the relevant state . . . . appellate decisions in other states with similar legal principles . . . . district court decisions interpreting the law of the state in question, . . . and the general weight and trend of authority in the relevant area of law. . . .  Ultimately, however, the Court's task is to predict what the state supreme court would do. Our review of the district court's interpretation of state law is de novo.

483 F.3d at 665-66 (internal citations and quotation marks omitted).

The Tenth Circuit generally "will not certify questions to a state supreme court when the requesting party seeks certification only after having received an adverse decision from the district court."  Massengale v. Okla. Bd. of Exam'rs in Optometry, 30 F.3d 1325, 1331 (10th Cir. 1994); see Armijo v. Ex Cam, Inc., 843 F.2d 406, 407 (10th Cir.1988)(noting that, "[c]ertification is not to be routinely invoked whenever a federal court is presented with an unsettled question of state law" and that "the plaintiff did not request certification until after the district court made a decision unfavorable to her"); Boyd Rosene & Assoc., Inc. v. Kan. Mun. Gas Agency, 178 F.3d 1363, 1364 (10th Cir. 1999)("Late requests for certification are rarely granted . . . and are generally disapproved, particularly when the district court has already ruled."); Harvey E. Yates Co. v. Powell, 98 F.3d 1222, 1229 n.6 (10th Cir. 1996)(denying request for certification in removed case where the moving party had not moved for certification in the district court and had received an adverse ruling).

## LAW REGARDING UMA COVERAGE

The Supreme Court of New Mexico has recently recognized that New Mexico courts' interpretation of the UMA has not always been perfectly consistent. See Boradiansky v. State Farm Mut. Auto. Ins. Co., 141 N.M. 387, 390, 186 P.3d 25, 28 (2007).  The Supreme Court stated that courts in New Mexico have found that "the text of the [UMA] has not proved as easy to apply in

some circumstances as others." Boradiansky v. State Farm Mut. Auto. Ins. Co., 141 N.M. at 390, 186 P.3d at 28. In reconciling the conflicting case law on this issue, it focused on the language "legally entitled to recover" contained in the UMA. Boradiansky v. State Farm Mut. Auto. Ins. Co., 141 N.M. at 390, 186 P.3d at 28. The Supreme Court offered a clearer picture of what this phrase means after looking at how courts have functionally applied that language in prior cases, and focused on whether the plaintiff could recover those damages in a tort lawsuit against the uninsured motorist. See Boradiansky v. State Farm Mut. Auto. Ins. Co., 141 N.M. at 390-91, 186 P.3d at 28-29 ("[T]he legislative purpose in creating compulsory uninsured motorist coverage was to place the injured policyholder in the same position, with regard to the recovery of damages, that he would have been in if the tortfeasor had possessed liability insurance." (quoting Chavez v. State Farm Mut. Auto. Ins. Co., 87 N.M. 327, 329, 533 P.2d 100, 102 (1975)). To illustrate this point, the Supreme Court of New Mexico discussed a prior case where the application of Hawaii law to a particular dispute, based on the choice-of-law decision in that case, prevented the New Mexican plaintiff from recovering under the UMA and receiving certain damages because that would have been the result in a tort case between the two drivers applying Hawaii law to the case. See Boradiansky v. State Farm Mut. Auto. Ins. Co., 141 N.M. at 390, 186 P.3d at 28 (citing State Farm Auto. Ins. Co. v. Ovitz, 117 N.M. 547, 549-50, 873 P.2d 979, 981-82 (1994)). Looking at how other jurisdictions have defined the term, the Supreme Court suggested one definition for the phrase "legally entitled to recover," specifically, that "the injuries must result from the negligent conduct of an uninsured motorist." See Boradiansky v. State Farm Mut. Auto. Ins. Co., 141 N.M. at 390-91, 186 P.3d at 28-29. Thus, because of the lack of clarity in the UMA statute and its prior precedent, the Supreme Court has demonstrated that it applies this "legally entitled to recover" test in the vast majority of cases rather than engaging in significant analysis of other language in the statute. Boradiansky v.

State Farm Mut. Auto. Ins. Co., 141 N.M. at 390-91, 186 P.3d at 28-29.

