IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

HAROLD ARNOLD, for himself
and all others similarly situated,
JIMMY JARAMILLO, for himself
and all others similarly situated,
GARY WISE, for himself and
and all others similarly situated,

       Plaintiffs,

vs.                                                                 No. CIV 09-0330 JB/WDS

FARMERS INSURANCE COMPANY
OF ARIZONA, an Arizona corporation;
FARMERS GROUP, INC., a Nevada
corporation,

       Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Plaintiffs' Motion for Clarification and

Motion for Reconsideration of Order Granting Summary Judgment, as Amended, for Relief from

Judgment, or to Alter or Amend the Judgment, filed October 26, 2011 (Doc. 114)("Second Motion

to Reconsider"). The Court held a hearing on April 12, 2012. The primary issues are: (i) whether

the Court has altered or amended its Final Judgment, filed November 12, 2010 (Doc. 100); (ii)

whether the Plaintiffs previously challenged under rule 59(e) of the Federal Rules of Civil Procedure

the Court's analysis addressing uninsured motorist coverage in its Memorandum Opinion and Order,

filed November 12, 2010 (Doc. 99)("Nov. 12, 2010 MOO"); (iii) whether the Court should analyze

the Plaintiffs' Second Motion to Reconsider the Court's Memorandum Opinion and Order at 17-18,

filed September 29, 2011 (Doc. 113)("Sept. 29, 2011 MOO"), as one brought under rule 59(e) or

under rule 60 of the Federal Rules of Civil Procedure; (iv)  whether reconsideration is warranted of

the Court's conclusion that, as a matter of law, the New Mexico Uninsured Motorist Act, N.M.S.A. 1978, § 66-5-301 ("UMA"), does not provide mandatory coverage for theft of the Plaintiffs' personal property; and (v) whether the Court's September 29, 2011 MOO requires clarification. The Court finds that its Nov. 12, 2010 MOO did not hold that the Supreme Court of New Mexico would conclude that the theft of personal property absent damage to the property would preclude the recovery of loss-of-use damages. The Court also concludes, however, that the Plaintiffs had a full opportunity to respond to the Court's discussion of those issues and did so by responding to the Court's discussion in their Plaintiffs' Motion for Reconsideration of Order Granting Summary Judgment, for Relief from Judgment, or to Alter or Amend the Judgment, and Request for Certification to the New Mexico Supreme Court, filed December 9, 2010 (Doc. 101)("First Motion to Reconsider"). In any case, the Court never set aside or altered or amended its Final Judgment in a way that would start a new twenty-eight day period for filing a subsequent rule 59(e) motion. The Second Motion to Reconsider was not brought within twenty-eight days of entry of the final judgment, thus the Court will analyze the Second Motion to Reconsider as one brought under rule 60(b). There are no extraordinary circumstances under rule 60(b) that would justify reconsideration of the Final Judgment. Additionally, because the Plaintiffs have not shown any other proper basis for reconsideration under rule 60(b), the Court will deny the Second Motion to Reconsider. Further, because clarifying its Sept. 29, 2011 MOO in the manner the Plaintiffs have requested would constitute an advisory opinion on facts not before the Court, the Court declines to clarify its Sept. 29, 2011 MOO.

## PROCEDURAL BACKGROUND

On April 2, 2010, the Plaintiffs filed their Motion for Summary Judgment Declaring Uninsured Motorist Property Damage Coverage Is Applicable to the Plaintiffs' Losses. See Doc.

57.  On April 28, 2010, the Defendants filed their Opposition to Plaintiffs' Motion for Summary

Judgment and Cross-Motion for Summary Judgment.  See Doc. 63.  The Plaintiffs in their motion

asked the Court to declare that uninsured motorist property damage coverage applies to the

Plaintiffs' losses.  On August 17, 2010, the Court held a hearing on the two motions.

> In its fifty-three page Nov. 12, 2010 MOO, the Court listed three "primary issues:"

> (i) whether the phrase "injury to or destruction of property" in the Uninsured
> Motorist Act, NMSA 1978, § 66-5-301 ("UMA"), requires coverage for loss-of-use-
> of-property claims; (ii) whether, if the UMA requires coverage for loss-of-use
> claims, theft of property would constitute property damage; and (iii) whether, if the
> UMA requires coverage for loss-of-use claims, an insured can bring a loss-of-use
> claim without an accompanying claim for physical damage.

Nov. 12, 2010 MOO at 1-2.  One of the Court's conclusions was that:

> [T]he phrase "injury to or destruction of property" in the UMA does not require
> coverage for loss of use, because the New Mexico Legislature's omission of loss of
> use language in the UMA indicates that the Legislature intended the omission, and
> even though New Mexico courts liberally construe the UMA, the Court declines to
> disregard the statute's plain language.

Nov. 12, 2010 MOO at 2.  Because all of the Plaintiffs' remaining claims were for loss of use and

the Court's holding regarding loss-of-use damages barred the Plaintiffs' claims, the Court stated that

it was not required to address the two remaining issues.  See MOO at 2 & n.2, 35.  The Court

nonetheless fully set out the relevant law, the parties' arguments, and an analysis predicting how the

Supreme Court of New Mexico would rule on the issue whether the UMA provides coverage for

theft of personal property, resulting in the following statement:  "The Court finds that, even if the

UMA requires coverage for loss-of-use damages, it would not provide coverage for the theft of the

Plaintiffs' property."  Nov. 12, 2010 MOO at 42.  The Court denied the Plaintiffs' request for

summary judgment and granted the Defendant's cross-motion for summary judgment.  See Nov. 12,

2010 MOO at 52.  In its Final Judgment, the Court noted that it "granted summary judgment on the

Plaintiffs' claims after finding that the Uninsured Motorist Act, NMSA 1978, § 66-5-301, did not require coverage for the Plaintiffs' claims" and that its November 12, 2010 MOO "resolves all matters before it." Final Judgment at 1. The Final Judgment dismissed the Plaintiffs' claims with prejudice. See Final Judgment at 1-2.

On December 9, 2010, the Plaintiffs filed their First Motion for Reconsider under rules 59 and 60. See Doc. 101. In their First Motion to Reconsider, the Plaintiffs first challenged the Court's ruling that the UMA does not provide coverage for loss-of-use damages. See First Motion to Reconsider at 2-13. The Plaintiffs also noted that, in its Nov. 12, 2010 MOO, the Court had issued alternative rulings. See First Motion to Reconsider at 14-15 ("As noted, this Court's ruling allows Farmers to limit its uninsured motorist property damage coverage in a more narrow fashion than the property damage coverage mandated by the MFRA."). The Plaintiffs challenged the Court's analysis and conclusions on these alleged alternative rulings and reiterated their prior contentions. See First Motion to Reconsider at 14. The Plaintiffs asserted, however, that the Court did not expressly decide the alleged alternative rulings. See First Motion to Reconsider at 14 ("Similarly, this Court indicates, but does not hold, that . . . loss of use damages are recoverable only when accompanied by physical damage to property.").

The Court reconsidered and reversed its ruling on the loss-of-use issue, holding that the Supreme Court of New Mexico "would reach the decision that the UMA requires coverage for loss-of-use damages resulting from a vehicle driven by an uninsured motorist." Sept. 29, 2011 MOO at 17-18. The Court next addressed the Plaintiffs' challenge to the alleged alternative rulings under rule 59(e):

> The Plaintiffs briefly contend that the Court also erred in its alternative holding that, even if loss-of-use damages are available under the UMA, the Plaintiffs cannot recover loss-of-use damages for their stolen personal property. They contend

that the Court's alternative holding improperly "rejects the Supreme Court's definition of 'injury' as something done against the right of a party, producing damage" found in Clark v. Cassetty, and improperly rejects "a body of case law from other jurisdictions which holds that loss of property, or theft of property, constitutes property damage."  The Plaintiffs postulate that the Court's alternative ruling that the "UMA should be read as providing loss of use damages in the event of 'injury, with accompanying physical damage to, or destruction of property' . . . is contrary to the afore-cited cases holding that the only limitations to uninsured motorist coverage are those which are specifically set forth in the statute."  The Court continues to disagree.