The Supreme Court interprets the UMA in a significantly different way than it does other statutes to effectuate the UMA's remedial purpose.  In Jordan v. Allstate Ins. Co., 149 N.M. 162, 245 P.3d 1214 (2010), the Supreme Court of New Mexico recently emphasized: "When construing the legislative intent behind our UM/UIM statute, this Court has long applied a 'qualitatively different analysis' than we use when construing many other types of statutes and insurance policies." 149 N.M. 162, 245 P.3d 1214, 1219.  It also stated that, "[i]n a consistent line of cases, this Court has liberally interpreted [the UMA] and its implementing regulation . . . for their remedial purposes."  Jordan v. Allstate Ins. Co., 149 N.M. 162, 245 P.3d 1214 at 1219.

Applying this "legally entitled to recover" test, the Court of Appeals of New Mexico concluded that loss-of-consortium claims, which the UMA does not mention expressly, fall within UMA coverage.  See State Farm Mut. Auto. Ins. Co. v. Luebbers, 138 N.M.289, 294-97, 119 P.3d 169, 174-77 (Ct. App. 2005)("[O]ur case law tells us that 'the only limitations on protection are those specifically set out in the statute itself: that the insured be legally entitled to recover damages and that the negligent driver be uninsured.'").  The Court of Appeals did not engage in any significant analysis of the UMA's statutory language other than the "legally entitled to recover" language, stating that the applicable section in the statute was silent on the issue.  State Farm Mut. Auto. Ins. Co. v. Luebbers, 138 N.M. at 295, 119 P.3d at 176.  In concluding that the UMA required coverage for loss-of-consortium claims, the Court of Appeals emphasized "the public policy behind the uninsured motorist statute, which is to compensate those injured through no fault of their own, and to put the insured in the same position he would have been in had the tortfeasor had liability coverage."  State Farm Mut. Auto. Ins. Co. v. Luebbers, 138 N.M. at 295, 119 P.3d at 176.

Notably, the Court of Appeals of New Mexico has also recognized that the Mandatory

Financial Responsibility Act ("MFRA") does not require an automobile insurance contract to provide coverage for punitive damages even though the UMA requires such coverage.  See State Farm Mut. Auto. Ins. Co. v. Progressive Specialty Ins. Co., 11 N.M. 304, 306, 35 P.3d 309, 311 (Ct. App. 2001).  It reached this conclusion based solely on the differences between the two statutes' remedial purposes as expressed by these statutes' respective language, specifically the lack of the "legally entitled to recover damages" language in MFRA.  State Farm Mut. Auto. Ins. Co. v. Progressive Specialty Ins. Co., 131 N.M. at 306, 35 P.3d at 311.

## ANALYSIS

Because the Plaintiffs made the request for certification in the alternative and the Court has already entered final judgment on two alternate grounds, the Court will deny their untimely request for certification to the Supreme Court of New Mexico.  Because the Plaintiffs have met their burden to demonstrate that the UMA provides coverage for loss of use, the Court will grant reconsideration on that portion of its MOO.  The Court will not, however, set aside its final judgment, because the Defendants remain entitled to judgment as a matter of law on the alternative grounds set forth in the Court's MOO.

## I.     THE COURT WILL NOT CERTIFY THIS ISSUE TO THE SUPREME COURT OF NEW MEXICO.

The Supreme Court of New Mexico may answer only questions that exist in "pending litigation" that will dispose of the case or controversy.  See N.M.S.A. 1978, § 39-7-4; N.M.R.A. 12-607(A); Schlieter v. Carlos, 108 N.M. at 508-09, 775 P.2d at 710-11.  While this case may still arguably be pending, even though final judgment has been entered, the Court must still decide this Motion for Reconsideration on its docket, and an appeal may be taken.  As one magistrate judge has said, litigation is no longer pending under New Mexico law when the federal court has already

-12-

decided the issue the party seeks to certify.  See Hartford Ins. Co. of the Midwest v. Cline, 367

F.Supp. 2d at 1344 (Smith, M.J.).  Likewise, the Tenth Circuit has stated that it is generally not

appropriate to "certify questions to a state supreme court when the requesting party seeks

certification only after having received an adverse decision from the district court."  Massengale

v. Okla. Bd. of Exam'rs in Optometry, 30 F.3d 1325, 1331 (10th Cir. 1994).  Therefore, certification

is not appropriate.  Further, the request was made in the alternative.  This case has already seen

extensive briefing and analysis by this Court up to this point.  The Court will not use its discretion

to certify this question to the Supreme Court of New Mexico.