The Defendant has focused on the argument that "theft, in itself [does not] constitute 'injury to or destruction of property'" under the UMA.  In its MOO, the Court set forth the differences in the New Mexico insurance code between "property insurance" and "vehicle insurance"; law regarding whether the loss of property through theft is equated with "property damage"; and law regarding whether loss-of-use damages are recoverable without accompanying physical damage.  The Court noted that "[t]he UMA provides coverage solely for 'injury to or destruction of property.' NMSA 1978, § 66-5-301A."  Based on the applicable statutes and case law, the Court concluded that, "even if the UMA requires coverage for loss-of-use damages, it would not provide coverage for the theft of the Plaintiffs' property." Chavez v. State Farm noted that the Legislative purpose in enacting "compulsory uninsured motorist coverage was to place the injured policyholder in the same position, with regard to the recovery of damages, that he would have been in if the tortfeasor had possessed liability insurance."  Additionally, the Court concluded that the Supreme Court of New Mexico's opinion in Cress v. Scott indicated that they would not likely award loss-of-use damages where there was no accompanying property damage.  As the Defendants correctly point out, the Supreme Court of New Mexico has consistently interchanged the phrase "injury to or destruction of property" in the vehicle-liability insurance statutes with the phrase "property damage."

The Court continues to conclude that, "[u]sing Clark v. Cassetty's broad definition of damage to a right could make the uninsured motorist coverage almost unlimited," MOO at 48, and that, as a matter of law, the Supreme Court of New Mexico would conclude that UMA coverage would not include loss-of-use damages arising from theft of personal property. Likewise, New Mexico courts have indicated that they would not likely award loss-of-use damages without accompanying property damage. More importantly, the Plaintiffs have presented no authority to demonstrate that the Court's alternative holding was in clear error.

Sept. 29, 2011 MOO at 18-20 (citations omitted).  The Court stated in its Sept. 29, 2011 MOO that

it would reconsider its Nov. 12, 2010 MOO, but that it "will not set aside its final judgment." Sept.

-5-

29, 2011 MOO at 2.  The Court, in its Sept. 29, 2011 MOO, referred to its alleged alternative rulings as an alternative holding.  See Sept. 29, 2011 MOO at 2 ("alternative holding"); id. at 4 ("alternative holding"); id. at 18 ("alternative holding"); id. at 20 ("alternative holding").  The Court did not enter a new final judgment or an amended final judgment.

The Plaintiffs have not filed a notice of appeal.  Instead, they have filed their Second Motion to Reconsider.  See Doc. 114.  In this Second Motion to Reconsider, the Plaintiffs "request the Court clarify that its September 29, 2011 opinion indeed holds that coverage is available for theft for damages caused by uninsured motorist using an uninsured motor vehicle, when the tortfeasor's conduct results in physical destruction of the property."  Second Motion to Reconsider at 2.  They also seek to again challenge the Court's alleged alternative findings and conclusions.  They assert that the Court did not rule on the two alternative bases listed in its Nov. 12, 2010 MOO.  See Second Motion to Reconsider at 5-6.  They contend that, in their First Motion to Reconsider, they "sought reconsideration only of this Court's analysis regarding its interpretation of the UMA."  Second Motion to Reconsider at 6.  They argue that the Court's interpretation of the phrase "injury to or destruction of property" violates the policy of liberal interpretation of the UMA that New Mexico courts follow.  Second Motion to Reconsider at 9-13.  They argue that the deprivation of the Plaintiffs' property was the injury they suffered.  See Second Motion to Reconsider at 17.

On November 21, 2011, the Defendants filed their Opposition to Plaintiffs' Second Motion for Reconsideration and Motion for Clarification.  See Doc. 118 ("Response").  They contend that the Plaintiffs "have already taken multiple bites at this apple" and now "seek another."  Response at 1.  The Defendants argue that the Plaintiffs now "revisit the same arguments and cases that they have urged previously in this case."  Response at 2.  The Defendants assert that the Plaintiffs' request for clarification "improperly seeks an advisory opinion" regarding a set of facts not before

the Court.  Response at 2.  The Defendants contend that, based on the timing of the Plaintiffs'

Second Motion to Reconsider, it is a rule 60(b) motion as opposed to a rule 59(e) motion.  See

Response at 4.  The Defendants argue that none of the grounds for reconsideration listed in rule

60(b) are met and that, alternatively, rule 59(e) provides no basis for reconsideration.  See Response

at 4-7 & n.2.  The Defendants assert that the Plaintiffs improperly recycle arguments they previously

have raised or could have raised.  See Response at 7-11.  The Defendants contend that the Court's

alternative grounds for its entry of summary judgment in their favor remain correct.  See Response

at 11-17.

On December 22, 2011, the Plaintiffs filed their Plaintiffs' Reply in Support of Their Second

Motion for Reconsideration and Motion for Clarification.  See Doc. 122 ("Reply").  They assert that

rule 59(e) applies to the Second Motion to Reconsider.  See Reply at 2-4.  They argue that, to the

extent rule 60(b) applies, it justifies relief based on manifest injustice, because the Court adopted

a new rationale for entry of summary judgment against them.  See Reply at 5-8.

At the hearing on April 12, 2012, the Court asked the Plaintiffs whether anything it did in

its Sept. 29, 2011 MOO affected the Final Judgment.  See Transcript of Hearing at 4:4-9 (taken

April 12, 2012)(Court)("Tr.").[1]  The Plaintiffs argued that there was some confusion regarding the

bases for the Court's decision in its Nov. 12, 2010 MOO and that the ruling in the Sept. 29, 2011

MOO resulted in a new judgment.  See Tr. at 4:10-22 (Romero).  The Defendants asserted that the

Court reconsidered its Nov. 12, 2010 MOO in the Sept. 29, 2011 MOO but did nothing that would

affect the Final Judgment.  See Tr. at 5:14-21 (Hulsman).  The Defendants acknowledged that they

had not seen a case similar to this one where the underlying basis for a final judgment may have

---

[1]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

changed, but a new judgment was not issued.  See Tr. at 6:10-14 (Hulsman).  The Defendants noted

that, while the Court reconsidered the basis of its Nov. 12, 2010 MOO, it did not alter or amend the

judgment.  See Tr. at 6:20-7:3 (Hulsman).  The Court noted that the language in the Final Judgment

does not indicate that the Court incorporated its Nov. 12, 2010 MOO in its Final Judgment.  See Tr.

at 10:14-11:17 (Romero, Court).  The Plaintiffs asserted that they did not seek reconsideration of

the Court's alternative rulings in their First Motion to Reconsider.  See Tr. at 13:11-17 (Court,

Romero).  The Plaintiffs argued that extraordinary circumstances are present under rule 60(b) given

that an issue is presented in this case that New Mexico courts have not previously considered.

See Tr. at 42:13-21 (Romero).

## LAW REGARDING FINAL JUDGMENTS

"A final decision is one that ends the litigation on the merits and leaves nothing for the court

to do but execute the judgment."  Rekstad v. First Bank Sys., 238 F.3d 1259, 1261 (10th Cir. 2001)

(internal quotation marks omitted).  Rule 58 of the Federal Rules of Civil Procedure provides, in

relevant part:

> (a)  **Separate Document.**  Every judgment and amended judgment must be set
> out in a separate document, but a separate document is not required for an
> order disposing of a motion:
> . . .
>
> > (4)  for a new trial, or to alter or amend the judgment, under Rule 59; or
> >
> > (5)  for relief under Rule 60.
>
> . . . .
>
> (d)  **Request for Entry.**  A party may request that judgment be set out in a
> separate document as required by Rule 58(a).