## II.   THE COURT WILL GRANT THE MOTION FOR RECONSIDERATION ON THE ISSUE OF WHETHER THE UMA AUTHORIZES THE RECOVERY OF LOSS-OF-USE DAMAGES.

In their Motion for Reconsideration, the Plaintiffs focused on two additional New Mexico

cases not cited in their original briefing on the motion for summary judgment:  Jordan v. Allstate

Ins. Co., 149 N.M. 162, 245 P.3d 1214; and Montano v. Allstate Indem. Co., 133 N.M. 696, 68 P.3d

936.  See Motion for Reconsideration at 5-6.  In Jordan v. Allstate Ins. Co., the Supreme Court of

New Mexico stated:

> This Court's primary goal when interpreting statutes is to further legislative
> intent.  When construing the legislative intent behind our UM/UIM statute, this Court
> has long applied a "qualitatively different analysis" than we use when construing
> many other types of statutes and insurance policies.  In a consistent line of cases, this
> Court has liberally interpreted [the UMA] and its implementing regulation . . . for
> their remedial purposes.  The provision of the maximum possible amount of
> UM/UIM coverage in every insurance policy is the default rule, and any exception
> to that rule must be construed strictly to protect the insured.

149 N.M. 162, 245 P.3d at 1219 (internal quotation marks and citations omitted).  The Plaintiffs

contend that the Court's holding that coverage under the UMA does not include loss-of-use damages

conflicts with the Supreme Court of New Mexico's recognition of the legislature's mandate, set

forth in the UMA, that an insurer must offer an insured coverage under the UMA more broadly than it would under the MFRA.  See Motion for Reconsideration at 5.

The Plaintiffs also cites many cases for the proposition that the Court's ruling is clearly erroneous because the remedial purpose of the UMA is to "place the insured in the same position as he or she would have been had the tortfeasor had liability insurance."  See Motion for Reconsideration at 7.  Reconsideration of these cases, together with consideration of three additional, previously available cases -- State Farm Mut. Auto. Ins. Co. v. Progressive Specialty Ins. Co., Boradiansky v. State Farm Mut. Auto. Ins. Co., and State Farm Mut. Auto. Ins. Co. v. Luebbers -- counsel reconsideration.  Based on the applicable Supreme Court of New Mexico and Court of Appeals of New Mexico's decisions, the Court concludes that the UMA provides coverage for loss-of-use damages.

In Jordan v. Allstate Ins. Co., the Supreme Court of New Mexico emphasized: "When construing the legislative intent behind our UM/UIM statute, this Court has long applied a 'qualitatively different analysis' than we use when construing many other types of statutes and insurance policies."  149 N.M. 162, 245 P.3d at 1219.  The Supreme Court noted that many cases have emphasized the UMA's "remedial purposes."  Jordan v. Allstate Ins. Co., 149 N.M. 162, 245 P.3d at 1219.  The Court of Appeals of New Mexico has also demonstrated that, between the UMA and MFRA statutes, courts should construe the UMA more broadly and MFRA more narrowly based on the differences in the language between the two statutes.  See State Farm Mut. Auto. Ins. Co. v. Progressive Specialty Ins. Co., 131 N.M. at 306, 35 P.3d at 311.

The Court's MOO in part turned on textual differences between the UMA and the MFRA.  The UMA states:

A. No motor vehicle or automobile liability policy insuring against loss resulting

from liability imposed by law for bodily injury or death suffered by any person and for injury to or destruction of property of others arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in New Mexico with respect to any motor vehicle registered or principally garaged in New Mexico <u>unless coverage is provided therein or supplemental thereto in minimum limits for bodily injury or death and for injury to or destruction of property</u> as set forth in Section 66-5-215 NMSA 1978 and such higher limits as may be desired by the insured, but up to the limits of liability specified in bodily injury and property damage liability provisions of the insured's policy, <u>for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, and for injury to or destruction of property</u> resulting therefrom, according to the rules and regulations promulgated by, and under provisions filed with and approved by, the superintendent of insurance.