Fed. R. Civ. P. 58.

The Supreme Court has recognized that the separate-document rule must be

"mechanically applied" in determining whether an appeal is timely, Bankers Trust

> Co. v. Mallis, 435 U.S. 381, 386 . . . (1978)(internal citation omitted), and has stated
> further that, "absent a formal judgment," a district court's order remains appealable.
> Shalala v. Schaefer, 509 U.S. 292, 303 . . . (1993).  Although parties may waive Rule
> 58's separate-document requirement by allowing an appeal to go forward, see
> Bankers Trust, 435 U.S. at 384 . . . , such waiver cannot be used to defeat appellate
> jurisdiction.  Clough v. Rush, 959 F.2d 182, 186 (10th Cir. 1992).

Allison v. Bank One-Denver, 289 F.3d 1223, 1232-33 (10th Cir. 2002).

> [T]he separate document rule is a technical one.  But, as its name implies, it
> generally requires that judgment be entered in a separate document, one that is "not
> made part of the opinion and order" of the court.  Mondragon v. Thompson, 519 F.3d
> 1078, 1082 (10th Cir. 2008).  A combined document denominated an "Order and
> Judgment," containing factual background, legal reasoning, as well as a judgment,
> generally will not satisfy the rule's prescription.  See, e.g., Clough v. Rush, 959 F.2d
> 182, 185 (10th Cir. 1992) (holding that a district court's summary judgment order
> did not meet Rule 58's requirements because it was "fifteen pages long [and] it
> contain[ed] detailed legal analysis and reasoning") . . . .

In re Taumoepeau, 523 F.3d 1213, 1217 (10th Cir. 2008)(footnote omitted).  The Supreme Court

of the United States has stated that the separate-document requirement "must be mechanically

applied in order to avoid new uncertainties as to the date on which a judgment is entered."  United

States v. Indrelunas, 411 U.S. 216, 221-22 (1973)(per curiam), disavowed in part on other grounds

by Bankers Trust Co v. Mallis, 435 U.S. at 386 n.7.  The separate-document requirement was

imposed to remove the "considerable uncertainty over what actions of the District Court would

constitute an entry of judgment, and [the] occasional grief to litigants as a result of this uncertainty."

United States v. Indrelunas, 411 U.S. at 220.

> The separate-document requirement was thus intended to avoid the inequities that
> were inherent when a party appealed from a document or docket entry that appeared
> to be a final judgment of the district court only to have the appellate court announce
> later that an earlier document or entry had been the judgment and dismiss the appeal
> as untimely.  The 1963 amendment to Rule 58 made clear that a party need not file
> a notice of appeal until a separate judgment has been filed and entered.

Bankers Trust Co. v. Mallis, 435 U.S. 381, 385 (1978).

Even before Rule 58 was amended in 1963, the Supreme Court held, in the context of the

timeliness for filing a petition for certiorari where a second judgment had been reentered, that

> the mere fact that a judgment previously entered has been reentered or revised in an immaterial way does not toll the time within which review must be sought.  Only when the lower court changes matters of substance, or resolves a genuine ambiguity in a judgment previously rendered should the period within which an appeal must be taken or a petition for certiorari filed begin to run anew.  The test is a practical one. The question is whether the lower court, in its second order, has disturbed or revised legal rights and obligations which, by its prior judgment, had been plainly and properly settled with finality.

FTC v. Minneapolis-Honeywell Regulator Co., 344 U.S. 206, 211-12 (1952)(footnotes omitted).

Thus, where a final judgment has been entered, and a timely filed rule 59 motion resulted in the

entry of a second judgment that changed the legal rights of the parties, and the parties filed a

successive rule 59 motion, the United States Court of Appeals for the Seventh Circuit has held that,

"[t]he timeliness of the successive motion comes from the alteration of the judgment.  A significant

change in a judgment starts all time periods anew, whether the district court alters the judgment at

the request of a party or on its own motion."   Charles v. Daley, 799 F.2d 343, 348 (7th Cir.

1986)(citing FTC. v. Minneapolis-Honeywell, 344 U.S. at 211).  Accord Kraft, Inc. v. United States,

85 F.3d 602, 605 (Fed. Cir. 1996)(noting that "a motion to reconsider a revised judgment tolls the

time for appeal only in instances where the second judgment presents a new significant adverse

ruling against the movant which the movant has had no previous opportunity to challenge"),

modified on other grounds, 96 F.3d 1428 (Fed. Cir. 1996).  The United States Court of Appeals for

the Fifth Circuit has applied a similar standard for determining whether, "in [an] order denying the

first motion for reconsideration, the district court amended the judgment," specifically by asking

whether "the amendment of the judgment made no change in what the judgment did."  Charles v.

Ne. Indep. Sch. Dist., 884 F.2d 869, 870-71 (5th Cir. 1989)(emphasis in original).  Thus, the Fifth

Circuit recognized that, "even if the district court had purported to grant the first motion for

-10-

reconsideration but, in the same order, had made it clear that the effect of the judgment was unchanged," there would be no amendment to the judgment.  Charles v. Ne. Indep. Sch. Dist., 884 F.2d at 870-71.

Courts have also discouraged successive rule 59(e) motions as wasteful of judicial resources. As the United States Court of Appeals for the Federal Circuit has explained, "[s]uccessive motions periods, which would encourage piecemeal attack on a judgment and delay appeals, are not authorized.  Once a district court has denied timely filed tolling motions, the litigants must appeal if they wish to further challenge a judgment, except for the special circumstances recognized in Rule 60(b)."  Kraft, Inc. v. United States, 85 F.3d at 605 (citation omitted).  See Venable v. Haislip, 721 F.2d 297, 299 (10th Cir. 1983)(noting that "a motion to reconsider an order disposing of a motion that tolled the running of the time for appeal typically does not again toll the running of the appeal period").  The Fifth Circuit has also stated that "[t]he interest in finality requires that parties generally get only one bite at the rule 59(e) apple for the purpose of tolling the time for bringing an appeal" and that, even when a district court grants an initial "motion for reconsideration [brought under rule 59] but, in the same order, had made it clear that the effect of the judgment was unchanged," a second motion for reconsideration is "condemned by well-established authority in this and other circuits."  Charles v. Ne. Indep. Sch. Dist., 884 F.2d at 870-71.  Cf. Ysais v. Richardson, 603 F.3d 1175, 1178 (10th Cir. 2010)(holding in case where plaintiff filed a motion seeking reconsideration of an "order denying his motion for reconsideration of the amended final judgment . . . [that] this second motion for reconsideration . . . did not extend the time for filing a notice of appeal from the underlying amended final judgment"); Johnson v. Serelson, 23 F.App'x 949, 951 (10th Cir. 2001)(unpublished table decision)(concluding that, where the district court denied a rule 59(e) motion in a case in which an order dismissing a complaint had been entered, but

no final judgment had been entered and where the district court subsequently entered a separate final judgment dismissing the complaint, that the plaintiff's "second motion to alter or amend the judgment[, which] was not served within ten days of the district court's judgment, [] must be construed as a motion for relief from judgment under Fed.R.Civ.P. 60(b)").

"A judgment must be a self-contained document, saying who has won and what relief has been awarded, but omitting the reasons for this disposition, which should appear in the court's opinion." In re Taumoepeau, 523 F.3d at 1217 (internal quotation marks omitted). Besides its importance in determining when the time clock starts ticking for purposes of an appeal, "[s]trict application of Rule 58 eliminates any question as to when the clock for filing post judgment motions . . . begins to tick. Orders disposing of certain enumerated motions, including post judgment motions under Fed.R.Civ.P. 59 and 60, are excepted from Rule 58's separate judgment requirement." Warren v. Am. Bankers Ins. of Fla., 507 F.3d 1239, 1242 (10th Cir. 2007). Thus, the Tenth Circuit "strictly adhere[s] to the Supreme Court's directive to apply Rule 58 'mechanically.'" Warren v. Am. Bankers Ins. of Fla., 507 F.3d at 1243.