NMSA 1978, § 66-5-301A (emphasis added).  In comparison, the relevant portion of the MFRA

states:

> "Judgment," as used in the Mandatory Financial Responsibility Act, [as] any judgment which becomes final by expiration without appeal of the time within which an appeal might have been perfected or by final affirmation on appeal rendered by a court of competent jurisdiction of any state or of the United States, upon a cause of action arising out of the ownership, maintenance or use of any motor vehicle of a type subject to registration under the laws of New Mexico, for damages, <u>including damages for care and loss of services, because of bodily injury to or death of any person or for damages because of injury to or destruction of property, including the loss of use thereof,</u> or upon a cause of action on an agreement of settlement for such damages.

NMSA 1978, § 66-5-209 (emphasis added).  The Court then set out the applicable canons of

construction under New Mexico law.  Under New Mexico law, a court's central concern, in

construing a particular statute, "is to determine and give effect to the intent of the legislature," <u>State</u>

<u>ex rel. Klineline v. Blackhurst</u>, 106 N.M. 732, 735, 749 P.2d 1111, 1114 (1988)(citation omitted),

"using the plain language of the statute as the primary indicator of its intent," <u>City of Santa Fe v.</u>

<u>Travelers Cas. & Sur. Co.</u>, 147 N.M. 699, 702, 228 P.3d 483, 486 (2010).  New Mexico courts also

presume that the New Mexico Legislature knows of the existing law when it enacts legislation.  <u>See</u>

<u>Herrera v. Quality Imports</u>, 128 N.M. 300, 302-03, 992 P.2d 313, 315-16 (Ct. App. 1999).  New

Mexico courts presume that, where the New Mexico Legislature has included language in one statute but not in another statute, it is "compelling evidence that the legislature" intended to exclude the language.  Hanson v. Turney, 136 N.M. 1, 4, 94 P.3d 1, 4 (Ct. App. 2004).  Furthermore, New Mexico courts have declined to construe statutes more broadly than the statute's plain language allows, even when the statute is one which they liberally interpret.  See Krahling v. First Trust Nat'l Ass'n, 123 N.M. 685, 689-90, 944 P.2d 914, 918-19 (Ct. App. 1997).  Applying these rules of statutory construction, the Court concluded in its MOO that based on the statute's plain language, the omission of the UMA's loss-of-use language compared with the inclusion of that language in the MFRA led to the result that the New Mexico Legislature intended the omission.  See MOO at 35.  The Court concluded that the canon of interpreting a statute liberally to promote its remedial purposes did not justify departing from the statute's plain language.  See MOO at 36-41.  The Court was not persuaded that it should look at other unrelated statutes in separate chapters of the New Mexico Insurance Code, particularly Chapter 59A, because no applicable cases discussed loss-of-use damages for that chapter of the code.  See MOO at 38.  The Court further reasoned that its conclusion did not create an impermissible gap in coverage, which the New Mexico Legislature sought to avoid under the UMA, because no one could recover loss-of-use damages under the UMA as opposed to only some people having the ability to recover those damages under the statute.  See MOO at 39-40.  The Court also recognized that there were sound policy reasons for the New Mexico Legislature to omit these damages from UMA coverage, such as keeping the costs of New Mexico uninsured motorist coverage low enough to be competitive.  See MOO at 40-41.

Given the Supreme Court of New Mexico's recent emphasis that it applies a qualitatively different analysis when construing the UMA as opposed to many other statutes and insurance policies, the Court concludes that it did not fully account for the strong policy considerations stated

in the Supreme Court's decisions when interpreting the UMA in its MOO.  This policy concern has a more solid foundation in New Mexico law than the policy concerns on which the Court relied in its MOO concerning the New Mexico Legislature wanting to keep uninsured motorist coverage affordable.  <u>See</u> MOO at 40-41.  The proper analysis is whether the plaintiff is legally entitled to recover loss-of-use damages in a tort lawsuit against the uninsured motorist.  In the context of this case, this test is a more precise statement regarding how New Mexico courts apply the UMA's language than the impermissible gap in coverage test that the Court discussed in support of its decision in the MOO.  <u>See</u> MOO at 39-40.  Given the availability of loss-of-use damages under New Mexico tort law as a general matter, <u>see</u> <u>Cress v. Scott</u>, 117 N.M. 3, 5, 868 P.2d 648, 650 (1994), the Court concludes that its decision to exclude loss-of-use damages from UMA coverage is not consistent with the available indicators in New Mexico law of what the Supreme Court would do if confronted with the issue.