## LAW REGARDING MOTIONS TO RECONSIDER UNDER RULES 59(e) AND 60

Rule 59(e) provides: "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Rule 60 provides in relevant part:

(b) **Grounds for Relief from a Final Judgment, Order, or Proceeding.** On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic),

-12-

misrepresentation, or misconduct by an opposing party;

(4)    the judgment is void;

(5)    the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6)    any other reason that justifies relief.

(c)    **Timing and Effect of the Motion.**

(1)    **Timing.**  A motion under Rule 60(b) must be made within a reasonable time -- and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding.

(2)    **Effect on Finality.**  The motion does not affect the judgment's finality or suspend its operation.

Fed. R. Civ. P. 60(b)-(c).  The Tenth Circuit has recognized:

> Generally, a "motion for reconsideration, not recognized by the Federal Rules of Civil Procedure, <u>Clough v. Rush</u>, 959 F.2d 182, 186 n.4 (10th Cir. 1992), may be construed in one of two ways: if filed within 10 days of the district court's entry of judgment, it is treated as a motion to alter or amend the judgment under Rule 59(e); if filed more than 10 days after entry of judgment, it is treated as a motion for relief from judgment under Rule 60(b)." <u>Computerized Thermal Imaging, Inc. v. Bloomberg, L.P.</u>, 312 F.3d 1292, 1296 n.3 (10th Cir. 2002).

<u>Price v. Philpot</u>, 420 F.3d 1158, 1167 n.9 (10th Cir. 2005).  The time limit in rule 59(e) is now twenty-eight days rather than ten days.  <u>See</u> Fed. R. Civ. P. 59(e).  A motion for reconsideration is an "inappropriate vehicle[] to reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion."  <u>Servants of Paraclete v. Does</u>, 204 F.3d 1005, 1012 (10th Cir. 2000).  "Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice."  <u>Servants of Paraclete v. Does</u>, 204 F.3d at 1012.  "Thus, a motion for reconsideration is

appropriate where the court has misapprehended the facts, a party's position, or the controlling law." Servants of Paraclete v. Does, 204 F.3d at 1012. A district court has considerable discretion in ruling on a motion to reconsider. See Phelps v. Hamilton, 122 F.3d 1309, 1324 (10th Cir. 1997).

Rule 60 authorizes a district court to "[o]n motion and just terms . . . relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons," including "any other reason that justifies relief." Fed. R. Civ. P. 60(b). A court cannot enlarge the time for filing a rule 59(e) motion. See Brock v. Citizens Bank of Clovis, 841 F.2d 344, 347 (10th Cir. 1988)(holding that district courts lack jurisdiction over untimely rule 59(e) motions); Plant Oil Powered Diesel Fuel Sys., Inc. v. ExxonMobil Corp., No. 11-0103, 2012 WL 869000, at *2 (D.N.M. Mar. 8, 2012)(Browning, J.)("The Court may not extend the time period for timely filing motions under Rule 59(e) . . . ."). "A motion under rule 59 that is filed more than 28 days after entry of judgment may be treated as a Rule 60(b) motion for relief from judgment." 12 J. Moore, Moore's Federal Practice § 59.11[4][b], at 59-32 (3d ed. 2011)(citations omitted). Nevertheless, a court will not generally treat an untimely rule 59(e) motion as a rule 60(b) motion when the party is seeking "'reconsideration of matters properly encompassed in a decision on the merits' contemplated by Rule 59(e)." Jennings v. Rivers, 394 F.3d 850, 854 (10th Cir. 2005).

Rule 60(b)(6) is a "grand reservoir of equitable power to do justice in a particular case." Van Skiver v. United States, 952 F.2d 1241, 1244 (10th Cir. 1991)(internal quotation marks omitted). District courts, however, generally may grant relief under this provision only in extraordinary circumstances, such as satisfying one of the bases for relief listed in rule 60(b). See Sindar v. Garden, 284 F.App'x 591, 596 (10th Cir. 2008)(unpublished). As the Tenth Circuit discussed in Van Skiver v. United States:

The kind of legal error that provides the extraordinary circumstances justifying relief

-14-

under Rule 60(b)(6) is illustrated by <u>Pierce [v. Cook & Co.</u>, 518 F.2d 720, 722 (10th Cir. 1975)(en banc)]. In that case, this court granted relief under 60(b)(6) when there had been a post-judgment change in the law "arising out of the same accident as that in which the plaintiffs . . . were injured." <u>Pierce</u>, 518 F.2d at 723. However, when the post-judgment change in the law did not arise in a related case, we have held that "[a] change in the law or in the judicial view of an established rule of law" does not justify relief under Rule 60(b)(6). <u>Collins v. City of Wichita</u>, 254 F.2d 837, 839 (10th Cir. 1958).

952 F.2d at 1244-45.

Notably, neither rule 59 nor rule 60 apply to interlocutory orders a district court reconsiders before entry of final judgment. Rule 59(e) states: "A motion to alter or amend a judgment must be filed no later than 28 days <u>after the entry of the judgment</u>." Fed. R. Civ. P. 59(e) (emphasis added). <u>Accord</u> <u>Van Skiver v. United States</u>, 952 F.2d at 1243 ("In this case, plaintiffs' motion to reconsider was not served within ten days of the district court's judgment."); 12 J. Moore, <u>supra</u> § 59.11[1][a], at 59-26 ("A motion for a new trial must be filed no later than 28 days after the entry of judgment, regardless of when or whether the parties received notice of the entry of the judgment." (citations omitted)). As the note to the 1946 amendment to rule 60 emphasizes in a discussion of the choice to add the word "final" within rule 60(b):

> The addition of the qualifying word "final" emphasizes the character of the judgments, orders or proceedings from which Rule 60(b) affords relief; and hence interlocutory judgments are not brought within the restrictions of the rule, but rather they are left subject to the complete power of the court rendering them to afford such relief from them as justice requires.

Fed. R. Civ. P. 60 advisory committee's note to 1946 amendment. <u>Accord</u> 12 J. Moore, <u>supra</u> § 60.23, at 60-82 ("Rule 60(b) does not govern relief from interlocutory orders, that is to say any orders in which there is something left for the court to decide after issuing the order."); 11 C. Wright, A. Miller & M. Kane, <u>Federal Practice and Procedure</u> § 2852, at 233 (2d ed. 1995)("Thus, the power of a court to modify an interlocutory judgment or order at any time prior to final judgment

-15-

remains unchanged and is not limited by the provisions of Rule 60(b)."); id. § 2866, at 390 ("The one-year limit on motions under the first three clauses runs from the date the judgment was entered in the district court.").[2]  The Tenth Circuit has recognized that a district court has broad discretion to reconsider its interlocutory rulings before the entry of judgment.  See Rimbert v. Eli Lilly & Co., 647 F.3d 1247, 1251 (10th Cir. 2011)("[D]istrict courts generally remain free to reconsider their earlier interlocutory orders.").  That discretion extends to rulings on partial summary judgment motions.  See Fye v. Okla. Corp. Comm'n, 516 F.3d 1217, 1223-24 n.2 (10th Cir. 2008)("The District Court's partial summary judgment ruling was not a final judgment.  Thus, Ms. Fye's motion for reconsideration is considered an 'interlocutory motion invoking the district court's general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment.'").