Additionally, in <u>State Farm Mut. Auto. Ins. Co. v. Luebbers</u>, the Court of Appeals of New Mexico concluded that the UMA required coverage for loss-of-consortium claims even when the plaintiff himself had not suffered any bodily injury, as long as the uninsured motorist policy otherwise covered the plaintiff.  <u>See</u> 138 N.M. at 294-97, 119 P.3d at 174-77.  Applying the Court's analysis in its MOO would, on the other hand, exclude recovery for loss-of-consortium claims -- loss-of-services claims under the statutory language in MFRA -- under the UMA.  In reaching its conclusion, the Court of Appeals applied the "legally entitled to recover" test.  <u>State Farm Mut. Auto. Ins. Co. v. Luebbers</u>, 138 N.M. at 294-97, 119 P.3d at 174-77.  The Court of Appeals also emphasized the broad policy considerations underlying the UMA.  <u>See</u> <u>State Farm Mut. Auto. Ins. Co. v. Luebbers</u>, 138 N.M. at 296, 119 P.3d at 176.

While the Court's task is to determine what the Supreme Court of New Mexico would do,

and the Court of Appeals' decisions are not binding, the Court concludes that the Court of Appeals' decisions also suggest that the Supreme Court would reach the decision that the UMA requires coverage for loss-of-use damages resulting from a vehicle driven by an uninsured motorist.  See Wade v. Emcasco Insurance Co., 483 F.3d at 665-66.  In summary, the Court reconsiders its decision regarding UMA coverage of loss-of-use damages based on: (I) the consistent way New Mexico courts have in their application interpreted the UMA; (ii) the broad policy concerns New Mexico courts continually emphasize when interpreting the UMA; and (iii) the indication that New Mexico courts construe the UMA more broadly than MFRA.  As discussed in the Court's MOO, however, the Plaintiffs nevertheless may not recover the value of their stolen property under the UMA.

**III.   DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON THE ALTERNATIVE GROUND IN THE COURT'S MOO.**

The Plaintiffs briefly contend that the Court also erred in its alternative holding that, even if loss-of-use damages are available under the UMA, the Plaintiffs cannot recover loss-of-use damages for their stolen personal property.  See Motion for Reconsideration at 14-15.  They contend that the Court's alternative holding improperly "rejects the Supreme Court's definition of 'injury' as something done against the right of a party, producing damage" found in Clark v. Cassetty, and improperly rejects "a body of case law from other jurisdictions which holds that loss of property, or theft of property, constitutes property damage." Motion for Reconsideration at 14.  The Plaintiffs postulate that the Court's alternative ruling that the "UMA should be read as providing loss of use damages in the event of 'injury, with accompanying physical damage to, or destruction of property' . . . is contrary to the afore-cited cases holding that the only limitations to uninsured motorist coverage are those which are specifically set forth in the statute." Motion for Reconsideration at 14.

-18-

The Court continues to disagree.