## ANALYSIS

The Court finds that its Nov. 12, 2010 MOO did not hold that the Supreme Court of New Mexico would conclude that the theft of personal property absent damage to the property would preclude the recovery of loss-of-use damages.  The Court also concludes, however, that the Plaintiffs had a full opportunity to respond to the Court's discussion of those issues and did so by responding to the Court's discussion in their First Motion to Reconsider.  In any case, the Court never set aside or altered or amended its final judgment in a way that would start a new twenty-eight day period for filing a subsequent rule 59(e) motion.  The Second Motion to Reconsider was not brought within

---

[2]Certain proceedings that are not traditional lawsuits, such as a suit filed under rule 27(a) of the Federal Rules of Civil Procedure to perpetuate testimony through a pre-suit deposition, will not necessarily require a final judgment when the proceeding comes to an end.  See Fed. R. Civ. P. 27(a).  Rule 60(b) acknowledges this possibility by referring to final orders and proceedings along with final judgments.  See Fed. R. Civ. P. 60(b) & note to 1946 amendment.  Accord 12 J. Moore, supra § 60.23, at 60-80 ("Rule 60(b) permits relief 'from a final judgment, order, or proceeding." (emphasis in original)).

twenty-eight days of entry of the Final Judgment, thus the Court will analyze the Second Motion to Reconsider as one brought under rule 60(b).  There are no extraordinary circumstances under rule 60(b) that would justify reconsideration of the Final Judgment.  Additionally, because the Plaintiffs have not shown any other proper basis for reconsideration under rule 60(b), the Court will deny the Second Motion to Reconsider.  Further, because clarifying its Sept. 29, 2011 MOO in the manner the Plaintiffs have requested would constitute an advisory opinion on facts not before the Court, the Court declines to clarify its Sept. 29, 2011 MOO.

**I.      THE COURT DID NOT MODIFY ITS FINAL JUDGMENT AS A RESULT OF ITS SEPT. 29, 2011 MOO, NOR DID THE SEPT. 29, 2011 MOO TRIGGER A NEW TWENTY-EIGHT DAY PERIOD FOR RULE 59(e) REVIEW.**

In its Nov. 12, 2010 MOO, because all of the Plaintiffs' remaining claims were for loss of use and the Court's holding barred the claims, the Court noted that it was not required to address the two remaining issues: (i) whether theft of property constitutes injury to property under the UMA; (ii) and whether an insured may bring a loss-of-use claim without an accompanying claim for physical damage under the UMA.  See Nov. 12, 2010 MOO at 2 & n.2, 35.  Nevertheless, the Court fully set out the Plaintiffs' and Defendants' arguments as well as the relevant law regarding the second and third issues: "(ii) whether, if the UMA requires coverage for loss-of-use claims, theft of property would constitute property damage; and (iii) whether, if the UMA requires coverage for loss-of-use claims, an insured can bring a loss-of-use claim without an accompanying claim for physical damage."  Nov. 12, 2010 MOO at 1-2.

The Court conducted a lengthy and detailed analysis of those issues.  See Nov. 12, 2010 MOO at 28-35 & 42-49.  The Court addressed the issue whether "even if the UMA requires coverage for loss-of-use damages, it would not provide coverage for the theft of the Plaintiffs' property."  Nov. 12, 2010 MOO at 42.  The Court, in its discussion of that issue, stated that "the

cases adopting the construction the Court adopts are much better reasoned than the cases that stretched to find coverage." Nov. 12, 2010 MOO at 46. The Court also found support for this discussion in the UMA's plain language. See MOO at 45 ("The UMA provides coverage solely for 'injury to or destruction of property.'"). Further, the Court found instructive a Court of Appeals of New Mexico case analyzing the statutory construction of a parental-liability statute permitting recovery of the value of "damaged or destroyed" property, in which the Court of Appeals held that, where "there was no evidence that the property was damaged or destroyed, the parents were not liable for the value of the property" that was stolen. MOO at 46-47 (citing Lamb v. Randall, 95 N.M. 35, 37, 618 P.2d 379, 381 (Ct. App. 1980)). Finally, the Court found support for its discussion in a Supreme Court of New Mexico case stating that, "[t]he purpose of awarding loss-of-use damages is to provide reasonable compensation for inconvenience or monetary loss suffered during the time required for repair of damaged property." MOO at 52 (quoting Cress v. Scott, 117 N.M. 3, 6, 868 P.2d 648, 651 (1994)). Subsequent to that discussion, however, the Court made the following statement in analyzing whether the UMA provides coverage for theft of personal property:

> Because the Court can decide this case without deciding this issue, the Court will not decide this case on what would be an alternative ground, and the Court does not reach this question. It is sufficient for the Court to leave this issue for another day and perhaps another court by noting that there are reasonable grounds to believe that the Supreme Court of New Mexico would follow the analysis of the courts that have held that theft of property does not constitute property damage under the UMA.

MOO at 46.

In their First Motion to Reconsider, the Plaintiffs stated:

> [T]his Court indicates, but does not hold, that if loss of use damages were required to be covered under the UMA, a separate restriction to such coverage could be read into the Act, that being that loss of use damages are recoverable only when accompanied by physical damage to property.

First Motion to Reconsider at 14. The Plaintiffs then proceeded to treat the Court's analysis as a

holding, however, stating: "In so <u>holding</u>, the Court rejects the Supreme Court's definition of 'injury' as something done against the right of a party, producing damage."  First Motion to Reconsider at 14 (emphasis added).  They further argued: "[T]his Court's <u>ruling</u> allows Farmers to discontinue [its] practice [of paying loss-of-use damages for UMA property-damage claims in certain circumstances].  As noted, this Court's <u>ruling</u> allows Farmers to limit its uninsured motorist property damage coverage in a more narrow fashion than the property damage coverage mandated by the MFRA."  First Motion to Reconsider at 15 (emphasis added).  The Plaintiffs in their reply brief asked the Court to address this issue of recovering loss-of-use damages without accompanying property damage, because the Court's "recognition" that loss-of-use damages would not be recoverable in those circumstances "would constitute a manifest error of law."  Plaintiffs' Reply in Support of Plaintiffs' Motion for Reconsideration/Alter or Amend Judgment and Plaintiffs' Request for Certification to the New Mexico Supreme Court at 4-5, filed February 18, 2011 (Doc. 108).  Thus, the Plaintiffs appear to have treated the Court's discussion that loss-of-use damages were not recoverable in the instances of theft presented as bases for the Court's conclusion to which they needed to respond in their First Motion to Reconsider.  They do acknowledge, however, that the Court did not decide these issues.  <u>See</u> First Motion to Reconsider at 14-15.

        The Court reconsidered and reversed its ruling on the loss-of-use issue, holding that the Supreme Court of New Mexico "would reach the decision that the UMA requires coverage for loss-of-use damages resulting from a vehicle driven by an uninsured motorist."  Sept. 29, 2011 MOO at 17-18.  The Court then spent approximately two-and-a-half pages addressing the Plaintiffs' challenge to its discussion that loss-of-use damages were not recoverable in the instances of theft presented.  <u>See</u> Sept. 29, 2011 MOO at 18-20.  The Court stated that it "will reconsider its MOO on the issue of whether the UMA authorizes coverage of loss-of-use damages," Sept. 29, 2011 MOO

at 20, but stated that it "will not reconsider the alternative grounds on which it granted summary judgment in favor of the Defendant and will not set aside its final judgment," Sept. 29, 2011 MOO at 2.  The Court did not issue an amended final judgment or a new final judgment.

Plaintiffs contend that the result of the Court's Sept. 29, 2011 MOO was the issuance of a new judgment from which the twenty-eight day period for filing a rule 59(e) motion would begin to run anew.  They then proceed to reargue all of their major points on the availability of loss-of-use damages without accompanying damage to the property that, as the Defendants point out, the Plaintiffs have raised multiple times and that the Court disparaged in its November 12, 2010 MOO and rejected in the September 29, 2011 MOO.