The Defendant has focused on the argument that "theft, in itself [does not] constitute 'injury to or destruction of property'" under the UMA.  See Letter to the Court at 2, filed August 20, 2010 (Doc. 94)("Aug. 20, 2010 Letter")(letter from Defendant's counsel supplementing its argument regarding Clark v. Cassetty, which the Plaintiffs had cited for the first time at the hearing on the cross-motions for summary judgment).  In its MOO, the Court set forth the differences in the New Mexico insurance code between "property insurance" and "vehicle insurance"; law regarding whether the loss of property through theft is equated with "property damage"; and law regarding whether loss-of-use damages are recoverable without accompanying physical damage.  MOO at 24-25, 28-35.  The Court noted that "[t]he UMA provides coverage solely for 'injury to or destruction of property.' NMSA 1978, § 66-5-301A."  MOO at 45.  Based on the applicable statutes and case law, the Court concluded that, "even if the UMA requires coverage for loss-of-use damages, it would not provide coverage for the theft of the Plaintiffs' property."  MOO at 42-48 (analyzing the cases in light of Chavez v. State Farm Mut. Auto. Ins. Co., 87 N.M. at 329, 533 P.2d at 102).  Chavez v. State Farm noted that the Legislative purpose in enacting "compulsory uninsured motorist coverage was to place the injured policyholder in the same position, with regard to the recovery of damages, that he would have been in if the tortfeasor had possessed liability insurance."  87 N.M. at 329, 533 P.2d at 102 (internal quotation marks and citations omitted).  Additionally, the Court concluded that the Supreme Court of New Mexico's opinion in Cress v. Scott indicated that they would not likely award loss-of-use damages where there was no accompanying property damage.  See MOO at 49-52.  As the Defendants correctly point out, the Supreme Court of New Mexico has consistently interchanged the phrase "injury to or destruction of property" in the vehicle-liability insurance statutes with the phrase "property damage."  See, e.g., Progressive Nw. Ins. Co. v. Weed

-19-

Warrior Servs., 149 N.M. 157, 245 P.3d 1209, 1211 (2010)(stating that, "the minimum limits are defined in the [MFRA] as . . . $10,000 for property damage"); State Farm Auto. Ins. Co. v. Ovitz, 117 N.M. at 549, 873 P.2d 979, 981 (1994)(stating that a policy that "pay[s] damages for bodily injury or property damage [that] an insured is legally entitled to collect" from an uninsured motorist "comports with" the UMA); Fernandez v. Farmers Ins. Co. of Ariz., 115 N.M. 622, 624 n.2, 857 P.2d 22, 24 n.2 (1993) (noting that the UMA "requires that all automobile liability policies issued in New Mexico include coverage for bodily injury and property damage caused the insured by an uninsured motorist").

The Court continues to conclude that, "[u]sing Clark v. Cassetty's broad definition of damage to a right could make the uninsured motorist coverage almost unlimited," MOO at 48, and that, as a matter of law, the Supreme Court of New Mexico would conclude that UMA coverage would not include loss-of-use damages arising from theft of personal property, see State Farm Auto. Ins. Co. v. Ovitz, 117 N.M. at 550, 873 P.2d at 982 ("While it is important to protect the public from irresponsible or impecunious drivers, uninsured motorist coverage is not intended to provide coverage in every uncompensated situation." (internal quotation marks omitted)).  Likewise, New Mexico courts have indicated that they would not likely award loss-of-use damages without accompanying property damage.  More importantly, the Plaintiffs have presented no authority to demonstrate that the Court's alternative holding was in clear error.

**IT IS ORDERED** that: the Plaintiffs' Motion for Reconsideration of Order Granting Summary Judgment, for Relief from Judgment, or to Alter or Amend the Judgment, and Request for Certification to the Supreme Court of New Mexico, filed December 9, 2010 (Doc. 101), is granted in part and denied in part.  The Court will reconsider its MOO on the issue of whether the UMA authorizes coverage of loss-of-use damages.  The Court will not, however, reconsider its alternative

-20-

holding in the MOO that the Plaintiffs cannot not recover loss-of-use damages under New Mexico law based on the facts of this case.  The Defendants remain entitled to summary judgment on the ground that, as a matter of law, the UMA would not authorize loss-of-use damages for the theft of the Plaintiffs' personal property.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Matthew L. Garcia
Bach & Garcia, LLC
Albuquerque, New Mexico

-- and --

Geoffrey R. Romero
Law Offices of Geoffrey R. Romero
Albuquerque, New Mexico

       *Attorneys for the Plaintiffs*

Ross L. Crown
Lewis and Roca, LLP
Albuquerque, New Mexico

-- and –

Steven J. Hulsman
Emily Cates
Lewis and Roca, LLP
Phoenix, Arizona

       *Attorneys for the Defendants*