The Court's Sept. 29, 2011 MOO cannot be considered a judgment as defined under rule 58. See In re Taumoepeau, 523 F.3d at 1217.  "A judgment must be a self-contained document, saying who has won and what relief has been awarded, but omitting the reasons for this disposition, which should appear in the court's opinion."  In re Taumoepeau, 523 F.3d at 1217 (internal quotation marks omitted).  The Court's Sept. 29, 2011 MOO was twenty-one pages long and set out in detail the basis for its holding.  See, e.g., Clough v. Rush, 959 F.2d at 185 (holding that a district court's summary judgment order did not meet Rule 58's requirements because it was "fifteen pages long [and] it contain[ed] detailed legal analysis and reasoning").

Additionally, the Sept. 29, 2011 MOO did not modify the Final Judgment in such a way that would trigger a new twenty-eight day time period for rule 59(e) purposes.  In FTC v. Minneapolis-Honeywell Regulator Co., the Supreme Court held, in the context of the timeliness for filing a petition for certiorari where a second judgment had actually been reentered, that

> the mere fact that a judgment previously entered has been reentered or revised in an immaterial way does not toll the time within which review must be sought.  Only when the lower court changes matters of substance, or resolves a genuine ambiguity

in a judgment previously rendered should the period within which an appeal must be taken or a petition for certiorari filed begin to run anew.  The test is a practical one. The question is whether the lower court, in its second order, has disturbed or revised legal rights and obligations which, by its prior judgment, had been plainly and properly settled with finality.

344 U.S. at 211-12 (footnotes omitted).  Relying on this Supreme Court decision, the Seventh

Circuit held in a case involving successive rule 59(e) motions filed by the same party that "[t]he

timeliness of the successive motion comes from the alteration of the judgment.  A significant change

in a judgment starts all time periods anew, whether the district court alters the judgment at the

request of a party or on its own motion."  Charles v. Daley, 799 F.2d at 348 (citing FTC. v.

Minneapolis-Honeywell, 344 U.S. at 211).  Notably, there was no new judgment entered in this case

following the Court's issuance of the Sept. 29, 2011 MOO.  The Tenth Circuit has recognized that

"a motion to reconsider an order disposing of a motion that tolled the running of the time for appeal

typically does not again toll the running of the appeal period."  Venable v. Haislip, 721 F.2d at 299.

While the Court granted in part and denied in part the First Motion to Reconsider, the "practical"

effect of the Sept. 29, 2011 MOO was a denial of what the Plaintiffs ultimately sought -- reopening

the case so that the Plaintiffs could continue to proceed and overturning the judgment against them.

FTC v. Minneapolis-Honeywell Regulator Co., 344 U.S. at 211-12.  The Supreme Court in FTC v.

Minneapolis-Honeywell Regulator Co. emphasized the "practical" consequences of a subsequent

order a court issues for purposes of restarting the time period for filing an appeal, specifically

"whether the lower court, in its second order, has disturbed or revised legal rights and obligations

which, by its prior judgment, had been plainly and properly settled with finality."  FTC v.

Minneapolis-Honeywell Regulator Co., 344 U.S. at 211-12.

The Court has not disturbed or revised any legal rights or obligations with its Sept. 29, 2011

MOO.  The Court recognizes that it was incorrect in its Sept. 29, 2011 MOO when it stated that it

"will not reconsider the alternative grounds on which it granted summary judgment in favor of the Defendant and will not set aside its final judgment," because the Court did not decide those grounds in its Nov. 12, 2010 MOO. Sept. 29, 2011 MOO at 2 (emphasis added). Nevertheless, the Court's Final Judgment plainly and properly settled with finality that the Defendants were entitled to summary judgment. There was no ambiguity in the Final Judgment, which ordered "that Plaintiffs Howard Arnold's, Jimmy Jaramillo's, and Gary Wise's claims against Defendants Farmers Insurance Company of Arizona and Farmers Group, Inc. are dismissed with prejudice." Final Judgment at 1-2. Additionally, the Plaintiffs felt that the Court's discussion that loss-of-use damages were not recoverable in the instances of theft presented was sufficiently concrete to address that discussion in their First Motion to Reconsider and took an opportunity to challenge the Court's analysis. See Kraft, Inc. v. United States, 85 F.3d at 605 (noting that "a motion to reconsider a revised judgment tolls the time for appeal only in instances where the second judgment presents a new significant adverse ruling against the movant which the movant has had no previous opportunity to challenge").

The Fifth Circuit has applied a similar standard consistent with the Supreme Court's decision in Minneapolis-Honeywell Regulator Co. for determining whether, "in [an] order denying the first motion for reconsideration, the district court amended the judgment," specifically by asking whether "the amendment of the judgment made no change in what the judgment did." Charles v. Ne. Indep. Sch. Dist., 884 F.2d at 870-71 (emphasis in original). Thus, the Fifth Circuit recognized that "even if the district court had purported to grant the first motion for reconsideration but, in the same order, had made it clear that the effect of the judgment was unchanged," there would be no amendment to the judgment. Charles v. Ne. Indep. Sch. Dist., 884 F.2d at 870-71. That scenario is what occurred here. The Court granted in part and denied in part the First Motion to Reconsider, but "made it clear

-22-

that the effect of the judgment was unchanged." <u>Charles v. Ne. Indep. Sch. Dist.</u>, 884 F.2d at 870-71. Consequently, there was no amendment to the Final Judgment and thus no new twenty-eight day period for a rule 59(e) motion. Likewise, the Tenth Circuit has recognized in comparable contexts that an "order denying [a party's] motion for reconsideration of the amended final judgment" does "<u>not</u> extend the time for filing a notice of appeal from the underlying amended final judgment." <u>Ysais v. Richardson</u>, 603 F.3d at 1178 (emphasis in original).

Policy considerations of efficiency counsel in favor of limiting the use of successive rule 59(e) motions as well. As the Fifth Circuit has stated: "The interest in finality requires that parties generally get only one bite at the rule 59(e) apple for the purpose of tolling the time for bringing an appeal." <u>Charles v. Ne. Ind. Sch. Dist.</u>, 884 F.2d at 870-71. As the Federal Circuit has explained, "[s]uccessive motions periods, which would encourage piecemeal attack on a judgment and delay appeals, are not authorized. Once a district court has denied timely filed tolling motions, the litigants must appeal if they wish to further challenge a judgment, except for the special circumstances recognized in Rule 60(b)." <u>Kraft, Inc. v. United States</u>, 85 F.3d at 605 (citation omitted).

Thus, the Court must consider the Second Motion to Reconsider under rule 60(b). A court cannot enlarge the time for filing a rule 59(e) motion. <u>See Plant Oil Powered Diesel Fuel Sys., Inc. v. ExxonMobil Corp.</u>, 2012 WL 869000, at *2 ("The Court may not extend the time period for timely filing motions under Rule 59(e) . . . ."); <u>Brock v. Citizens Bank of Clovis</u>, 841 F.2d at 347 (holding that district courts lack jurisdiction over untimely rule 59(e) motions).

## II.   <u>THE COURT WILL NOT CHANGE THE JUDGMENT UNDER RULE 59(e).</u>

The Second Motion to Reconsider raises the same arguments that the Plaintiffs have now had at least two opportunities to raise. "Grounds warranting a motion to reconsider [under rule 59(e)]

include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." Servants of Paraclete v. Does, 204 F.3d at 1012.  None of those grounds are present.  The Plaintiffs have not established "manifest errors of law" or presented "newly discovered evidence."  Phelps v. Hamilton, 122 F.3d at 1324. Nonetheless, the Court has taken a hard look at its earlier analyses to make sure that the Plaintiffs have not established a manifest error of law, and concludes that they have not.

As the Court previously noted, the plain language of the UMA statute mandates coverage for two different types of property damage: "injury to or destruction of property."  N.M.S.A. 1978, § 66-5-301(A).[3]  The Court agrees that, by the use of the disjunctive term "or," it is evident the Legislature intended that uninsured motorist coverage apply to more than one damage -- partial damage and total destruction.  Contrary to the Plaintiffs' assertions, the Court never ruled or implied that mandatory coverage under the UMA is limited only to destruction of property.  The Plaintiffs

---

[3]N.M.S.A. 1978, § 66-5-301(A) provides:

No motor vehicle or automobile liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person and for injury to or destruction of property of others arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in New Mexico with respect to any motor vehicle registered or principally garaged in New Mexico unless coverage is provided therein or supplemental thereto in minimum limits for bodily injury or death and for injury to or destruction of property as set forth in Section 66-5-215 NMSA 1978 and such higher limits as may be desired by the insured, but up to the limits of liability specified in bodily injury and property damage liability provisions of the insured's policy, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, and for injury to or destruction of property resulting therefrom, according to the rules and regulations promulgated by, and under provisions filed with and approved by, the superintendent of insurance.

N.M.S.A. 1978, § 66-5-301(A).

desire to add another, qualitatively different, category of loss to the UMA statutes' plain language: theft of property.  See Second Motion to Reconsider at 17.  As previously explained, the Court must determine the meaning of injury to property in the UMA statute.  See City of Santa Fe v. Travelers Cas. & Sur. Co., 147 N.M. 699, 702, 228 P.3d 483, 486 (2010)(recognizing that New Mexico courts interpret statutes "using the plain language of the statute as the primary indicator of its intent").  The Court is not concerned with defining what the legal term "injury" means in all contexts, and especially injury to a person, as opposed to injury to property.  See Romero v. Bd. of County Comm'rs, 150 N.M. 59, 257 P.3d 404, 406-08 (Ct. App. 2011)(citing Jordan v. Allstate Ins. Co., 149 N.M. 162, 167, 245 P.3d 1214, 1219 (2010))(recognizing that the UMA is interpreted liberally to implement its remedial purpose, but looking first to the words the Legislature used as the "primary indicator of legislative intent," and finding that the UMA's plain language, when read in conjunction with other statutes, did not mandate that an association of counties had an obligation to provide UM/UIM coverage to its self-insuring members).  The Court does not agree that "the meaning of the phrase 'injury to property'" in the UMA must also be defined "as something done against the right of a party that produces damage" as discussed in cases determining whether the contributory negligence applies to a particular scenario.  See Second Motion to Reconsider at 14 (citing Clark v. Cassetty, 71 N.M. 89, 91-92, 376 P.2d 37, 39-40 (1962), overruled on other grounds by Stephens v. Dulaney, 78 N.M. 53, 428 P.2d 27 (1967)).

Equally inapplicable is the analysis presented in Lovelace Medical Center v. Mendez, 111 N.M. 336, 805 P.2d 603 (1991), in which the Supreme Court of New Mexico concluded that the term "injury" may include injury to a family's financial security -- specifically "the reasonable costs of raising [a] baby to adulthood" in the form of "the invasion of the parents' interest in the financial security of their family."  111 N.M. at 342, 805 P.2d at 609.  Lovelace Medical Center v. Mendez

involved a negligence action against a doctor who allegedly negligently performed an anti-contraceptive procedure on a woman.  See 111 N.M. at 337-38, 805 P.2d at 604-05.  The Supreme Court of New Mexico in that case addressed whether "the term 'injury' in tort law refers to the wrongful act or tort itself" and whether "[t]he interest in one's economic stability is . . . an example of an interest that receives legal protection."  Lovelace Medical Ctr. v. Mendez, 111 N.M. at 342, 344, 805 P.2d at 609, 611.  The Court is not attempting to define the general term injury in all contexts, much less in a way contrary to the way that the Supreme Court of New Mexico has defined it in the cases the Plaintiffs cite.  Further, the Supreme Court of New Mexico and the Court of Appeals of New Mexico do not look to the general definition of injury when construing the definition of bodily injury in the UMA; they define the terms bodily injury according to their plain meaning.  See City of Santa Fe v. Travelers Cas. & Sur. Co., 147 N.M. at 702, 228 P.3d at 486 (recognizing that New Mexico courts interpret statutes "using the plain language of the statute as the primary indicator of its intent")

In Gonzales v. Allstate Insurance Co., 122 N.M. 137, 921 P.2d 944 (1996), the Supreme Court of New Mexico noted that, in deciding coverage issues under the UMA, the court will "look to the terms of the insurance statutes to determine what is required, and then to the terms of the insurance policy to discern whether it complies with the mandatory law."  Gonzales v. Allstate Ins. Co., 122 N.M. at 142, 921 P.2d at 949.  The Supreme Court of New Mexico acknowledged that the UMA "mandates insurance coverage for 'bodily injury, sickness or disease, including death'" and that the policy similarly provided coverage for "bodily injury . . . including damages sustained by anyone else as a result of that bodily injury," which complied with the UMA.  Gonzales v. Allstate Ins. Co., 122 N.M. at 142, 921 P.2d at 949.  The Supreme Court of New Mexico held that "emotional distress suffered by a person as the result of loss of consortium does not fall within the

category of 'bodily injury,'" because, "[b]y its plain meaning, 'bodily injury' constitutes injury to the physical body rather than mental and emotional injuries." Gonzales v. Allstate Ins. Co., 122 N.M. at 140, 921 P.2d at 947.  Because the policy's coverage language expanded coverage to include consequential damages that resulted from bodily injury, however, the plaintiff could recover damages for loss of consortium, limited to the amount of coverage applicable to a single accident. Gonzales v. Allstate Ins. Co., 122 N.M. at 142, 921 P.2d at 949.

In Economy Preferred Insurance Co. v. Jia, 135 N.M. 706, 92 P.3d 1280 (Ct. App. 2004), the Court of Appeals of New Mexico held that a family's uninsured motorist insurance policy, which defined "bodily injury" as "'bodily harm, sickness or disease, including death that results,'" and which is the same as the coverage that the UMA mandates, did not cover the child's claims for negligent infliction of emotional distress.  135 N.M. at 710, 92 P.3d at 1284.  Applying Gonzales v. Allstate Ins. Co., the Court of Appeals of New Mexico held:

> [T]o interpret the terms of the policy, we must differentiate between bodily injury and emotional injury; the alternative would be to extend coverage for bodily harm to all emotional injury, a result that is inconsistent both with precedent and with common-sense notions of what a reasonable insured would understand from the policy language.

Econ. Preferred Ins. Co. v. Jia, 135 N.M. at 708, 92 P.3d at 1282.  Subsequently, in Hart v. State Farm Mutual Insurance Co., 145 N.M. 18, 193 P.3d 565 (Ct. App. 2008), the Court of Appeals once again applied Gonzales v. Allstate Ins. Co. and gave a plain meaning to the terms "bodily injury" in the coverage-clause phrase "bodily injury to a person and sickness, disease or death which results from it," as "defined in policies of uninsured motorist (UM) insurance issued to Child's parents, after she was subjected to inappropriate sexual touching in an uninsured motor vehicle.  We conclude that under the undisputed facts, Child's injuries did not constitute 'bodily injury' as defined by the policies." Hart v. State Farm Mut. Ins. Co., 145 N.M. at 19, 193 P.3d at 566.  The

Court of Appeals of New Mexico reached this conclusion, because the "Child's injuries did not include any physical injury such as bruises, scrapes, or cuts." Hart v. State Farm Mut. Ins. Co., 145 N.M. at 21, 193 P.3d at 568 (internal quotation marks omitted).

The Court acknowledges that New Mexico courts interpret the UMA liberally, see Jordan v. Allstate Ins. Co., 149 N.M. 162, 245 P.3d at 1219, but the Court is not called upon to construe an ambiguous term or to apply restrictive language in an insurance contract that is contrary to the UMA. Instead, the Court has been asked to determine whether theft is included within the meaning of the words "injury to or destruction of property" in the UMA's property-coverage clause. The words "injury to . . . property" have a clear meaning, because inanimate personal property can suffer only physical damage. Thus, the Court is not redefining the term injury to property by adding what Plaintiffs characterize as restrictive language to the coverage statute; nor does defining injury to property as requiring physical damage make superfluous the clause destruction of property, as the Plaintiffs contend. See Second Motion to Reconsider at 19-20. The Court is instead giving the terms injury to or destruction of property their plain meaning, much like the Supreme Court of New Mexico and the Court of Appeals of New Mexico have given plain meaning to the terms bodily injury in the same coverage-clause section of the UMA. Consistent with the discussion in its Nov. 12, 2010 MOO, the Court concludes that the terms injury to or destruction of property in the UMA mandate coverage only for property claims based on physical damage or destruction resulting from an accident, because the plain meaning of injury to property can only mean damage to property. Because the Plaintiffs' claims for theft are not based on damage to or destruction of their property, the Court concludes that it properly granted summary judgment in favor of the Defendants on November 12, 2010.

The Plaintiffs once again argue that, "[t]o the extent that the Court would acknowledge

-28-

uninsured motorist coverage applies to theft of property if the property was physically destroyed by the acts of the uninsured motorist, such ruling creates an impermissible gap that violates the public policy of the UMA."  Second Motion to Reconsider at 23.  The Plaintiffs unsuccessfully made this same argument before the Court granted summary judgment in favor of the Defendant.  See Nov.12, 2010 MOO at 49-50.  The Court did not, and will not, make a hypothetical ruling with respect to facts not before the Court.  The Court has resolved the dispute before it and should not hypothesize about alternative factual scenarios not present in this case.  The Defendants have correctly argued that the Court would be rendering an advisory opinion if it decided to resolve this argument.  See Response at 17-18.  The Court is not deciding this argument because, regardless how the Court decides the issue, doing so will have no impact on the disposition of this case.

## III.    A CHANGE OF THE JUDGMENT IS NOT APPROPRIATE UNDER RULE 60.

The Plaintiffs raise arguments in their Second Motion to Reconsider that the Court previously questioned in its Nov. 12, 2010 MOO and rejected its Sept. 29, 2011 MOO.  Those arguments form no basis for further reconsideration under rule 60.  See Van Skiver v. United States, 952 F.2d at 1244-45 (affirming denial of motion for reconsideration brought under rule 60(b) where plaintiff failed to recite exceptional circumstances and holding that a challenge to "the legal correctness of the district court's judgment by arguing that the district court misapplied the law" did not "justify relief from the district court's judgment" under rule 60(b)(1)); Sindar v. Garden, 284 F.App'x at 596 (noting that only a particular legal error, not found in the case, results in the extraordinary circumstances justifying relief under rule 60(b)(6)).  The Plaintiffs are not asking for relief from judgment on the grounds of "mistake, inadvertence, surprise, or excusable neglect," but rather are arguing that the Court incorrectly decided the merits of their case.  Fed. R. Civ. P. 60(b)(1).  Such an argument is properly encompassed by a rule 59(e) motion.  A court will not

generally treat an untimely rule 59(e) motion as a rule 60(b) motion when the party is seeking "'reconsideration of matters properly encompassed in a decision on the merits' contemplated by Rule 59(e)." Jennings v. Rivers, 394 F.3d at 854.  To the extent that they argue that "the judge has made a substantive mistake of law or fact in the final judgment or order," the Court has considered the Plaintiffs' arguments and now has rejected them three times. Cashner v. Freedom Stores, Inc., 98 F.3d 572, 566 (10th Cir. 1996).  There is no further need for reconsideration, and the Court concludes it has not made a substantive mistake of law.  They do not ask for relief from judgment because they have "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under rule 59(b)." Fed. R. Civ. P. 60(b)(2).  Lastly, they are not arguing that: (i) there was some fraud in entry of the judgment; (ii) the judgment is void; or (iii) the judgment has been satisfied, released, or discharged.  See Fed. R. Civ. P. 60(b)(3)-(5).

With respect to the more general grounds for relief rule 60(b) permits, the Court does not believe that any extraordinary circumstances counsel in favor of reconsideration.  Rule 60(b)(6) is a "grand reservoir of equitable power to do justice in a particular case."  Van Skiver v. United States, 952 F.2d at 1244 (internal quotation marks omitted).  District courts, however, generally may grant relief under this provision only in extraordinary circumstances, such as satisfying one of the bases for relief listed in rule 60(b).  See Sindar v. Garden, 284 F.App'x at 596.  As the Tenth Circuit discussed in Van Skiver v. United States:

> The kind of legal error that provides the extraordinary circumstances justifying relief under Rule 60(b)(6) is illustrated by Pierce [v. Cook & Co., 518 F.2d 720, 722 (10th Cir. 1975)(en banc)].  In that case, this court granted relief under 60(b)(6) when there had been a post-judgment change in the law "arising out of the same accident as that in which the plaintiffs . . . were injured."  Pierce, 518 F.2d at 723.  However, when the post-judgment change in the law did not arise in a related case, we have held that "[a] change in the law or in the judicial view of an established rule of law" does not justify relief under Rule 60(b)(6).  Collins v. City of Wichita, 254 F.2d 837, 839 (10th Cir. 1958).

-30-

952 F.2d at 1244-45.  There are no extraordinary circumstances present here.  The Plaintiffs have directed the Court to no extraordinary change in law as contemplated in <u>Pierce v. Cook & Co.</u>  Additionally, the Court does not believe that the Court's resolution of its Sept. 29, 2011 MOO, which stated that final judgment was still appropriate given the alternative grounds in the Court's Nov. 12, 2010 MOO, unfairly prejudiced the Plaintiffs.  The Court concludes that, although its Sept. 29, 2011 MOO incorrectly stated that the Court's discussion that loss-of-use damages were not recoverable in the instances of theft presented created an alternate holding in its Nov. 12, 2011 MOO on which it granted summary judgment, the Plaintiffs responded to that discussion by arguing for reconsideration of that issue in their First Motion to Reconsider.  The Court then addressed that argument in its Sept. 29, 2011 MOO.  The Plaintiffs had a full opportunity to raise their arguments. The Plaintiffs likewise referred to the Court's discussion as a holding and as rulings, although they acknowledged that the Court did not decide those issues.  If the Plaintiffs had not addressed the Court's discussion in its Nov. 12, 2010 MOO that loss-of-use damages were not recoverable in the instances of theft presented at all in their First Motion to Reconsider, it is possible there would be some inequitable circumstance that may require relief under rule 60(b).  Those are not the facts presented here, however.  The Plaintiffs raised arguments regarding the Court's discussion in its Nov. 12, 2010 MOO that loss-of-use damages were not recoverable in the instances of theft presented and the Court resolved them in its Sept. 29, 2011 MOO.  There is no inequity, because the Plaintiffs had a chance to present their arguments to the Court.

**IT IS ORDERED** that the Plaintiffs' Motion for Clarification and Motion for Reconsideration of Order Granting Summary Judgment, as Amended, for Relief from Judgment, or to Alter or Amend the Judgment, filed October 26, 2011 (Doc. 114), is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Matthew L. Garcia
Bach & Garcia, LLC
Albuquerque, New Mexico

*--and--*

Geoffrey R. Romero
Law Offices of Geoffrey R. Romero
Albuquerque, New Mexico

     *Attorneys for the Plaintiffs*

Ross L. Crown
Lewis and Roca, LLP
Albuquerque, New Mexico

*--and--*

Steven J. Hulsman
Emily Cates
Lewis and Roca, LLP
Phoenix, Arizona

     *Attorneys for the Defendants.*